## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | ) Case No. 22-10559 |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF LIEN CLAIMANTS AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order")]: (a) authorizing, but not directing, the Debtors to pay prepetition amounts in the ordinary course owing on account of certain (i) Lien Claimants in an aggregate interim amount not to exceed $1.3 million (the "Interim Order Cap,") and in an aggregate final amount, inclusive of amounts paid pursuant to the Interim Order, an amount not to exceed $1.6 million (the "Final Order Cap,"); (b) continuing to honor outstanding obligations (the "Obligations") to Lien Claimants on a postpetition basis in the ordinary course of business and consistent with historical practice; and

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528).  The location of the Debtors' service address is 3700 S Kedzie Avenue, Chicago, Illinois 60632.

[2]     Capitalized terms used but not immediately defined in this Motion shall have the meanings ascribed to them later in this Motion.  Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.

(c) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days after the commencement of these chapter 11 cases to consider entry of the Final Order.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1.

## Background

5.      A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of John T. Young, Jr., Chief Restructuring Officer of Gold Standard Baking, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on June 22, 2022 (the "Petition Date").

10026410.v5

6.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtors have also filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).   The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

**I.      The Lien Claimants.**

7.   The uninterrupted delivery of goods is essential to maintaining the going concern value of the Debtors.   The Debtors' ability to generate sales is dependent on their ability to ensure that inventory is available for purchase and delivery to their customers.   Without the ability to deliver and distribute product, the Debtors' ability to generate revenue is impaired.

8.   The Debtors typically receive their material inputs at their leased manufacturing facility.   These inputs consist of both bulk and prepackaged ingredients as well as packaging materials.   The Debtors contract with third-party logistics providers, including but not limited to Metraco, to ship their finished goods to a cold storage warehouse.   The finished goods, with the exception of Sysco products, leave the warehouse via third-party logistics providers to customers. The Debtors utilize approximately 15-20 trucking carriers to ship products from the warehouse. Additionally, certain customers contract with trucking carriers directly.   The Sysco products are shipped to an intermediary warehouse before being shipped out by Sysco.   These third-party carriers and warehouses are in current possession of the Debtors' property as of the Petition Date (collectively, and as discussed below, the "Possessory Lien Claimants").   Under the laws of most

states,[3] these warehousemen and carriers will, in certain circumstances, have a lien on the goods in their possession that secures the charges or expenses incurred in connection with the transportation or storage of the goods.  If the Possessory Lien Claimants' claims are not satisfied, they may refuse to release the Debtors' property, thereby disrupting the Debtors' product flow and operations.

9.  The Possessory Lien Claimants fall into the following categories:

- *Shippers*:  The Debtors' distribution network depends upon the use of reputable common carriers, truckers, and overnight couriers (collectively, the "Shippers") to deliver goods.  The services provided by the Shippers are essential to the Debtors' ordinary course, day-to-day operations.  At any given time, there are numerous shipments of products in transit to or from the Debtors' locations, third party warehouses, and customers.  Thus, it is a certainty that some of the Shippers are currently in possession of the Debtors' property.  The delivery of these goods is vital to maintaining the Debtors' operations during their transition into chapter 11.  If the Debtors do not pay the prepetition, ordinary course Obligations owed to these Shippers, they may refuse to deliver or release such property, thereby disrupting the Debtors' business operations.

- *Warehousemen*:  The Debtors rely upon third-party contractors to store products in the ordinary course of their businesses (the "Warehousemen").  In the event that the Debtors fail to remit payment owed to the Warehousemen, they may refuse to release the goods they retain pending satisfaction of their claims, thereby disrupting the Debtors' operations.

- *Landlords*:  The Debtors store products in the ordinary course of their businesses at facilities owned by other parties and leased by the Debtors (the "Landlords").  In the event that the Debtors fail to remit payment owed to the Landlords before the Petition Date and the underlying lease is in default or is terminated, the Landlords may refuse to release the goods they retain pending satisfaction of all or a portion of their claims, thereby disrupting the Debtors' operations.

---

[3]  For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."  *See* U.C.C. § 7-307(a) (2005).

10.     The Debtors also rely on, and contract with, a number of third parties to obtain equipment used at their facilities and also have such equipment maintained and repaired.  The Debtors may owe money to these third parties as a result of the goods and services they have provided.  Under applicable state law,[4] many of these parties have a right to assert and perfect statutory liens, which attach to the Debtors' real and personal property (collectively, the "Statutory Lien Claimants," and together with the Possessory Lien Claimants, the "Lien Claimants").

