## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | ) Case No. 22-10559 |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

### DEBTORS' MOTION
### SEEKING ENTRY OF INTERIM
### AND FINAL ORDERS (I) DETERMINING
### ADEQUATE ASSURANCE OF PAYMENT FOR
### FUTURE UTILITY SERVICES, (II) PROHIBITING
### UTILITY PROVIDERS FROM ALTERING, REFUSING, OR
### DISCONTINUING UTILITY SERVICES, (III) ESTABLISHING
### PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF
### PAYMENT, (IV) AUTHORIZING CERTAIN FEE PAYMENTS FOR SERVICES
### PERFORMED, (V) REQUIRING UTILITY PROVIDERS TO RETURN DEPOSITS FOR
### UTILITY SERVICES NO LONGER IN USE, AND (VI) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2]

respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):

(a) determining adequate assurance of payment for future utility services; (b) prohibiting utility

providers from altering, refusing, or discontinuing utility services; (c) establishing procedures for

determining adequate assurance of payment; (d) requiring utility providers to return deposits for

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528).  The location of the Debtors' service address is 3700 S. Kedzie Avenue, Chicago, Illinois 60632.

[2]     Capitalized terms used but not immediately defined in this Motion shall have the meanings ascribed to them later in this Motion.  Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.

utility services no longer in use; and (e) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days after the commencement of these chapter 11 cases to consider entry of the Final Order.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

## Background

5.      A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of John T. Young, Jr., Chief Restructuring Officer of Gold Standard Baking, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on June 22, 2022 (the "Petition Date").

10026421.v3

6.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## The Utility Services

7.      In connection with the operation of their business and management of their properties, the Debtors historically obtain water, sewer, waste disposal, electricity, natural gas, telecommunication, and other similar services (collectively, the "Utility Services") from a number of utility providers (collectively, the "Utility Providers").

8.      The Debtors pay the Utility Providers directly for the Utility Services, including for Utility Services at the Debtors' manufacturing location in Chicago, Illinois.  A nonexclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors as of the Petition Date (the "Utility Services List") is attached hereto as **Exhibit C**.[3]  For the avoidance of doubt, the relief requested herein is with respect to all Utility Providers supplying Utility Services to the Debtors.

9.      Uninterrupted Utility Services are essential to the Debtors' ongoing business operations and, hence, the overall success of these chapter 11 cases.  As of the Petition Date, the Debtors maintain locations across the country, including a leased manufacturing facility in

---

[3]      Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Utility Providers.  By this Motion, the Debtors request relief applicable to all Utility Providers, regardless of whether such Utility Provider is specifically identified on **Exhibit C**.

Chicago, Illinois.  These locations require water, sewer, waste disposal, electricity, natural gas, telecommunication, and other similar services to operate.  Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely impacted.  Such disruption would jeopardize the Debtors' ability to administer their chapter 11 cases by adversely affecting customer goodwill, employee relations, and, in turn, revenue. Accordingly, it is essential that the Utility Services continue uninterrupted during the chapter 11 cases.

10.     The Debtors pay on average approximately $116,584.41 each month for Utility Services, based on the 12-month period ending on May 31, 2022.

11.     The Debtors intend to pay postpetition obligations to the Utility Providers in a timely manner.  Cash held by the Debtors, cash generated in the ordinary course of business, and cash available to the Debtors under any postpetition financing facility will provide sufficient liquidity to pay the Debtors' Utility Services obligations in accordance with their prepetition practice.

**I.     The Proposed Adequate Assurance and Adequate Assurance Procedures.**

12.     To provide additional assurance of payment, the Debtors propose to deposit into a segregated account $58,292.21 (the "Adequate Assurance Deposit"), which represents an amount equal to approximately one-half of the Debtors' average monthly cost of Utility Services, calculated based on the Debtors' average utility expenses over the 12-month period ending May 31, 2022, excluding deposits and letters of credit.  The Debtors request the authority to adjust the amount of the Adequate Assurance Deposit to account for the termination of certain Utility Services by the Debtors on account of any closed business locations or by agreement between the Debtors and the affected Utility Provider, without further order of the Court.

4

13.    The Adequate Assurance Deposit will be held in a segregated account (the "Adequate Assurance Account") at Northbrook Bank & Trust, N.A. for the benefit of the Utility Providers and for the duration of these chapter 11 cases and may be applied to any postpetition payment defaults owed to the Utility Providers by the Debtors.  The Adequate Assurance Deposit will be held by the Debtors, and no liens will encumber the Adequate Assurance Deposit or the Adequate Assurance Account.  The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in accordance with their prepetition practices (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

14.    Nevertheless, if any entity believes that it is a Utility Provider and seeks to make a request for adequate assurance of future payment (each, an "Adequate Assurance Request"), the Debtors request that the requirement to do so be pursuant to the following procedures (the "Adequate Assurance Procedures"):

a.    The Debtors will serve a copy of this Motion and the Interim Order granting the relief requested herein to each Utility Provider within two business days after entry of the Interim Order by the Court.

