**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | Case No. 22-10559 (___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364 AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014: (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO § 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO § 363 OF THE BANKRUPTCY CODE; (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTY AND DIP FACILITY LENDER; AND (V) SCHEDULING A FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(b) AND (c)**

Gold Standard Baking, LLC ("GSB"), Gold Standard Holdings, Inc. ("GSH"), and Gold Standard Real Estate, LLC ("GSRE"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully state the following in support of this motion (the "Motion").

## RELIEF REQUESTED

1.      Through this Motion, the Debtors move this Court for the entry of an order, pursuant to sections105, 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-1, 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528). The location of the Debtors' service address is 3700 S. Kedzie Avenue, Chicago, Illinois 60632.

of Delaware (the "<u>Local Rules</u>"), providing the following relief on an interim basis substantially

in the form attached hereto as **<u>Exhibit 1</u>** (the "<u>Interim Order</u>") and, after notice and hearing, on a

final basis (the "<u>Final Order</u>" and, together with the Interim Order, the "<u>Orders</u>"):

(1)    authorizing, pursuant to sections 361(a) and 363(c) of the Bankruptcy Code, the Debtors' use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, the "<u>Cash Collateral</u>") on the terms and conditions set forth in the Interim Order;

(2)    authorizing the Debtors to grant continuing liens and adequate protection liens, claims, and security interests to the Prepetition Secured Party (as defined herein) as provided in the Interim Order;

(3)    authorizing the Debtors to use the Cash Collateral for such uses as are approved under the Interim Order, subject to the terms set forth in the Interim Order and the budget attached as **<u>Exhibit A</u>** to the Interim Order (the "<u>Budget</u>");

(4)    immediately authorizing and approving the Debtors, as borrowers under the DIP Facility (as defined herein), to obtain postpetition financing up to the aggregate principal amount of **<u>$1,500,000.00</u>** (the "<u>DIP Facility</u>"), from 37 Baking Holdings, LLC (the "<u>DIP Facility Lender</u>") from time to time;

(5)    authorizing the Debtors to execute, enter into, and borrower under the DIP Facility (as defined below) and to perform such other and further acts as may be required in connection with the DIP Facility;

(6)    approving, pursuant to sections 364(c) and (d) of the Bankruptcy Code, that the claim for repayment of the DIP Obligations (as defined below) shall:

    a.    subject to the Carve-Out (as defined below), have priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 and/or 1114 of the Bankruptcy Code and all administrative claims granted pursuant to an order of the Bankruptcy Court, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, whether incurred in the cases or any successor case, which allowed super-priority claim of the DIP Facility Lender shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, to the extent provided for herein (the "<u>DIP Facility Superpriority Claim</u>"); and

    b.    be and be deemed, subject to the terms of the Interim Order, immediately secured by valid, binding, continuing, enforceable, fully perfected, and

unavoidable first-priority senior priming security interests in and liens (collectively, the "DIP Facility Liens") upon all prepetition and postpetition property of the Debtors, whether now existing or hereafter acquired, and to the extent not otherwise included, all proceeds, commercial tort claims, insurance claims (as to insurance claims, to the extent of the Debtors' interest therein) and other rights to payments not otherwise included in the foregoing assets and all products of the foregoing assets and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing assets, including, without limitation, and solely upon approval and entry of the Final Order, the proceeds of avoidance actions under Chapter 5 of the Bankruptcy Code pursuant to sections 502(d), 544, 545, 547, 548, 550 and/or 553 of the Bankruptcy Code (collectively, the "DIP Collateral"), as provided for by sections 364(c) and (d) of the Bankruptcy Code, subject only to: (i) the Carve-Out; and (ii) the Prepetition Permitted Liens (as defined in the DIP Term Sheet (defined below)).

(7)     scheduling an interim hearing (the "Interim Hearing") on the Motion to consider entry of the Interim Order; and

(8)     scheduling a final hearing (the "Final Hearing") to consider, among other things, entry of a Final Order authorizing the continued use of Cash Collateral and borrowing under the DIP Facility, each on a final basis, and approving notice and the grant of adequate protection and other rights and protections to the Prepetition Secured Party and the DIP Facility Lender as set forth in the Motion and the Final Order.

2.      The relief requested in the Motion is supported by the *Declaration of John T. Young, Jr., Chief Restructuring Officer of Gold Standard Baking, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), and the *Declaration of Ryan Sandahl in Support of the Cash Collateral and DIP Financing Motion* (the "DIP Declaration"), which are contemporaneously filed herewith and are incorporated herein by reference.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

3.      The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), to the entry of a final order by the Bankruptcy Court in connection with

3

this motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

5. Venue of the cases is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

6. The statutory predicates and applicable rules for the relief sought herein are §§ 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003 and 9014, and Local Rules 2002-1, 4001-1, 4001-2, and 9013-1.

## BACKGROUND AND FACTUAL PREDICATES FOR RELIEF

### A. The Chapter 11 Cases

7. On June 22, 2022 (the "Petition Date"), the Debtors commenced their chapter 11 cases (together, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.

8. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to sections 1007(a) and 1108 of the Bankruptcy Code. To date, no trustee, examiner, or statutory committee has been appointed in the cases by the United States Trustee (the "U.S. Trustee").

9. A description of the Debtors' capital and corporate structures, businesses, and the events leading to the commencement of these chapter 11 cases, as well the facts and circumstances supporting this Motion, are set forth in the First Day Declaration, which is fully incorporated herein by reference.

B.    **The Debtors' Prepetition Debt Structure**

       *i.*       *The First Lien Debt*

    10.    On April 24, 2015, GSB as borrower, GSH and GSRE as guarantors, certain financial institutions identified in the Credit Agreement (the "Initial Lenders"), and BNP Paribas as Administrative Agent ("Agent," and together with the Initial Lenders, the "First Lien Parties") executed that certain Credit Agreement dated as of April 24, 2015 (as amended,[2] the "Credit Agreement").  GSB's obligations under the Credit Agreement were secured by valid, first priority, fully perfected liens (collectively, the "Prepetition Liens") in substantially all of the Debtors' assets (the "Prepetition Collateral").  The documents evidencing the Prepetition Liens together with the Credit Agreement, the guaranties and all ancillary loan documentation shall be referred to herein as the "Prepetition Credit Documents."

    11.    In approximately the year leading up to the Petition Date, in connection with negotiation of the terms of forbearance embodied in the Ninth Amendment and Tenth Amendment (together, the "Recent Amendments"), the Debtors began to consider their strategic alternatives, including a potential sale of its assets, and—due to the absence of going concern bidders—their potential liquidation.

    12.    In a culmination of those efforts, before the Petition Date, 37 Baking Holdings, LLC acquired all of the rights of the Initial Lenders and of the Agent under the Prepetition Credit Documents, and 37 Baking Holdings, LLC replaced the Initial Lender and the Agent thereunder

---

[2]    The Credit Agreement was amended by a First Amendment to Credit Agreement dated May 14, 2015; a Second Amendment dated June 22, 2016; a Third Amendment and Limited Waiver dated March 30, 2018; a Fourth Amendment and Limited Waiver dated June 28, 2018; a Fifth Amendment and Limited Waiver dated December 28, 2018; a Sixth Amendment and Limited Waiver dated September 25, 2019; a Seventh Amendment, Limited Waiver and Limited Consent dated May 19, 2020; an Eighth Amendment and Limited Waiver dated December 29, 2020; a Ninth Amendment and First Forbearance Agreement dated April 20, 2021 (the "Ninth Amendment"); and a Tenth Amendment and Second Forbearance Agreement dated July 2, 2021 (the "Tenth Amendment").

(37 Baking Holdings, LLC, in such capacity, is referred to herein as the "Prepetition Secured Party").

13.    As of the Petition Date, the Debtors were, absolutely and unconditionally, indebted and obligated to Prepetition Secured Party under the Prepetition Credit Documents in a principal amount not less than **$88,262,032.74**, plus accrued but unpaid interest, fees, costs and expenses incurred by the Prepetition Secured Party under the Prepetition Credit Documents (to the extent permitted by such Prepetition Credit Documents) (all such outstanding principal, interest, fees, costs, expenses and indemnification rights or claims, including, without duplication, any and all amounts owing or outstanding under the Prepetition Credit Documents, whether incurred prepetition or postpetition to the extent permitted by the Bankruptcy Code, and whether or not contingent or otherwise (the "Prepetition Obligations").

> ii.    *The Second Lien Debt*

14.    On or about September 25, 2019, the Loan Parties, the Lenders (each as defined in the Second Lien Credit Agreement, defined below) and Parallel49 Equity (Fund V), Limited Partnership (the "Second Lien Agent" and, together with the Lenders, the "Second Lien Parties") entered into the Second Lien Credit Agreement (as amended or modified from time to time, the "Second Lien Loan Agreement"), pursuant to which the Lenders thereto (the "Second Lien Lenders") made certain loans to GSH. GSH and the other obligors under the Second Lien Loan Agreement granted to the Second Lien Agent, for the benefit of the Second Lien Lenders, a lien on substantially all of their assets, all as more particularly described in the Second Lien Loan Agreement and the related loan documents (together, the "Second Lien Documents").