11.     Collectively, the Debtors estimate approximately $1.6 million was due and owing to Lien Claimants as of the Petition Date, of which approximately $1.3 million will become due and owing within interim period.  The Debtors further estimate approximately $0.3 million of additional prepetition amounts will become due to Lien Claimants during the pendency of their chapter 11 cases.

**Basis for Relief**

**I.      The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.**

12.     Courts have recognized that it is appropriate to authorize the payment of prepetition Obligations where necessary to protect and preserve the estate.  *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts have approved payment of prepetition invoices of essential suppliers); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826

---

[4]     *See, e.g.*, M.G.L.A. 254 § 1 (2004) ("A person to whom a debt is due for personal labor performed in the erection, alteration, repair or removal of a building or structure upon land or improvement or alteration to real property . . . shall, under the provisions of this chapter . . . have a lien upon such building or structure and upon such interest in such real property, land, building, structure, or improvement owned by the party authorizing or consenting to said work . . . ."); Cal. Const. Art. XIV § 3 ("Mechanics, materialmen, artisans, and laborers of every class shall have a lien upon the property upon which they have bestowed labor or furnished materials, for the value of such labor done and materials furnished; and the Legislature shall provide by law, for speedy and efficient enforcement of claims."); 49 P.S. § 1301(2006) ("Every improvement and the estate or title of the owner in the property shall be subject to a lien . . . for the payment of all debts due by the owner to the contractor or by the contractor to any of his subcontractors for labor or materials furnished in the erection or construction, or the alteration or repair of the improvement . . . .").

(D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a bankruptcy court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as requested herein.

13.      Pursuant to section 363(b) of the Bankruptcy Code, payment of prepetition obligations may be authorized where a sound business purpose exists for doing so.  *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *In re James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

14.      The Court may also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105(a), courts may authorize payments of prepetition obligations prior to confirmation of a plan or emergence from chapter 11

6

when essential to the continued operation of a debtor's business.  *See Just for Feet*, 242 B.R. at 825.  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *Ionosphere Clubs*, 98 B.R. at 176.

15.     Indeed, the United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh and New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981).  The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

16.     The relief requested herein is appropriate and warranted under the circumstances. The authority to satisfy the obligations in the initial days of these cases without disrupting the Debtors' operations will maintain the integrity of the supply chain, facilitate the sale of inventory and the Debtors' accounts receivable collection, and allow the Debtors to efficiently administer these chapter 11 cases.  Failure to pay the obligations could potentially destroy value that would otherwise inure to the benefit of the Debtors' estates.  Where, as here, debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this district

10026410.v5

have routinely authorized payments to prepetition vendor claimants.  *See, e.g.*, *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (authorizing payment of certain prepetition vendor claimants); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 26, 2019) (same); *In re ATD Corp.*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 24, 2018) (same); *In re VER Techs. Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. May 4, 2018) (same); *In re GST AutoLeather, Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Nov. 13, 2017) (same).[5]

17.    Based on these circumstances, the Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

## II.    Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers

18.    The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, the proposed debtor-in-possession financing, and anticipated access to cash collateral.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the Obligations, as applicable.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive,

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirement of Bankruptcy Rule 6003 are Satisfied

19.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  For the reasons discussed above, authorizing the Debtors to pay the Obligations and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases smoothly.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

20.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or shall be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or

9

limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's Interim Order and Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's right to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

21.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

22.    The Debtors will provide notice of this Motion to:  (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to 37BH; (d) the administrative agent under the Debtors' second lien term loan facility and counsel thereto; (e) certain holders of the Debtors' senior subordinated notes; (f) Parallel49 Equity (Fund V), Limited Partnership, in their capacity as indirect majority equity holders of Debtor Gold Standard Holdings, Inc.; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) the state attorneys general for all states in which the Debtors conduct business; and (j) any party that requests service pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of

10

10026410.v5

the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

23.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

11

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order, substantially in the form attached hereto as **Exhibit A** and **Exhibit B,** respectively, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated:  June 22, 2022
Wilmington, Delaware

*/s/ Michael W. Yurkewicz*
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193
Email:        dpacitti@klehr.com
              myurkewicz@klehr.com
              sveghte@klehr.com

-and-

Morton R. Branzburg (*pro hac vice* admission pending)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:    (215) 568-6603
Email:        mbranzburg@klehr.com

*Proposed Counsel for the Debtors and*
*Debtors in Possession*