b.    Subject to paragraphs (e)–(i) herein, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $58,292.21, in the Adequate Assurance Account within 20 business days after entry of the Interim Order.

c.    Each Utility Provider shall be entitled to adequate assurance in the form of the funds in the Adequate Assurance Account in the amount set forth for such Utility Provider in the column labeled "Proposed Adequate Assurance" on the Utility Services List.

d.    If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to:  (i) the Debtors, 3700 S. Kedzie Avenue, Chicago, Illinois 60632, Attn:   John T. Young, Jr. (john.young@riveron.com); (ii) proposed counsel to the Debtors, Klehr

Harrison Harvey Branzburg LLP, 919 N. Market Street, Wilmington, DE 19801, Attn: Michael W. Yurkewicz (myurkewicz@klehr.com) and Sally Vegthe (sveghte@klehr.com); (iii) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Joseph F. Cudia (joseph.cudia@usdoj.gov); (iv) counsel to any statutory committee appointed in these chapter 11 cases; (v) counsel 37 Baking Holdings, LLC ("37BH"), in its capacity as the prepetition senior secured lender and proposed postpetition lender, Bernstein Shur, 100 Middle Street, P.O. Box 9729, Portland, Maine 04104, Attn: Robert Keach, Lindsay Zahradka Milne, and Adam Prescott (rkeach@bernsteinshur.com; lmilne@bernsteinshur.com; aprescott@bernsteinshur.com) and Cozen O'Connor, Attn: Thomas Horan, 1201 North Market Street, Suite 1001, Wilmington, DE 19801 (thoran@cozen.com); and (vi) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors shall honor such request within five business days after the date the request is received by the Debtors, subject to the ability of the Debtors and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court after consultation with counsel to the agents under the Debtors' postpetition financing facilities. To the extent a Utility Provider receives a disbursement from the Adequate Assurance Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed.

e.   Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must file and serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties.

f.   Any Utility Provider that objects to the Debtors' Proposed Adequate Assurance must file and serve an Additional Assurance Request on the Notice Parties.

g.   Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) include the alleged outstanding balance for the affected account(s); (iv) certify the amount that is equal to one-half the monthly cost of the Utility Services the Utility Provider supplies to the Debtors, calculated as a historical average over the 12-month period ending May 31, 2022; (v) certify that the Utility Provider does not already hold a deposit equal to or greater than one-half the monthly cost of Utility Services; (vi) provide evidence that the Debtors have a direct obligation to the Utility Provider; and (vii) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

h.   Any Utility Provider who does not file and serve an Additional Assurance Request shall be: (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section

6

366 of the Bankruptcy Code; and (ii) forbidden to discontinue, alter, or refuse services to, or discriminate against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

i.    Upon the Debtors' receipt of an Additional Assurance Request, the Debtors shall have 21 calendar days from the receipt of the Additional Assurance Request (the "Resolution Period") to negotiate with the Utility Provider to resolve the Utility Provider's Additional Assurance Request.

j.    Without further order of the Court, the Debtors may, with the written consent of 37BH, enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtors determine that the Additional Assurance Request is reasonable.

k.    If the Debtors determine that the Additional Assurance Request is not reasonable and the Debtors are unable to reach an alternative resolution with the Utility Provider, the Debtors, during or immediately after the Resolution Period, will request a hearing (a "Determination Hearing") before the Court at the next scheduled omnibus hearing to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

l.    Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider shall be prohibited from altering, refusing, or discontinuing service to the Debtors.

m.    Unless otherwise ordered by the Court, the Adequate Assurance Deposit deposited into the Adequate Assurance Account on behalf of any Utility Provider (including any additional amount deposited upon request of any applicable Utility Provider), or any portion thereof, shall be returned to the Debtors, less any amounts owed on account of unpaid, postpetition Utility Services, by no later than five business days following the earlier of the date upon which (i) a chapter 11 plan becomes effective after being confirmed in these chapter 11 cases or (ii) the Debtors provide notice to a Utility Provider that services provided to the Debtors by such Utility Provider will no longer be needed or will be reduced.

15.    The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtors to administer their chapter 11 estates uninterrupted. More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by serving an Additional Assurance Request upon the Notice

10026421.v3

Parties. The Debtors, in their discretion and with the written consent of 37BH, may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court. If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtors may seek Court resolution of the Additional Assurance Request.

16.     Absent compliance with the Adequate Assurance Procedures, the Debtors request that the Utility Providers, including subsequently added Utility Providers, be forbidden from altering, refusing, or discontinuing service or requiring additional assurance of payment other than the Proposed Adequate Assurance, pending entry of the Final Order.

17.     For the avoidance of doubt, the relief requested herein is for all Utility Providers providing Utility Services to the Debtors and is not limited to those parties or entities listed on the Utility Services List.