15.    Also on September 25, 2019, the Second Lien Parties entered into that certain Intercreditor Agreement, pursuant to which, among other things, the Second Lien Parties: (a) agreed to subordinate their liens to those of the Prepetition Secured Party; (b) agreed not to

take any payment or enforce any remedies on account of the rights or obligations arising under the Second Lien Loan Documents until the discharge of the Prepetition Obligations; (c) consented to the use of cash collateral and any debtor-in-possession financing if the First Lien Parties consented thereto; and (d) gave the Prepetition Secured Party a power of attorney, all as set forth in and qualified by the Intercreditor Agreement.

16.     As of the Petition Date, each of the Debtors was indebted to the Second Lien Parties under the Second Lien Loan Documents in a principal amount of approximately $16.3 million.

17.     The Second Lien Parties have consented to the use of the Cash Collateral and the borrowing under the DIP Facility (including priming liens to the benefit of the DIP Facility Lender) upon the terms set forth herein and without the need for adequate protection pursuant to section 363(c)(2)(A) of the Bankruptcy Code.

### C.     The Debtors' Immediate Need for Debtor-in-Possession Financing to Maintain Operations and Satisfy Their Obligations as Debtors-in-Possession

18.     The Debtors commenced these Chapter 11 Cases to maximize the value of their estates for the benefit of all parties in interest through a going-concern sale process.  As further described in the First Day Declaration, prior to the Petition Date, the Debtors explored a range of options to address their ongoing challenges related to maintaining sufficient cash flow to satisfy their debt and operational obligations.  Ultimately, due to cash flow and other concerns, the Debtors, together with their advisors, expended significant efforts marketing the Debtors' assets in the months leading up to the Petition Date.  This marketing process included significant mailings and calls to targeted, industry specific, potential buyers that the Debtors and their advisors believed might be interested in discussing a potential purchase of the assets.

19.     The culmination of the Debtors' marketing process was the Debtors' agreement to enter into an asset purchase agreement with the Prepetition Secured Party and the DIP Facility

Lender for the sale of substantially all of the Debtors' assets, subject to a public bidding and auction process with the Prepetition Secured Party and the DIP Facility Lender as the stalking horse (all as subject to the Bankruptcy Court's approval).[3]

20.     The DIP Facility Lender also agreed to provide postpetition financing to the Debtors upon the terms set forth in the Interim Order and in the *Summary of Proposed Terms and Conditions for Senior Secured, Superpriority Debtor-in-Possession Financing*, which is attached to the Interim Order as **Exhibit B** (the "DIP Term Sheet").

21.     Upon execution and delivery of the DIP Term Sheet and entry of the Interim Order, the Debtors seek immediate authority to borrow (on an interim basis) under the DIP Facility from the DIP Facility Lender up to the principal amount of **$500,000.00**, with up to an additional **$1,000,000.00** that may be borrowed upon entry of the Final Order (together with interest, fees, charges, and expenses payable under the DIP Term Sheet), pursuant and subject to the terms and conditions of this Interim Order and the DIP Term Sheet (including the conditions to effectiveness thereof and the rights and grants to the DIP Facility Lender therein).  The Debtors, moreover, seek authority to use the proceeds of the DIP Facility in accordance with the terms of the DIP Term Sheet and the Interim Order.

22.     The Debtors submit that entry into the DIP Term Sheet and the related postpetition borrowing will: (a) ensure the continued, uninterrupted operation of their businesses as the Debtors pursue a value-maximizing chapter 11 sale process; (b) assure the Debtors' customers, employees, counterparties, utilities, and business partners that the Debtors are sufficiently capitalized during the pendency of the Chapter 11 Cases and will continue to meet their postpetition obligations; and

---

[3]     The Debtors have filed a motion seeking, inter alia, approval of bid procedures and certain bid protections relating to the asset sale, as well as a motion seeking approval of the sale transaction, contemporaneously herewith.

(c) make available sufficient funding for the Debtors to pay necessary expenses incurred in connection with administering the Chapter 11 Cases, including professional compensation and statutory fees.

**D.    Alternative Sources of Financing are Not Readily Available**

23.     The DIP Facility was thoroughly evaluated by the Debtors and their advisors and was the subject arm's-length and good faith negotiations before the Petition Date.  Further, as a result of the Debtors' debt structure and the challenges facing the Debtors' businesses, as further detailed in the First Day Declaration and DIP Declaration, the Debtors faced significant challenges leading to the commencement of these Chapter 11 Cases.  The Debtors, with their advisors, ultimately determined to market the Debtors' assets for sale.  The Debtors, upon determining that the best path forward to maximize the value of their assets was through a section 363 sale in chapter 11, commenced a process to secure the requisite debtor-in-possession financing to fund the Debtors' ongoing business operations and the contemplated costs of the chapter 11 cases until the section 363 sale could be completed on or before August 15, 2022.

24.     Understanding that the Debtors' situation presented certain difficulties to obtaining such financing—namely that: (a) all or substantially all of the Debtors' assets are encumbered and subject to senior and junior prepetition liens, and (b) seeking debtor-in-possession financing could invoke costly and time consuming legal challenges, particularly if priming liens were required by a lender—the Debtors and their advisors began discussions with the DIP Facility Lender regarding the possibility of obtaining debtor-in-possession financing from the DIP Facility Lender .  The DIP Facility Lender was the only viable avenue to provide the Debtors sufficient postpetition financing on reasonable, market and actionable terms.

25.     Pursuant to Bankruptcy Rules 4001(b)(1)(B) and 4001(c)(1)(B), and Local Rule 4001-2, the following is a summary of the proposed material terms relating to the DIP Term Sheet and Interim Order:[4]

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| **Borrowers**<br>Bankruptcy Rule 4001(c)(1)(B) | Gold Standard Holdings, Inc., Gold Standard Baking, LLC, and Gold Standard Real Estate, LLC |
| **Guarantors**<br>Bankruptcy Rule 4001(c)(1)(B) | None |
| **DIP Facility Lender**<br>Bankruptcy Rule 4001(c)(1)(B) | 37 Baking Holdings, LLC |
| **Administrative Agent**<br>Bankruptcy Rule 4001(c)(1)(B) | None |
| **Term**<br>Bankruptcy Rule 4001(b)(l)(B)(iii), 4001(c)(1)(B); Local 4001-2(a)(ii) | The maturity date ("**Maturity Date**") shall be the earliest to occur of: (i) August 15, 2022; (ii) the closing date following entry of one or more final orders approving the sale of all or substantially all of the assets belonging to the Debtors in the Chapter 11 Cases, (iii) the acceleration of any outstanding DIP Loans following the occurrence of an uncured Event of Default (as defined herein), or (iv) entry of an order by the Bankruptcy Court in the Chapter 11 Cases either (a) dismissing such case or converting such Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, or (b) appointing a Chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of the Debtors (*i.e.*, powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code), in each case without the consent of the DIP Facility Lender. All amounts outstanding under the DIP Facility shall be due and payable in full, and the DIP Commitments thereunder shall terminate, on the Maturity Date. |
| **Commitment**<br>Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(ii) | The DIP Facility Lender shall provide a secured, multiple draw term loan credit facility of up to **$1,500,000.00** to fund Post-Petition Funding Obligations, on the terms and subject to the conditions set forth in the DIP Term Sheet and Interim Order, provided that **$500,000.00** shall be available upon entry of the Interim Order and an additional **$1,000,000.00** shall be available upon entry of the Final Order. |

---

[4]     The summaries contained in this Motion are qualified in their entirety by the Interim Order and documents referred to herein.  To the extent anything in this Motion is inconsistent with such order or documents, the terms of the applicable order or documents shall control.  Capitalized terms used in this chart but not otherwise defined herein have the meanings ascribed to such term in the referenced documents.