**II.     Subsequently Identified Utility Providers.**

18.     To the extent the Debtors identify new or additional Utility Providers or discontinue services from existing Utility Providers, the Debtors seek authority to add or remove parties from the Utility Services List. For any Utility Provider that is subsequently added to the Utility Services List, the Debtors will serve such Utility Provider with a copy of the Interim Order or Final Order, as applicable, including the Adequate Assurance Procedures, and, with the written consent of 37BH and subject to all orders by the Court regarding the use of cash collateral and postpetition borrowing, increase the Adequate Assurance Deposit by an amount equal to two weeks of the Debtors' average cost of services from the subsequently added Utility Provider, net of any prepetition deposits, letters of credit, or surety bonds already provided to the Utility Provider in the ordinary course of business. The Debtors request that the terms of the Interim Order or Final Order, as applicable, and the Adequate Assurance Procedures apply to any subsequently identified

Utility Provider to the same extent as if the Utility Provider was listed on the original Utility Services List attached hereto.  For any Utility Provider that is subsequently removed from the Utility Services List, the Debtors request the authority to decrease the Adequate Assurance Deposit by an amount equal to two weeks of the Debtors' average cost of services from such removed Utility Provider.

### **Basis for Relief**

19.     Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the petition date.    *See* 11 U.S.C.  § 366. Section 366(c) requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility provider within thirty days of the petition date, or the  utility  provider  may  alter,  refuse,  or  discontinue  service.    11 U.S.C.  § 366(c)(2). Section 366(c)(1) enumerates what constitutes "assurance of payment."  11 U.S.C. § 366(c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtor's ability to pay.  *See, e.g.*, *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . adequate assurance of payment.  The statute does not require an absolute guarantee of payment." (internal quotation and citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

20.     When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment.  *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979));

*In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002).    Courts have recognized that, in determining the requisite level of adequate assurance, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources."    *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected").    Accordingly, demands by a Utility Provider for a guarantee of payment should be refused when the Debtors' specific circumstances already afford adequate assurance of payment.

21.    Here, the Utility Providers are adequately assured against any risk of nonpayment for future services.    The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provides assurance of the Debtors' payment of their future obligations.    Moreover, termination of any Utility Services could result in the Debtors' inability to operate their business to the detriment of all stakeholders.    *See In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

22.    Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code.    *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) ("[T]he plain language of § 366 of the Bankruptcy Code

10

allows the court to adopt the Procedures set forth in the Utility Order.").  Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* Here, notwithstanding a determination that the Debtors' Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at *5–6.  The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *6.  The Adequate Assurance Procedures, however, avoid a disorganized process whereby each Utility Provider could make a last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at*5.

23.    Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, the Court should grant the relief requested herein. Similar procedures have been approved by courts in this district.  *See, e.g.*, *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (approving adequate assurance deposit equal to one half of debtor's average monthly utility expenses); *In re Highpoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 3, 2021) (same); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Oct. 15, 2020) (same); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. July 13, 2020) (same); *In re APC Auto. Techs. Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. June 23, 2020) (same).[4]

---

[4]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

10026421.v3

24.     Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366.  Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

### Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers

25.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, the proposed debtor-in-possession financing, and anticipated access to cash collateral.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the Utility Services, as applicable. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

26.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  For the reasons discussed above, authorizing the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations,

10026421.v3

maximize the value of their estates for the benefit of all stakeholders, and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases smoothly.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## <u>Reservation of Rights</u>

27.    Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or shall be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's Interim Order and Final Order is not intended

13

and should not be construed as an admission as to the validity, priority, or amount of any particular

claim or a waiver of the Debtors' or any other party in interest's right to subsequently dispute such

claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

28.     To implement the foregoing successfully, the Debtors request that the Court enter

an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and

that the Debtors have established cause to exclude such relief from the 14-day stay period under

Bankruptcy Rule 6004(h).

### Notice

29.     The Debtors will provide notice of this Motion to:  (a) the U.S. Trustee for the

District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a

consolidated basis); (c) counsel to 37BH; (d) the administrative agent under the Debtors' second

lien term loan facility and counsel thereto; (e) certain holders of the Debtors' senior subordinated

notes; (f) Parallel49 Equity (Fund V), Limited Partnership, in their capacity as indirect majority

equity holders of Debtor Gold Standard Holdings, Inc.; (g) the United States Attorney's Office for

the District of Delaware; (h) the Internal Revenue Service; (i) the state attorneys general for all

states in which the Debtors conduct business; (j) the Utility Providers; and (k) any party that

requests service pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief,

within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion

and any order entered in respect to this motion as required by Local Rule 9013-1(m).  The Debtors

submit that, in light of the nature of the relief requested, no other or further notice need be given.

14

**<u>No Prior Request</u>**

30.     No prior request for the relief sought in this Motion has been made to this or any other court.


[*Remainder of the page intentionally left blank.*]

15

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order, substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated:  June 22, 2022
Wilmington, Delaware

*/s/ Michael W. Yurkewicz*
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:     (302) 426-1189
Facsimile:      (302) 426-9193
Email:          dpacitti@klehr.com
                myurkewicz@klehr.com
                sveghte@klehr.com

-and-

Morton R. Branzburg (*pro hac vice* admission pending)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:     (215) 569-3007
Facsimile:      (215) 568-6603
Email:          mbranzburg@klehr.com

*Proposed Counsel for the Debtors and*
*Debtors in Possession*