10035170.v9

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| **Conditions of Borrowing** Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(ii) | The obligations of the DIP Facility Lender to consummate the transactions contemplated herein and to make the DIP Facility available to the Debtors are subject to the satisfaction, in each case in the sole judgment of the DIP Facility Lender, of the following: <br><br> • Each of the Interim Order or Final Order, as the case may be, shall be in a form that is acceptable to the DIP Facility Lender in its sole discretion. <br><br> • All motions and other documents to be filed with and submitted to the Bankruptcy Court in connection with the DIP Facility and the approval thereof shall comply with the terms of this Term Sheet and be in form and substance satisfactory to the DIP Facility Lender in its sole discretion. <br><br> • The Interim Order or the Final Order, as the case may be, shall be in full force and effect, and shall not have been appealed, reversed, modified, amended, stayed for a period of five (5) business days or longer, vacated or subject to a stay pending appeal, in the case of any modification, amendment or stay pending appeal, in a manner, or relating to a matter, that is or may be materially adverse to the interests of the DIP Facility Lender. <br><br> • The DIP Facility Lender shall have received and approved the Budget. <br><br> • There shall be no uncured Event of Default. <br><br> • The representations and warranties of the Debtors relating hereto shall be true and correct immediately prior to, and after giving effect to, funding, as qualified in "Availability and Draw Procedure." <br><br> • The DIP Facility Lender shall have received and approved the Budget. |
| **Interest Rate** Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(ii) | The principal balance of the DIP Facility (the "**Principal Balance**") shall be comprised of the aggregate amounts available under the DIP Facility minus any voluntary, mandatory, or other prepayments, other than payments of fees, costs and interest, made to the DIP Facility Lender by or on behalf of the Debtors. Interest shall accrue on the Principal Balance based on the portion of the Principal Balance the Debtors have actually drawn, at a per annum fixed rate of 8.00%; provided that, after the occurrence and during the continuance of an Event of Default, interest shall accrue at the fixed rate of 12.00%. All interest and other fees and costs due hereunder shall be payable on the Maturity Date by wire transfer in the event the Debtors' assets are not sold to the DIP Facility Lender pursuant to a credit bid in a section 363 sale consummated prior to the Maturity Date. All interest will be calculated using a 360-day year and actual days elapsed. |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| **Use of DIP Facility and Cash Collateral** <br> Bankruptcy Rule 4001(b)(l)(B)(ii); Local Rule 4001-2(a)(ii) | The Debtors will be permitted to use the proceeds of the DIP Facility to fund the operational, employee, and other costs of the Debtors, and payments related to the working capital and other general corporate purposes of the Debtors, as well as to pursue the orderly sale of their assets through these Chapter 11 Cases, including the payment of professional fees and expenses, and, in each case, consistent with, subject to, and within the categories and limitations contained in, the Budget (as defined herein) (the "**Permitted Uses**") and all applicable orders of the Bankruptcy Court in the Chapter 11 Cases. <br><br> No portion of the proceeds under the DIP Facility shall be utilized for the payment of professional fees and disbursements incurred in connection with any challenge to (i) the amount, extent, priority, validity, perfection or enforcement of the indebtedness of the Debtors owing to the Prepetition Secured Party[5] or the DIP Facility Lender, or (ii) liens or security interests in the collateral securing such indebtedness, including challenges to the perfection, priority or validity of the liens granted in favor of the Prepetition Secured Party or the DIP Facility Lender with respect thereto, except solely to the extent of any investigations budget included within the Carve-Out. |
| **Repayment Features** <br> Local Rule 4001-2(a)(i)(E) | Except for Mandatory Prepayments (as described below), no payments or prepayments of any Draws under the DIP Facility shall be due until the Maturity Date. Upon the Maturity Date, the unpaid Principal Balance, together with all interest, fees, costs, expenses and any other amounts due under the DIP Facility shall be due and payable immediately in full without demand by the DIP Facility Lender or consent or action by the Bankruptcy Court. <br><br> Except as otherwise provided in the Budget, mandatory repayments of any Draws under the DIP Facility shall be required in an amount equal to (i) 100% of the net sale proceeds from non-ordinary course asset sales of the Collateral (including, without limitation, a sale of all or substantially all of the Debtors' assets), (ii) 100% of the proceeds of the incurrence of any indebtedness other than in the ordinary course of business, (iii) 100% of insurance proceeds received by the Debtors (only in the event that such receipt is an extraordinary receipt that relates to an acquired asset and exceeds $250,000), and (iv) any condemnation proceeds received by the Debtors. |
| **Entities with Interests in Cash Collateral** | 37 Baking Holdings, Inc. <br> Parallel49 Equity (Fund V), Limited Partnership |

---

[5]      As used herein, "**Prepetition Secured Party**" shall mean 37 Baking Holdings, LLC in its capacity as the prepetition senior secured lender to the Debtors.

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| Bankruptcy Rule 4001(b)(l)(B)(i) | |
| **Expenses and Fees** Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(ii) | There shall be no commitment fee or exit fee for the DIP Facility. |
| **Budget** Bankruptcy Rule 4001 (c)(1)(B); Local Rule 4001-2(a)(ii) | A copy of the Budget is attached as **Exhibit A** to the Interim Order. |
| **Reporting Information** Bankruptcy **Rule 4001(c)(l)(B); Local Rule 4001-2(a)(ii)** | After entry of the Interim Order, the Debtors shall provide to the DIP Facility Lender, no later than 5:00 p.m. Eastern Time on Thursday of each rolling one-week period, a budget variance and reconciliation report setting forth: (i) a comparative reconciliation, on a line-by-line basis, of actual cash receipts and disbursements against the cash receipts and disbursements forecast in the Budget, and (ii) the percentage variance of the aggregate receipts and aggregate disbursements, for (A) the rolling one-week period ended on (and including) the last Saturday of the one-week reporting period and (B) the cumulative period to date and (iii) projections for the following 13 weeks, including a rolling cash receipts and disbursements forecast for such period. |
| **Variance Covenant** Bankruptcy Rule 4001(c)(l)(B); Local Rule 4001-2(a)(ii) | The Debtors shall not make or commit to make any payments other than those identified in the Budget, subject to a cumulative four-week 17.5% variance from the amount in the "Total Disbursements" line in the Budget.<br><br>Subject to the provisions of this Term Sheet, including the subsection entitled "Availability and Draw Procedure", budgeted expenditures and cash receipts may be paid and received, as applicable, in an earlier or later period in the reasonable discretion of the Debtors, in which event, the Budget shall be deemed so amended for the purpose of calculating variances. |
| **Milestones** Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(ii) | The Debtors shall comply with the following milestones for a sale of substantially all of the Debtors' assets (a "**Bankruptcy Sale**") in the Chapter 11 Cases (the "**Sale Milestones**"):<br><br>• On or before sixteen (16) days after the Petition date, an order, approving bidding procedures and the terms of an auction, on terms and in a form acceptable to DIP Facility Lender, shall have been entered by a Bankruptcy Court;<br><br>• On or before July 28, 2022, an auction shall have occurred;<br><br>• On or before August 3, 2022, an order approving the sale to the stalking horse bidder or winner of the auction, as applicable, shall have been entered by a Bankruptcy Court; and<br><br>• On or before August 15, 2022, or such later date as the DIP Facility Lender shall agree in writing, the Bankruptcy Sale shall be consummated. |
| **Liens and Priorities** Bankruptcy Rule | Subject to the Carve-Out and Prepetition Permitted Liens, all amounts owing by the Debtors under the DIP Facility shall be joint and several as to each |

10035170.v9

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| 4001(c)(l)(B)(i); Local Rule 4001-2(a)(i)(D) and (G), 4001-2(a)(ii) | Debtor and (a) will be entitled to superpriority claim status pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any or all administrative expense claims of every kind and nature whatsoever, and (b) will be secured by a perfected security interest pursuant to section 364(c)(2), section 364(c)(3) and section 364(d) of the Bankruptcy Code with priority over the security interest securing Debtors' existing secured credit facilities and other indebtedness, including the Debtors' obligations owing to the Prepetition Secured Party and all other parties with liens on the Collateral (defined below), pursuant to section 364(d)(1) of the Bankruptcy Code in all of the assets of the Debtors, as further described in the "Collateral" section in the DIP Term Sheet.<br><br>Nothing herein shall be construed as impairing the ability of any party to object to any fees and expenses of a professional in the Chapter 11 Cases.<br><br>All of the liens described herein shall be effective and perfected as of the entry of the DIP Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements. |
| **Carve-Out**<br>Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(i)(f) | (a) Subject to the terms and conditions contained in this Interim Order, the DIP Facility Liens, DIP Facility Superpriority Claim, and the adequate protection liens and claims of the Prepetition Secured Party as provided for herein, and the liens and claims held by the Prepetition Secured Party, shall be subject and subordinate only to the following (the "<u>Carve-Out</u>"): (i) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (ii) allowed reasonable fees and expenses (the "<u>Professional Fees</u>") of attorneys, financial advisors, and other professionals (including any claims agent) employed by the Debtors in the Chapter 11 Cases pursuant to a Court order under section 327 and 328 of the Bankruptcy Code (collectively, the "<u>Professionals</u>"), to the extent incurred at any time on or prior to the calendar day on which a Termination Date (defined below) occurs less any retainers held by such Professional as of such date), whether such Professional Fees have been allowed by the Bankruptcy Court before or after the Termination Date; and (iii) Professional Fees of Professionals incurred subsequent to the calendar day immediately following the Termination Date in an aggregate amount not to exceed **<u>$50,000.00</u>**.  The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtors, DIP Facility Lender, Prepetition Secured Party, any committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts.  Payment of any portion of the Carve-Out shall not, and shall not be deemed to: (i) reduce any Debtors' obligations owed to any of the DIP Facility Lender or Prepetition Secured Party, or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral or Prepetition Collateral (or their respective claims against the Debtors).  Notwithstanding anything to the contrary in this Interim Order, the DIP Facility Lender reserves the right to review and object to any fee statement, interim application or monthly application issued or filed by any Professional.  Notwithstanding any provision (including, without limitation, |

14

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | any "variance" or similar provision) of this Interim Order or the DIP Facility Documents to the contrary, aggregate cumulative expenditures from Cash Collateral and from the proceeds of the DIP Facility subject to the Carve-Out for the Professionals shall not exceed 100% of the amount with respect thereto set forth in the Budget, and Professional Fees for any Professional included in the Carve-Out shall not exceed 100% of the amount listed in the line item in the Budget for such Professional.<br><br>(b) No Prepetition Collateral, DIP Collateral, proceeds thereof, or Cash Collateral, or any portion of the Carve-Out or financing provided under the DIP Facility, other than Cash Collateral in the aggregate amount of not more than **$25,000.00** for the Professionals, shall include, apply to, or be available for any fees or expenses incurred by any party, including the Professionals, in connection with: (i) the investigation, initiation, or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Facility Lender or the Prepetition Secured Party, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization or enforceability of, or asserting any defense, counterclaim or offset to, the DIP Obligations, DIP Facility Liens, the DIP Facility Superpriority Claim, in respect thereof, the Prepetition Credit Agreements, or the Prepetition Obligations, (ii) asserting any claims or causes of action (including, without limitation, claims or actions to hinder or delay the DIP Facility Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Facility Documents or this Interim Order or any Avoidance Actions) against the DIP Facility Lender or Prepetition Secured Party, or (iii) incurring indebtedness other than as expressly permitted by the DIP Facility Documents.<br><br>(c) Subject to Paragraphs 10(a) and (b) of the Interim Order, prior to the Termination Date, the Debtors are authorized to and shall disburse Cash Collateral into a trust account held by the Debtors' counsel for the benefit of all Professionals (the "<u>Trust Account</u>") the amounts set forth in the Budget for each such Professional; provided however, that (i) the Debtors shall make the foregoing disbursements into the Trust Account only in the specific week(s) such disbursements are reflected in the Budget prior to the Termination Date; (ii) nothing in this subparagraph (c) shall modify the requirements that such fees and expenses remain subject to allowance pursuant to an Order of the Bankruptcy Court; (iii) the Debtors' counsel shall not release funds from the Trust Account until such time as a Professional's fees and expenses are allowed pursuant to an Order of the Bankruptcy Court (including any administrative fee order); (iv) the disbursement of funds into the Trust Account shall not modify the Carve-Out in any way (including, without limitation, increasing the amount of funds subject to the Carve-Out prior to or after the Terminate Date, and including that as to funds in the Trust Account, Professional Fees for any Professional shall not exceed 100% of the amount listed in the line item in the Budget for such Professional); and (v) in the event that the amount of funds in the Trust Account exceed the amount of the Carve-Out at the time of the Termination Date, such excess funds shall be returned to the estates (or, if the estates' cash is sold to the |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | Stalking Horse Bidder, returned to the Stalking Horse Bidder), less the **$50,000.00** post-Termination Date Carve-Out.  For the avoidance of doubt, in the event that the sale of substantially all of the Debtors' assets closes on or before August 6, 2022, the Debtors shall remain entitled to disburse funds into the Trust Account in accordance with the amount of the Carve-Out for Professionals set forth in the Budget through August 6, 2022, subject to the remaining provisions herein. |
| **Section 506(c) Waiver** Bankruptcy Rule 4001(c)(l)(B)(x); Local Rule 4001-2(a)(i)(C) | Subject to entry of the Final Order, with the exception of the Carve-Out, neither the Prepetition Collateral nor any Prepetition Secured Party, nor the DIP Collateral, nor the DIP Facility Lender shall be subject to surcharge, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest without the prior written consent of the Prepetition Secured Party or DIP Facility Lender (as applicable), and no such consent shall be implied from any other action, inaction or acquiescence by such parties in this proceeding, including but not limited to funding of the Debtors' ongoing operation by the Prepetition Secured Party or the DIP Facility Lender. |
| **Section 552(b) Waiver** Bankruptcy Rule 4001(c)(l)(B); Local Rule 4001-2(a)(i)(h) | Subject to entry of the Final Order, the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived as to the Prepetition Secured Party and the DIP Facility Lender.   The Prepetition Secured Party and the DIP Facility Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or the Collateral subject to the DIP Facility Liens. |
| **Stipulations to Prepetition Liens and Claims** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(Q)[6] | Subject to Paragraph 15 of the Interim Order, each stipulation, admission, and agreement contained in this Interim Order, including, without limitation, the sstipulations set forth below (collectively, the "<u>Debtors' Stipulations</u>"), shall be binding upon the Debtors, their estates, and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes.   The Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  The Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows: <br> (a)  On April 24, 2015, GSB as borrower, GSH and GSRE as guarantors, certain financial institutions identified in the Credit Agreement (the "<u>Initial Lenders</u>"), and BNP Paribas as Administrative Agent ("<u>Agent</u>") executed that certain Credit Agreement dated as of April 24, 2015 (as amended, the "<u>Credit Agreement</u>").  GSB's obligations under the Credit Agreement were secured by valid, first priority, fully perfected liens (collectively, the "<u>Prepetition Liens</u>") in substantially all of the Debtors' assets (the "<u>Prepetition Collateral</u>"). |

---

[6] In accordance with Local Rule 4001-2(a)(i), this was an essential part of the Prepetition Secured Party's agreement to the use of its Cash Collateral.

10035170.v9

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | The documents evidencing the Prepetition Liens together with the Credit Agreement, the guaranties and all ancillary loan documentation shall be referred to herein as the "<u>Prepetition Credit Documents</u>." <br><br> (b) On April 26, 2022, the Prepetition Secured Party acquired all the rights and interests of the Initial Lenders and the Agent under the Prepetition Credit Documents. <br><br> (c) As of the Petition Date, the Debtors were, absolutely and unconditionally, indebted and obligated to Prepetition Secured Party under the Prepetition Credit Documents in a principal amount not less than $88,262,032.74, plus accrued but unpaid interest, fees, costs and expenses incurred by the Prepetition Secured Party under the Prepetition Credit Documents (to the extent permitted by such Prepetition Credit Documents) (all such outstanding principal, interest, fees, costs, expenses and indemnification rights or claims, including, without duplication, any and all amounts owing or outstanding under the Prepetition Credit Documents, whether incurred prepetition or postpetition to the extent permitted by the Bankruptcy Code, and whether or not contingent or otherwise (the "<u>Prepetition Obligations</u>"). <br><br> (d) As of the Petition Date and immediately prior to giving effect to this Interim Order, the Prepetition Credit Documents are valid and binding agreements and obligations of the Debtors party thereto, and the liens granted pursuant thereto constitute valid, binding, enforceable and perfected security interests and liens, subject only to the liens permitted under such agreements, but only to the extent such permitted liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (b) the obligations arising under the Prepetition Credit Documents constitute the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms thereof, and are not subject to any challenge or defense, including without limitation, avoidance, subordination, recharacterization, recovery, setoff, offset, attach, counterclaim, cross-claim, or claim (as defined in the Bankruptcy Code) of any kind. <br><br> (e) The Debtors have waived, discharged and released any right they may have to challenge or contest any of the Prepetition Obligations, the Prepetition Credit Documents, the DIP Obligations, the DIP Facility Documents (as defined below), and the liens, interests, |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | claims, and security for the Prepetition Obligations and the DIP Obligations, and to assert any offsets, defenses, claims, objections, challenges, and/or causes of action against the Prepetition Secured Party, DIP Facility Lender, and/or any of each of its affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees only to the extent any such offset, defenses, claims, objections, challenges, and/or cause of action against any such parties is related to the Prepetition Obligations or the DIP Obligations, and to assert that any portion of the Prepetition Obligations or the DIP Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.<br><br>(f) No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens, Prepetition Secured Obligations, DIP Facility Liens, or DIP Obligations exist, no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim or counterclaim of any kind or nature to any of the Prepetition Liens, Prepetition Secured Obligations, DIP Facility Liens, or DIP Obligations exist, and no portion of the Prepetition Liens, Prepetition Secured Obligations, DIP Facility Liens, or DIP Obligations are subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law or equity.<br><br>(g) The Debtors, on behalf of themselves and their respective estates (including any successor trustee or other estate representative in the Chapter 11 Cases and any Successor Cases (as defined herein), and any party acting by, through or under the Debtors or their estates), hereby stipulate and agree that they absolutely and unconditionally release and forever and irrevocably discharge and acquit the Prepetition Secured Party, the DIP Facility Lender, and each of their respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their capacity as such (collectively, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Loan Documents, the Prepetition Credit Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Party and/or the DIP Facility Lender (collectively, the "Released Claims") that exist or may exist prior to the entry of this Final Order by the Court.  The Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors now have or may claim to have against the Released Parties arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Final Order by the Court.<br><br>(h) The Debtors admit, stipulate, acknowledge, and agree that the DIP Facility Lender and the Prepetition Secured Party shall have the right, subject to section 363(k) of the Bankruptcy Code, to credit bid (independently or together) up to the full amount of the applicable outstanding Prepetition Secured Obligations and/or the DIP Obligations in each case, including, without limitation, any accrued interest and expenses, in a sale of any DIP Collateral (defined below) or Prepetition Collateral, as applicable, and whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.<br><br>(i) All of the Debtors' cash and cash equivalents, including cash on deposit in any account or accounts as of the Petition Date, securities or other property, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Prepetition Secured Party and DIP Facility Lender. |
| **Challenge Period** Bankruptcy Rule 4001(c)(l)(B); Local Rule 4001-2(a)(i)(B) | Upon entry of this Interim Order, the Debtors' Stipulations and releases herein shall be binding upon the Debtors' estates and each other party-in-interest, including any committee appointed in these chapter 11 cases (and including any chapter 11 trustee or chapter 7 trustee), except to the extent such party in interest *first* obtains standing, by no later than the earlier of (x) the deadline for parties to object to the entry of the Sale Order (as defined in the Bid Procedures and Sale Motion), provided that the Sale Order is entered in accordance with the Sale Milestones (as may be extended from time to |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | time in accordance with the DIP Term Sheet or this Interim Order), and (y) seventy-five (75) calendar days following the date of entry of this Interim Order (such time period established by the earlier of clauses (x) and (y) shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a contested matter, adversary proceeding, or other matter challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations (each, a "Challenge"), such Challenge is fully and finally adjudicated, (i) and (ii) shall be referred to as the "Challenge Period Termination Date")) and *second*, obtains a final, non-appealable order in favor of such party-in-interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "Successful Challenge"). If the Chapter 11 Cases are converted to cases under chapter 7 ("Successor Cases") or if a chapter 11 trustee is appointed, in each case prior to the expiration of the Challenge Period, the Challenge Period for the chapter 7 trustee or such chapter 11 trustee, as applicable, shall be extended until 30 days after the appointment of such chapter 7 trustee or chapter 11 trustee, without prejudice to the right such chapter 7 trustee or chapter 11 trustee to seek a further extension of the Challenge Period from the Court.<br><br>Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any Successor Cases (and after the dismissal of these Chapter 11 Cases or any Successor Cases), and without further notice, motion, or application to, order of, or hearing before this Court, (i) any and all payments made to or for the benefit of the Prepetition Secured Party or otherwise authorized by this Interim Order (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery or avoidance by any party in interest, (ii) any and all such Challenges by any party-in-interest shall be deemed to be forever released, waived, and barred, (iii) all of the Prepetition Secured Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations shall be binding on all parties in interest in these Chapter 11 Cases or any Successor Cases, including the committee or chapter 11 or chapter 7 trustee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on the committee and on any other party-in-interest from and after the Challenge Period Termination Date, except (and only) to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge; provided that all other stipulations (other than those subject to a Successful Challenge) shall remain binding on any committee or |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | other party-in-interest.  Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed to grant standing to any party in interest, including any committee, to bring any Challenge on behalf of the Debtors' estates.   The failure of any party-in-interest, including any committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this paragraph or to require or permit an extension of the Challenge Period Termination Date. |
| **Events of Default** Bankruptcy Rule 4001(c)(l)(B); Local Rule 4001-2(a)(ii) | The occurrence of any one or more of the following shall constitute an "**Event of Default**": <br><br>(i)  Failure by the Debtors to pay principal, interest or any other amounts provided by this Term Sheet when due; <br><br>(ii)  Breach by any Debtor of any of the Covenants set forth on Schedule B hereto; <br><br>(iii)  Any representation or warranty made by any Debtor shall prove to have been incorrect in any material respect when made; <br><br>(iv)  Without the consent of the DIP Facility Lender, any of the Chapter 11 Cases shall be dismissed or converted to a Chapter 7 case; <br><br>(v)  Unless consented to, such relief is granted pursuant to a motion by, the DIP Facility Lender, a Chapter 11 trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of the Debtors (*i.e.*, powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the Chapter 11 Cases; <br><br>(vi)  Any other superpriority claim or lien which is *pari passu* with or senior to the claims or liens of the DIP Facility Lender under the DIP Facility shall be granted in any of the Chapter 11 Cases, other than the Carve-Out; <br><br>(vii)  Any Debtor shall make any payment on account of any pre-petition indebtedness or payables of a Debtor except as otherwise permitted under the Budget; <br><br>(viii)  Subject to exceptions to be agreed upon, the Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any Debtor which have an aggregate value in excess of $100,000 (other than with respect to those Debtors for which the DIP Facility Lender consents to such relief); <br><br>(ix)  Any provision of this Term Sheet or the DIP Orders shall cease to be valid and binding on any Debtor, or any Debtor shall so assert in any pleading filed in any court; <br><br>(x)  An order shall be entered amending, modifying or supplementing the Interim Order or Final Order without the prior written consent of the DIP Facility Lender; <br><br>(xi)  Any judgment in excess of $250,000 (to the extent not paid or fully covered (subject to applicable deductibles) by a reputable and solvent insurance company) as to any post-petition obligation shall be rendered against any |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | Debtor and the enforcement thereof shall not bestayed; or there shall be rendered against any Debtor a non-monetary judgment with respect to a post-petition event which is not stayed and causes or would reasonably be expected to have a material adverse effect on the operations, businesses, properties, assets, or conditions (financial or otherwise) of any Debtor, or on the ability of any Debtor to perform its respective obligations herein or under the DIP Orders; |
| | (xii)  The failure to satisfy any of the Sale Milestones; or the filing of a challenge to the liens or claims of the DIP Facility Lender based upon the DIP Facility Lender'sprepetition conduct. |
| **Waiver/Modification of the Automatic Stay** Bankruptcy Rule 4001(c)(1)(B)(iv) | Upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, other than as set forth in this Final Order: (a) the DIP Lender may send a written notice to the Debtors, counsel to the Committee, and the U.S. Trustee (any such declaration shall be referred to herein as a "Termination Declaration") declaring (1) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (2) the commitment of the DIP Lender to make DIP Loans to be terminated, whereupon such commitments and obligation shall be terminated to the extent any such commitment remains under the DIP Facility, (3) the termination of the DIP Facility and the DIP Loan Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations, and (4) the application of the Carve-Out has occurred; (b) interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Loan Documents; and (c) the DIP Lender and/or the Prepetition Secured Party, as applicable, may declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral, other than to pay expenses set forth in the Budget that are necessary to avoid immediate and irreparable harm to the Debtors' estates; *provided, however,* that the professional fees and expenses of the Debtors' and the Committee's professionals shall be governed by Paragraph 10.  Notwithstanding anything contained herein, the earliest date on which a Termination Declaration shall be effective is upon five (5) business days' prior written notice of such Termination Declaration given to the Debtors, counsel to the Committee appointed in these proceedings (if any), and the U.S. Trustee, referred to herein as the "Termination Date."  Following a Termination Date, neither the DIP Lender nor the Prepetition Secured Party shall be required to consent to the use of any Cash Collateral or provide any loans or other financial accommodations under the DIP Facility. The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee. |
| **Waiver/Modification of Applicability of Non-bankruptcy Law Relating to Perfection or Enforceability of Liens** | Upon entry of the Final Order, the liens granted to the DIP Facility Lender in accordance with the Term Sheet and the Interim Order will at all times be fully perfected liens in and to the Collateral described therein, subject, as to priority, only to liens permitted to have such priority under the Interim Order. |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| Bankruptcy Rule 4001(c)(1)(B)(vii) | |
| **Indemnification** Bankruptcy Rule 4001(c)(1)(B)(ix) | The Debtors shall be authorized to indemnify the DIP Facility Lender and certain other parties against any liability arising in connection with the DIP Term Sheet to the extent set forth in and in accordance with the terms of the DIP Term Sheet, to the maximum extent permitted under the Bankruptcy Code and applicable law.  All such unpaid fees, expenses and indemnities of the DIP Facility Lender, to the extent permitted by law, shall constitute DIP Obligations, and the repayment thereof shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Term Sheet. |
| **Liens on Avoidance Actions** Local Rule 4001-2(a)(i)(D) | The DIP Collateral, subject to the DIP Facility Liens, shall include, approval and entry of the Final Order, the proceeds of the Avoidance Actions. The Adequate Protection Liens shall cover assets, interests and proceeds of the Debtors that are or would be collateral under the Prepetition Credit Documents if not for section 552(a) of the Bankruptcy Code , and all cash and cash equivalents, and all assets, interests and proceeds of the Debtors that constitute DIP Collateral, including (subject to entry of the Final Order) the proceeds of the Avoidance Actions. |

### E.    The Debtors' Immediate Need for Authority to Use Cash Collateral in Accordance with the Budget to Avoid Imminent and Irreparable Harm

26.    The Debtors have worked closely with their senior management and outside advisors to evaluate the Debtors' cash requirements for their businesses in chapter 11 until a sale process can be completed.  As set forth in the Budget attached to the Interim Order as **Exhibit A**, the Debtors have an urgent need for additional liquidity to ensure business continuity and operational stability while they conduct the auction and sale process from the Petition Date pending a final hearing on the Motion.  The Debtors have thoroughly reviewed and vetted the Budget with their advisors, and the Debtors believe that the Budget provides an accurate reflection of the Debtors' currently anticipated business revenues and expenses, including administrative costs in Chapter 11 Cases, over the covered period.

27.     As reflected in the Budget, immediate authority to access the DIP Facility is necessary to avoid immediate and irreparable harm that would otherwise result if the Debtors were denied incremental liquidity and unable to maintain operations necessary to execute their going-concern sale strategy.

28.     The Debtors, therefore, believe that authority to use Cash Collateral and access the DIP Facility on an expedited basis is critical to ensuring that the Debtors are able to successfully pursue their goals in chapter 11 for the benefit of all parties in interest.  Having committed funding for the Cases also is vital to sending a clear and important signal to the Debtors' customers, employees, counterparties, utilities, and business partners that the Debtors' operations can and will continue on a business-as-usual basis until the Debtors are able to consummate a sale to the Prepetition Secured Party or another party, subject to this Court's approval.  Accordingly, through this Motion, the Debtors also seek authority to use Cash Collateral and borrow under the DIP Facility in accordance with the terms set forth in the Interim Order and the Final Order.

29.     Pursuant to Bankruptcy Rules 4001(b)(1)(B) and Local Rule 4001-2 the following are the principal terms of the Interim Order regarding the use of Cash Collateral:[7]

| Bankruptcy Code / Local Rule | Summary of Material Terms |
| --- | --- |
| **Entities with Interest in Cash Collateral** Bankruptcy Rule 4001(b)(l)(B)(i) | 37 Baking Holdings, LLC Parallel49 Equity (Fund V), Limited Partnership |
| **Use of Cash Collateral** Bankruptcy Rule 4001(b)(l)(B)(ii) | The Cash Collateral shall be used to fund the operational, employee, and other costs of the Debtors, and payments related to the working capital and other general corporate purposes of the Debtors, as well as to pursue the orderly sale of their assets through these Chapter 11 Cases, including the payment of professional fees and expenses, and, in each case, consistent with, subject to, and within the categories and limitations contained in, the Budget. |

---

[7]     The summaries contained in this Motion are qualified in their entirety by the Interim Order and documents referred to herein.  To the extent anything in this Motion is inconsistent with such order or documents, the terms of the applicable order or documents shall control.  Capitalized terms used in this chart but not otherwise defined herein have the meanings ascribed to such term in the referenced documents.

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | |
| **Duration of Use of Cash Collateral / Events of Default** Bankruptcy Rule 4001(b)(1)(B)(iii) | Authority to use Cash Collateral shall continue on an interim basis pursuant to the Interim Order, then on a Final Basis following a Final Order, until terminated in accordance with the Interim Order or Final Order (as applicable). |
| **Budget** Bankruptcy Rule 4001 (b)(1)(B)(iii), Local Rule 4001-2(a)(iii); Interim Order Ex. A | A copy of the Budget is attached as **Exhibit A** to the Interim Order. The Debtors believe that the Budget will be adequate, considering all available assets, to pay all currently anticipated administrative expenses due or accruing during the period covered by the Budget. |
| **Milestones** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(H) | The Debtors shall comply with the following Sale Milestones stated in ¶ 23 of the Interim Order: <br><br> (a)    The Debtors shall file the Bid Procedures and Sale Motion on the Petition Date. <br><br> (b)    The Debtors shall obtain entry of an order no later than sixteen (16) days after the entry of the Interim Order, in form and substance satisfactory to the Prepetition Secured Party, granting the Bid Procedures and Sale Motion. <br><br> (c)    By no later than forty-five (45) days after the Petition Date, the Debtors shall obtain entry of an order, in form and substance satisfactory to the Prepetition Secured Party, approving the sale of substantially all the Debtors' assets pursuant to the terms of the Stalking Horse Purchase Agreement (as defined in the Bid Procedures and Sale Motion). <br><br> (d)    By no later than August 15, 2022, the Debtors shall close the Court-approved sale of substantially all the Debtors' assets under the Stalking Horse Purchase Agreement. |
| **Carve-Out** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(F); Interim Order at ¶ 10 | The same Carve-Out set forth regarding the DIP Term and Interim Order shall apply to Cash Collateral. |
| **Stipulations to Prepetition Liens and Claims** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(Q)[8] | Subject to Paragraph 15 of the Interim Order, each stipulation, admission, and agreement contained in this Interim Order, including, without limitation, the sstipulations set forth below (collectively, the "Debtors' Stipulations"), shall be binding upon the Debtors, their estates, and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes.   The Debtors are deemed to have irrevocably waived and |

---

[8]    In accordance with Local Rule 4001-2(a)(i), this was an essential part of the Prepetition Secured Party's agreement to the use of its Cash Collateral.

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | relinquished all Challenges (as defined below) as of the Petition Date. The Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows:<br><br>(a) On April 24, 2015, GSB as borrower, GSH and GSRE as guarantors, certain financial institutions identified in the Credit Agreement (the "Initial Lenders"), and BNP Paribas as Administrative Agent ("Agent") executed that certain Credit Agreement dated as of April 24, 2015 (as amended, the "Credit Agreement"). GSB's obligations under the Credit Agreement were secured by valid, first priority, fully perfected liens (collectively, the "Prepetition Liens") in substantially all of the Debtors' assets (the "Prepetition Collateral"). The documents evidencing the Prepetition Liens together with the Credit Agreement, the guaranties and all ancillary loan documentation shall be referred to herein as the "Prepetition Credit Documents."<br><br>(b) On April 26, 2022, the Prepetition Secured Party acquired all the rights and interests of the Initial Lenders and the Agent under the Prepetition Credit Documents.<br><br>(c) As of the Petition Date, the Debtors were, absolutely and unconditionally, indebted and obligated to Prepetition Secured Party under the Prepetition Credit Documents in a principal amount not less than $88,262,032.74, plus accrued but unpaid interest, fees, costs and expenses incurred by the Prepetition Secured Party under the Prepetition Credit Documents (to the extent permitted by such Prepetition Credit Documents) (all such outstanding principal, interest, fees, costs, expenses and indemnification rights or claims, including, without duplication, any and all amounts owing or outstanding under the Prepetition Credit Documents, whether incurred prepetition or postpetition to the extent permitted by the Bankruptcy Code, and whether or not contingent or otherwise (the "Prepetition Obligations").<br><br>(d) As of the Petition Date and immediately prior to giving effect to this Interim Order, the Prepetition Credit Documents are valid and binding agreements and obligations of the Debtors party thereto, and the liens granted pursuant thereto constitute valid, binding, enforceable and perfected security interests and liens, subject only to the liens permitted under such agreements, but only to the extent such permitted liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non- |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | bankruptcy law; and (b) the obligations arising under the Prepetition Credit Documents constitute the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms thereof, and are not subject to any challenge or defense, including without limitation, avoidance, subordination, recharacterization, recovery, setoff, offset, attach, counterclaim, cross-claim, or claim (as defined in the Bankruptcy Code) of any kind. |
| | (e) The Debtors have waived, discharged and released any right they may have to challenge or contest any of the Prepetition Obligations, the Prepetition Credit Documents, the DIP Obligations, the DIP Facility Documents (as defined below), and the liens, interests, claims, and security for the Prepetition Obligations and the DIP Obligations, and to assert any offsets, defenses, claims, objections, challenges, and/or causes of action against the Prepetition Secured Party, DIP Facility Lender, and/or any of each of its affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees only to the extent any such offset, defenses, claims, objections, challenges, and/or cause of action against any such parties is related to the Prepetition Obligations or the DIP Obligations, and to assert that any portion of the Prepetition Obligations or the DIP Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law. |
| | (f) No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens, Prepetition Secured Obligations, DIP Facility Liens, or DIP Obligations exist, no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim or counterclaim of any kind or nature to any of the Prepetition Liens, Prepetition Secured Obligations, DIP Facility Liens, or DIP Obligations exist, and no portion of the Prepetition Liens, Prepetition Secured Obligations, DIP Facility Liens, or DIP Obligations are subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law or equity. |
| | (g) The Debtors, on behalf of themselves and their respective estates (including any successor trustee or other estate representative in the Chapter 11 Cases and any Successor Cases (as defined herein), and any party acting by, through or under the Debtors or their estates), hereby stipulate and agree that they absolutely and unconditionally release and forever and irrevocably discharge and acquit the Prepetition Secured Party, the DIP Facility Lender, and each of their respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their capacity as such (collectively, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Loan Documents, the Prepetition Credit Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Party and/or the DIP Facility Lender (collectively, the "Released Claims") that exist or may exist prior to the entry of this Final Order by the Court. The Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors now have or may claim to have against the Released Parties arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Final Order by the Court.<br><br>(h) The Debtors admit, stipulate, acknowledge, and agree that the DIP Facility Lender and the Prepetition Secured Party shall have the right, subject to section 363(k) of the Bankruptcy Code, to credit bid (independently or together) up to the full amount of the applicable outstanding Prepetition Secured Obligations and/or the DIP Obligations in each case, including, without limitation, any accrued interest and expenses, in a sale of any DIP Collateral (defined below) or Prepetition Collateral, as applicable, and whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.<br><br>(i) All of the Debtors' cash and cash equivalents, including cash on deposit in any account or accounts as of the Petition Date, securities or other property, wherever located, whether as original collateral or |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Prepetition Secured Party and DIP Facility Lender. |
| **Adequate Protection**<br>Bankruptcy Rules 4001(b)(l)(B)(iv); Interim Order at ⁋ 13 | (a) <u>Adequate Protection Liens</u>.    The Prepetition Secured Party shall be granted, as adequate protection, continuing liens and replacement liens on the Prepetition Collateral and any and all assets of the Debtors as exist on or after the Petition Date (including, without limitation, proceeds of Prepetition Collateral) in the same priority and validity as existed on the Petition Date (the "<u>Adequate Protection Liens</u>") to secure its claims for any diminution in the value of such Prepetition Secured Party's interests in the Prepetition Collateral during the pendency of these Chapter 11 Cases, whether the reason for such diminution is as a result of, arises from, or is attributable to, the use of Cash Collateral, the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral, the imposition of the automatic stay, or otherwise (including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to the Prepetition Secured Party seeking relief from the automatic stay or the Bankruptcy Court granting such relief).  The Adequate Protection Liens shall be junior only to the Carve-Out and Prepetition Permitted Liens, and senior to any other liens.  The Adequate Protection Liens are valid, binding, enforceable, and fully perfected as of the Petition Date without the necessity of the execution, filing, or recording by the Debtors or the Prepetition Secured Party of security agreements, pledge agreements, financing statements, or other agreements.    The Adequate Protection Liens shall cover assets, interests, and proceeds of the Debtors that are or would be collateral under the Prepetition Credit Documents if not for section 552(a) of the Bankruptcy Code, and all cash and cash equivalents, including Cash Collateral.<br><br>(b) <u>Superpriority Administrative Claim</u>.  The Prepetition Secured Party shall be granted in each of the Debtors' Cases an allowed administrative claim (the "<u>Adequate Protection Claim</u>") under section 507(b) of the Bankruptcy Code to the extent that the Adequate Protection Liens do not adequately protect against the diminution in the value of the Prepetition Secured Party's interests in the Prepetition Collateral from and after the Petition Date, subject to the terms of the Carve-Out. |
| **Termination Events**<br>Bankruptcy Rule 4001(b)(l)(B)(iii); Local Rule 4001-2(a)(ii)(M) | Until the payment in full of the DIP Obligations, the occurrence of any of the following events, unless waived by the DIP Facility Lender in writing (which may be by electronic mail) and in accordance with the terms of the DIP Loan Documents, shall constitute an event of default hereunder (collectively, the "<u>Events of Default</u>"):<br><br>(a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants or obligations under the Interim Order, including, without limitation, failure to make any payment under this Interim Order when due, or the failure to comply with any Sale Milestone; |

| Bankruptcy Code / Local Rule | Summary of Material Terms |
|---|---|
| | (b) the occurrence and continuation of any Events of Default under, and as defined in, the DIP Term Sheet, or any other DIP Loan Documents; |
| | (c) without the prior written consent of the DIP Lender and the Prepetition Secured Party, as applicable, the entry of an order providing for (a) any modification, stay, vacatur, or amendment to this Final Order, or any other use of Cash Collateral resulting from DIP Collateral or Prepetition Collateral; (b) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or the Adequate Protection Superpriority Claims, other than the Carve-Out and the Prepetition Permitted Liens; (c) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically permitted by the DIP Loan Documents; (d) without the prior written consent of the Prepetition Secured Party, any lien on any of the Prepetition Collateral with priority equal to or superior to the Prepetition Liens or Adequate Protection Liens; |
| | (d) the filing by the Debtors, the Debtors supporting, or the failure of the Debtors to timely oppose any motion or application seeking entry of an order of the nature described in section (c) immediately above; or |
| | (e) the Debtors propose or support any plan of reorganization or liquidation or sale of all or substantially all of the Debtors' assets or equity, or order confirming such plan or approving such sale, that is not conditioned upon the payment in full of the DIP Obligations upon the consummation of such plan or sale. |

30.    The Interim Order also includes certain terms that may constitute material provisions requiring explicit disclosure under the Local Rules.  The provisions described in Local Rule 4001-2(a)(i), to the extent applicable, are set forth at the following sections of the Interim Order:

10035170.v9

(a)     <u>Local Rule 4001-2(a)(i)(A) – Cross Collateralization</u>.  No provision of the Interim Order grants cross-collateralization protection regarding Cash Collateral of the type contemplated by the Local Rules.

(b)     <u>Local Rule 4001-2(a)(i)(B) – Validity, Perfection, and Amount of Prepetition Liens</u>.  The Interim Order stipulates, subject to entry of the Final Order, to the validity and perfection of liens held by the Prepetition Secured Party and the DIP Facility Lender.

(c)     <u>Local Rule 4001-2(a)(i)(C) – Section 506(c) Waiver</u>.  Subject to entry of the Final Order, in consideration of their agreement to permit the use of Cash Collateral and/or to permit priming liens to the DIP Facility Lender, the Debtors have agreed to waive the provisions of  section 506(c) of the Bankruptcy Code as to the Prepetition Secured Party and the DIP Facility Lender.

(d)     <u>Local Rule 4001-2(a)(i)(D) – Liens on Avoidance Actions</u>.  Subject to entry of the Final Order, the Interim Order grants liens on avoidance actions as a form of adequate protection to the Prepetition Secured Party, and as collateral and a form of adequate protection to the DIP Facility Lender.

(e)     <u>Local Rule 4001-2(a)(i)(E) – Provisions Deeming Prepetition Debt to be Postpetition Debt</u>.  The Interim Order contains no provisions that deem prepetition debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt.

(f)     <u>Local Rule 4001-2(a)(i)(F) – Disparate Treatment of Professionals Retained by the Committee</u>.  In the event a committee is appointed, the Final Order will address fees of professionals retained by the committee.

(g)     <u>Local Rule 4001-2(a)(i)(G) – Nonconsensual Priming</u>.  The Interim Order does not provide for nonconsensual priming of any existing lien.

(h)     <u>Local Rule 4001-2(a)(i)(H) – Provisions Affecting the Court's Power to Consider Equities of the Case</u>.  Subject to entry of the Final Order, the Debtors have agreed to waive any "equities of the case" claims under section 552(b) of the Bankruptcy Code as to the Prepetition Secured Party and the DIP Facility Lender.

## BASIS FOR RELIEF

### A.     This Court should Authorize the Debtors to Obtain Postpetition Financing and Grant Priming Liens and other Rights and Privileges to the DIP Facility Lender

31.     Bankruptcy courts have authority to permit debtors-in-possession to obtain postpetition financing pursuant to section 364 of the Bankruptcy Code.  Specifically, section 364(c) of the Bankruptcy Code requires a finding, made after notice and a hearing, that a debtor

10035170.v9

seeking postpetition financing on a secured basis cannot "obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] as an administrative expense." 11 U.S.C. § 364(c). In addition, under section 364(d)(1) of the Bankruptcy Code, courts may, after notice and a hearing, authorize a debtor to obtain postpetition credit secured by a "priming" lien from affected secured parties. Specifically, section 364(d)(1) of the Bankruptcy Code provides, in relevant part, that a court, after notice and a hearing, may:

> authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
> (A)   the [debtor] is unable to obtain credit otherwise; and
>
> (B)   there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1). In evaluating proposed postpetition financing under sections 364(c) and 364(d)(1) of the Bankruptcy Code, courts perform a qualitative analysis and generally consider various factors, including whether:

> (a)   unencumbered credit or alternative financing without superpriority status is available to the debtor;
>
> (b)   the credit transactions are necessary to preserve assets of the estate;
>
> (c)   the terms of the credit agreement are fair, reasonable, and adequate;
>
> (d)   the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtors' estate and their creditors; and
>
> (e)   the proposed financing agreement adequately protects prepetition secured creditors.

See, e.g., In re Los Angeles Dodgers LLC, 457 B.R. 308, 312 (Bankr. D. Del. 2011); In re Aqua Assoc., 123 B.R. 192 (Bankr. E.D. Pa. 1991).

32.     For the reasons discussed herein, the Debtors submit that they satisfy the standards required to access postpetition financing on a superpriority claim and priming lien basis under sections 364(c) and 364(d) of the Bankruptcy Code.

**(b)     *The Debtors Cannot Obtain Financing on More Favorable Terms***

33.     In demonstrating that credit is not available without the protections afforded by sections 364(c) or 364(d) of the Bankruptcy Code, a debtor need only make a good faith effort. See, e.g., In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1986) (holding "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable").  Moreover, where few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing."  In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

34.     As set forth above and in the First Day Declaration and DIP Declaration, given their current financial condition, financing arrangements, and debt and capital structure, the only source of financing reasonably available and actionable is that offered by the DIP Facility Lender on the terms under the DIP Term Sheet, and the Debtors were not able to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. Accordingly, the Debtors submit that, despite their good faith efforts, similar credit is not available to the Debtors without the priming sought through the Interim Order.

**(c)     *The DIP Facility and DIP Term Sheet are Necessary to Preserve the Value of the Debtors' Estates***

35.     As debtors-in-possession, the Debtors have a fiduciary duty to protect and maximize the value of their estates.  See In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir.

33

2004).  The DIP Facility and DIP Term Sheet, if approved, will provide working capital critical to fund the Debtors' day-to-day operations and the chapter 11 cases, which will provide a path for the Debtors to sell their assets as a going-concern pursuant to section 363 of the Bankruptcy Code by year end.  Without access to the DIP Facility, the Debtors may be forced to cease operations after the Petition Date, which would result in immediate and irreparable harm to their businesses, deplete the going-concern value of such businesses, and upend the going-concern sale process that the Debtors believe is the best way to maximize value for creditors.  The Debtors also would be unable to administer their chapter 11 cases without the liquidity provided by the DIP Facility.  The Debtors' ability to maintain business relationships with their vendors, suppliers, utilities, and customers, to satisfy other working capital and operational needs, and to otherwise finance their operations during the chapter 11 cases, is essential to the Debtors' continued viability and to ensure a value-maximizing sale process.

36.     Because the Debtors' available and projected cash from operations alone is insufficient to fund their operations, <u>see</u> Budget, the funds to be provided under the DIP Facility are necessary to preserve the value of the Debtors' estates for the benefit of all stakeholders.

### (d)    *The Terms of the DIP Term Sheet are Fair, Reasonable, and Adequate under the Circumstances*

37.     In considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the proposed lender.  <u>See</u> <u>In re L.A. Dodgers</u>, 457 B.R. at 312 (approval of debtor-in-possession financing requires terms that are "fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender"); <u>see</u> <u>also</u> <u>In re Farmland Indus., Inc.</u>, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003) (although many of the terms favored the lenders, "taken in context, and considering the relative circumstances of the parties," the court found them to be reasonable);

Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.), 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization).

38.     As described in the First Day Declaration, the DIP Declaration and herein, given the urgent need of the Debtors to obtain financial stability for the benefit of all parties in interest and fund a sale process in these Chapter 11 Cases, the Debtors submit that the terms of the DIP Term Sheet are fair, appropriate, reasonable, and in the best interests of the Debtors, their estates, and their creditors.  The DIP Term Sheet, moreover, was negotiated extensively by the Debtors and the DIP Facility Lender, in good faith and at arm's-length as required by section 364(e) of the Bankruptcy Code, with all parties represented by experienced counsel.  The Debtors, therefore, believe that this requirement is satisfied.

### (e)     Entry into the DIP Term Sheet Reflects the Debtors' Reasonable Business Judgment

39.     A debtor's decision to enter into a postpetition lending facility under § 364 of the Bankruptcy Code is governed by the business judgment standard.  See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del 1994) (noting that the interim loan, receivable facility, and asset based facility were approved because they "reflect[ed] sound and prudent business judgment [were] reasonable under the circumstances and in the best interests of TWA and its creditors"); Ames Dep't Stores, Inc., 115 B.R. at 40 ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"). Courts grant a debtor-in-possession considerable deference in acting in accordance with its business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such

credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. See, e.g., In re L.A. Dodgers, 457 B.R. at 313 ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender.").

40.    For the reasons set forth above and in the First Day Declaration and DIP Declaration, the Debtors submit that entry into the DIP Term Sheet is consistent with the exercise of the Debtors' reasonable business judgment. The Debtors, therefore, request that this Court authorize the Debtors to enter into the DIP Term Sheet and access funds under the DIP Facility, subject to the terms of the Interim Order, and that this Court grant to the DIP Facility Lender all of the rights, privileges, and protections, as set forth herein, in the DIP Term Sheet, and the Interim Order, that are necessary to protect the DIP Facility Lender and secure the DIP Obligations.

### B.    The DIP Facility Lender should be Deemed a Good-Faith Lender under Section 364(e) of the Bankruptcy Code

41.    The Debtors submit that the DIP Facility Lender should be deemed a good-faith lender under the Bankruptcy Code. Specifically, section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e). Section 364(e)of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal.

42.     As explained herein and in the First Day Declaration and DIP Declaration, the DIP Term Sheet is the result of: (i) the Debtors' reasonable judgment that under the circumstances the DIP Facility Lender provided a reasonable, market and actionable postpetition financing proposal; and (ii) extended arm's-length, good-faith negotiations between the Debtors and the DIP Facility Lender.  The Debtors submit that the terms and conditions of the DIP Term Sheet are reasonable under the circumstances, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code, as more particularly set forth in the DIP Term Sheet and Budget.  Accordingly, the Debtors request that this Court find that the DIP Facility Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and is entitled to all of the protections afforded by that section

C.     **This Court Should Approve the Proposed Adequate Protection for the Debtors' Use of Prepetition Collateral, including Cash Collateral**

43.     To the extent a secured creditor's interests in the collateral constitute valid and perfected security interests and liens as of the Petition Date, section 364(d)(1)(B) of the Bankruptcy Code requires that adequate protection be provided where the liens of such secured creditor are being primed to secure the obligations under a debtor in possession financing facility. Similarly, section 363(c)(2) of the Bankruptcy Code provides that a debtor may use Cash Collateral as long as: (a) each entity that has an interest in such Cash Collateral consents; or (b) the bankruptcy court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of the section.  See 11 U.S.C. § 363(c)(2).  The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use after commencement of the bankruptcy case.  See In re Carbone Cos., 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral); In re

37

Cont'l Airlines, Inc., 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (adequate protection for use of collateral under § 363 is limited to use-based decline in value).

44.     Although section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts must decide what constitutes sufficient adequate protection on a case-by-case basis.  See Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case-by-case basis."); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case . . . .") (citation and quotation omitted).  The focus of the requirement is to protect a secured creditor from the diminution in the value of its interest in the particular collateral during the period of use.  See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citations omitted).

45.     As set forth above, the Second Lien Parties have consented to the use of the Cash Collateral pursuant to section 363(c)(2)(A) of the Bankruptcy Code.  The proposed adequate protection provided to the Prepetition Secured Party—the only party other than the Second Lien Parties that the Debtors anticipate may assert a lien on both Prepetition Collateral and Cash Collateral—comprises of the following:

    (a)    **Replacement Liens**.  The Prepetition Secured Party shall be granted, as adequate protection, continuing liens and replacement liens on the Prepetition Collateral and any and all assets of the Debtors as exist on or after the Petition Date (including, without limitation, proceeds of Prepetition Collateral) in the same priority and validity as existed on the Petition Date (the "Adequate Protection Liens") to secure its claims for any diminution in the value of such Prepetition Secured Party's interests in the Prepetition Collateral during the pendency of these Chapter 11 Cases, whether the reason for such diminution is as a result of, arises from, or is

attributable to, the use of Cash Collateral, the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral, the imposition of the automatic stay, or otherwise (including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to the Prepetition Secured Party seeking relief from the automatic stay or the Bankruptcy Court granting such relief). The Adequate Protection Liens shall be junior only to the Carve-Out and Prepetition Permitted Liens, and senior to any other liens. The Adequate Protection Liens are valid, binding, enforceable, and fully perfected as of the Petition Date without the necessity of the execution, filing, or recording by the Debtors or the Prepetition Secured Party of security agreements, pledge agreements, financing statements, or other agreements. The Adequate Protection Liens shall cover assets, interests, and proceeds of the Debtors that are or would be collateral under the Prepetition Credit Documents if not for section 552(a) of the Bankruptcy Code, and all cash and cash equivalents, including Cash Collateral; and

(b)    **Superpriority Administrative Claim**. The Prepetition Secured Party shall be granted in each of the Debtors' Chapter 11 Cases an allowed administrative claim (the "Adequate Protection Claim") under section 507(b) of the Bankruptcy Code to the extent that the Adequate Protection Liens do not adequately protect against the diminution in the value of the Prepetition Secured Party's interests in the Prepetition Collateral from and after the Petition Date, subject to the terms of the Carve-Out and Prepetition Permitted Liens.

46.    The Debtors believe that the adequate protection proposed herein to protect any diminution in value of the Prepetition Secured Party' interest in the Prepetition Collateral and Cash Collateral is fair and reasonable. Accordingly, based upon the foregoing, the Debtors respectfully request that the Court authorize the Debtors to provide the adequate protection described above to such parties.

**D.    Modification of the Automatic Stay is Warranted and Necessary to Facilitate the Debtors' Postpetition Borrowing through the DIP Facility**

47.    The Debtors request that this Court modify the automatic stay provisions of section 362 of the Bankruptcy Code solely to the extent necessary to permit the DIP Facility Lender to exercise, upon the occurrence and during the continuance of any Event of Default, all rights and remedies provided for in the DIP Term Sheet (all subject to the default and notice provisions set forth in the Interim Order), and to the extent necessary to grant the adequate protection to the

Prepetition Secured Party as set forth herein and in the Interim Order.  The Debtors believe that these modifications to the automatic stay are fair and reasonable and are necessary conditions to effectuate the relief sought in this Motion.

### E.    Interim Relief is Warranted

48.    Bankruptcy Rules 4001(b)(2) and 4001(c)(2) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the court may conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit on an interim basis "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Fed. R. Bankr. P. 4001(b)(2); (c)(2).

49.    As described herein and in the First Day Declaration and DIP Declaration, the Debtors have an urgent and immediate need to need to borrow funds and use Cash Collateral. During the thirteen days after the Petition Date, the Debtors will incur ordinary course expenses and require cash to satisfy their working capital and operational needs, and to otherwise finance their chapter 11 cases.  Failure to pay those expenses as they come due will result in irreparable harm to the business relationships that the Debtors have worked hard to maintain, and which form the foundation of the going concern value which they plan to maximize by virtue of the proposed sale process.

50.    Given the immediate and irreparable harm to be suffered by the Debtors, their estates, and their creditors absent interim relief, the Debtors request that, pending a final hearing, this Court schedule an interim hearing as soon as practicable after the Petition Date to consider the interim relief requested in the Motion.

## REQUEST FOR FINAL HEARING

51.     Pursuant to Bankruptcy Rule 4001(b)(2) and 4001(c)(2), the Debtors also request that this Court set a date for a final hearing on the Motion that is as soon as practicable in accordance with the Bankruptcy Rules and fix the time and date for parties to file objections to the Motion.

## NOTICE

52.     The Debtors will provide notice of this Motion to Notice will provide notice of this motion to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured creditors or their counsel, (c) counsel to the Stalking Horse Bidder, the DIP Facility Lender, and the Prepetition Secured Party, (d) all known holders of filed liens on the Debtors' assets, and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.  As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors believe that no further notice is required.

## CONCLUSION

WHEREFORE the Debtors respectfully request entry of the Interim Order and, following adequate notice and hearing, the Final Order, granting the relief requested herein and such other and further relief as this Court may deem just and appropriate.

[Remainder of page intentionally left blank]

10035170.v9

Dated:  June 22, 2022
Wilmington, Delaware

_/s/Domenic E. Pacitti_
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:     (302) 426-1189
Facsimile:      (302) 426-9193
Email:            dpacitti@klehr.com
                      myurkewicz@klehr.com
                      sveghte@klehr.com

-and-

Morton R. Branzburg (_pro hac vice_ admission pending)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:     (215) 569-3007
Facsimile:      (215) 568-6603
Email:            mbranzburg@klehr.com

_Proposed Counsel for the Debtors and
Debtors in Possession_

42