**EXHIBIT A**

**Revised Proposed Order**

3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | ) | Case No. 22-10559 (JKS) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | **Related to Docket No. 15** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014: (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO § 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO § 363 OF THE BANKRUPTCY CODE; (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTY AND DIP FACILITY LENDER; AND (V) SCHEDULING A FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(B) AND (C)**

Upon consideration of the *Motion of the Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014: (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to § 364 of the Bankruptcy Code; (II) Authorizing Use of Cash Collateral Pursuant to § 363 of the Bankruptcy Code; (III) Granting Liens and Super-priority Claims; (IV) Granting Adequate Protection to the Prepetition Secured Party and DIP Facility Lender; and (V) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. R. 4001(b) and (c)* (the "<u>Motion</u>")[2] filed by the Debtors; and it appearing that due and proper notice of the Motion has been given, and that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefor;

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528).  The location of the Debtors' service address is 3700 S Kedzie Avenue, Chicago, Illinois 60632.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

**THE COURT HEREBY FINDS AND CONCLUDES**:

A.      On June 22, 2022 (the "Petition Date"), the Debtors commenced the Cases in the Bankruptcy Court.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      On or about the same date as the filing of the Motion, the Debtors: (i) filed a motion seeking joint administration of the Chapter 11 Cases; and (ii) have or will imminently be filing a motion seeking an order approving, inter alia, bid procedures and sale process (the "Bid Procedures and Sale Motion").  No request for the appointment of a trustee or examiner has been made in the Cases.  No committee has been appointed or designated in the Cases.

C.      The Bankruptcy Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Debtors' Stipulations: Subject to Paragraph 15 hereof, each stipulation, admission, and agreement contained in this Interim Order, including, without limitation, the sstipulations set forth below (collectively, the "Debtors' Stipulations"), shall be binding upon the Debtors, their estates, and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes. The Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  The Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows:

(a)      On April 24, 2015, GSB as borrower, GSH and GSRE as guarantors, certain financial institutions identified in the Credit Agreement (the "Initial Lenders"), and BNP

Paribas as Administrative Agent ("<u>Agent</u>") executed that certain Credit Agreement dated as of April 24, 2015 (as amended, the "<u>Credit Agreement</u>").  GSB's obligations under the Credit Agreement were secured by valid, first priority, fully perfected liens (collectively, the "<u>Prepetition Liens</u>") in substantially all of the Debtors' assets (the "<u>Prepetition Collateral</u>").  The documents evidencing the Prepetition Liens together with the Credit Agreement, the guaranties and all ancillary loan documentation shall be referred to herein as the "<u>Prepetition Credit Documents</u>."

(b)       On April 26, 2022, the Prepetition Secured Party acquired all the rights and interests of the Initial Lenders and the Agent under the Prepetition Credit Documents.

(c)       As of the Petition Date, the Debtors were, absolutely and unconditionally, indebted and obligated to Prepetition Secured Party under the Prepetition Credit Documents in a principal amount not less than $88,262,032.74, plus accrued but unpaid interest, fees, costs and expenses incurred by the Prepetition Secured Party under the Prepetition Credit Documents (to the extent permitted by such Prepetition Credit Documents) (all such outstanding principal, interest, fees, costs, expenses and indemnification rights or claims, including, without duplication, any and all amounts owing or outstanding under the Prepetition Credit Documents, whether incurred prepetition or postpetition to the extent permitted by the Bankruptcy Code, and whether or not contingent or otherwise (the "<u>Prepetition Obligations</u>")).

(d)       As of the Petition Date and immediately prior to giving effect to this Interim Order, the Prepetition Credit Documents are valid and binding agreements and obligations of the Debtors party thereto, and the liens granted pursuant thereto constitute valid, binding, enforceable and perfected security interests and liens, subject only to the liens permitted under such agreements, but only to the extent such permitted liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the

3

Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (b) the obligations arising under the Prepetition Credit Documents constitute the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms thereof, and are not subject to any challenge or defense, including without limitation, avoidance, subordination, recharacterization, recovery, setoff, offset, attach, counterclaim, cross-claim, or claim (as defined in the Bankruptcy Code) of any kind.

(e)     The Debtors have waived, discharged and released any right they may have to challenge or contest any of the Prepetition Obligations, the Prepetition Credit Documents, the DIP Obligations, the DIP Facility Documents (as defined below), and the liens, interests, claims, and security for the Prepetition Obligations and the DIP Obligations, and to assert any offsets, defenses, claims, objections, challenges, and/or causes of action against the Prepetition Secured Party, DIP Facility Lender, and/or any of each of its affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees only to the extent any such offset, defenses, claims, objections, challenges, and/or cause of action against any such parties is related to the Prepetition Obligations or the DIP Obligations, and to assert that any portion of the Prepetition Obligations or the DIP Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(f)     No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens, Prepetition Secured Obligations, DIP Facility

10045914.v11

Liens, or DIP Obligations exist, no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim or counterclaim of any kind or nature to any of the Prepetition Liens, Prepetition Secured Obligations, DIP Facility Liens, or DIP Obligations exist, and no portion of the Prepetition Liens, Prepetition Secured Obligations, DIP Facility Liens, or DIP Obligations are subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law or equity.

(g)     The Debtors, on behalf of themselves and their respective estates (including any successor trustee or other estate representative in the Chapter 11 Cases and any Successor Cases (as defined herein), and any party acting by, through or under the Debtors or their estates), hereby stipulate and agree that they absolutely and unconditionally release and forever and irrevocably discharge and acquit the Prepetition Secured Party, the DIP Facility Lender, and each of their respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their capacity as such (collectively, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in

connection with, or relating to the DIP Facility, the DIP Loan Documents, the Prepetition Credit Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Party and/or the DIP Facility Lender (collectively, the "Released Claims") that exist or may exist prior to the entry of this Final Order by the Court.  The Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors now have or may claim to have against the Released Parties arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Final Order by the Court.

(h)    The Debtors admit, stipulate, acknowledge, and agree that the DIP Facility Lender and the Prepetition Secured Party shall have the right, subject to section 363(k) of the Bankruptcy Code, to credit bid (independently or together) up to the full amount of the applicable outstanding Prepetition Secured Obligations and/or the DIP Obligations in each case, including, without limitation, any accrued interest and expenses, in a sale of any DIP Collateral (defined below) or Prepetition Collateral, as applicable, and whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

(i)    All of the Debtors' cash and cash equivalents, including cash on deposit in any account or accounts as of the Petition Date, securities or other property, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Prepetition Secured Party and DIP Facility Lender.

6

E.        The Second Lien Party has consented (on behalf of the Second Lien Lenders) to the use of Cash Collateral in the Debtors' Chapter 11 Cases.  The Debtors and Prepetition Secured Party have represented that the Prepetition Secured Party is the only entity other than the Second Lien Party (on behalf of the Second Lien Lenders) with an interest in the Cash Collateral.

F.        The Debtors' budget (annexed hereto and incorporated herein as **<u>Exhibit A</u>**, the "<u>Budget</u>") indicates that the Debtors will require the use of Cash Collateral and the DIP Facility to meet the Debtors' expenses in connection with their business operations and to pay certain expenses related to the Debtors' Chapter 11 Cases.

G.        The Prepetition Secured Party is entitled, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date.

H.        The Debtors' businesses have an immediate need to obtain the DIP Facility and use Cash Collateral in order to have adequate liquidity to provide for, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, and to satisfy other working capital, operational, financial and general corporate needs, as well as to pursue the orderly sale of its assets through these Chapter 11 Cases.

I.        Under the circumstances, the Debtors are unable to obtain sufficient financing from sources other than the DIP Facility Lender on terms more favorable than under the DIP Facility and all the documents, exhibits, schedules, and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Term Sheet (as defined below) and the Budget, the "<u>DIP Facility Documents</u>").

J.        Each of the DIP Facility Lender and Prepetition Secured Party have acted in good faith in, as applicable, negotiating, consenting to and in agreeing to provide the postpetition financing arrangements and use of Cash Collateral (or otherwise not opposing such use) contemplated by this Interim Order and the other DIP Facility Documents, and the reliance of each of the DIP Facility Lender and Prepetition Secured Party on the assurances referred to above is in good faith.

K.        Notice of the Motion and the relief requested thereby and this Interim Order has been provided in accordance with Bankruptcy Rule 4001, upon (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured creditors or their counsel, (c) counsel to the Stalking Horse Bidder, the DIP Facility Lender, and the Prepetition Secured Party, (d) all known holders of filed liens on the Debtors' assets, and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

L.        Absent entry of this Interim Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.

M.        Based on the record presented by the Debtors to the Bankruptcy Court at the Interim Hearing and in the First Day Declaration and DIP Declaration: (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtors and the DIP Facility Lender and the Prepetition Secured Party, and any credit extended, loans made, credit support provided and other financial accommodations extended to the Debtors by the DIP Facility Lender and use of Cash Collateral

by the Debtors shall be deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

**THEREFORE**, it is hereby **ORDERED**, **ADJUDGED**, AND **DECREED** that:

1.      <u>Disposition</u>.  The Motion is granted on an interim basis, as set forth herein.  The Debtors are authorized to use Cash Collateral and borrow under the DIP Facility pursuant to the Budget, the DIP Term Sheet, and this Interim Order pending the Final Hearing.  Any objections to the Motion that have not previously been resolved or withdrawn are hereby overruled.  This Interim Order shall immediately become effective upon its entry.

**B.      <u>Authorization to Borrow and Rights of DIP Facility Lender.</u>**

2.      <u>Authorization to Borrow</u>.  Upon execution and delivery of the Debtor-in-Possession Term Sheet attached hereto as **<u>Exhibit B</u>** (the "<u>DIP Term Sheet</u>") by the Debtors and the DIP Facility Lender, and provided that the Debtors are not in default under the terms of this Interim Order or the DIP Term Sheet, the Debtors are authorized to borrow on an interim basis under the DIP Facility from the DIP Facility Lender up to the principal amount of **<u>$500,000.00</u>** (together with interest, fees, charges and expenses payable under the DIP Facility Documents), pursuant and subject to the terms and conditions of this Interim Order and the DIP Term Sheet (including the conditions to effectiveness thereof).  Upon execution and delivery of the DIP Term Sheet and entry of the Interim Order, the DIP Facility Documents shall constitute legal, valid, and binding obligations of the parties thereto, enforceable against the Debtors in accordance with their terms.

3.      <u>Structure and Amount of DIP Facility</u>.  Subject to entry of the Final Order, the DIP Facility in the maximum principal amount of **<u>$1,500,000.00</u>** shall be comprised of a senior secured term loan credit facility, as set forth in the DIP Term Sheet.  The DIP Facility Lender is relying upon the Debtors' compliance with the Budget in accordance with the Interim Order and the DIP

10045914.v11

Facility Documents in determining to enter into the postpetition financing arrangements provided for herein.

4.      <u>Continuation of Liens and Liens Securing DIP Obligations</u>.  Until payment in full, in cash (unless otherwise released as part of any credit bid for the assets of the Debtors), of all of the DIP Obligations and termination of the DIP Facility Lender's commitments under the DIP Facility, all liens and security interests of the DIP Facility Lender shall remain valid and enforceable with the same continuing priority as described herein.

5.      <u>DIP Loans</u>.  All loans made to or for the benefit of the Debtors on or after the Petition Date under the DIP Facility Documents (collectively, the "<u>DIP Loans</u>"), which includes, without limitation, principal, interest, fees, costs, expenses, indemnification obligations and other obligations and amounts due from time to time by the Debtors to the DIP Facility Lender under the DIP Facility Documents and this Interim Order, shall hereinafter be referred to as the "<u>DIP Obligations</u>."

6.      <u>DIP Collateral</u>.  All amounts owing by the Debtors under the DIP Facility in respect thereof, including, without limitation, principal, interest, fees and costs, will be secured by a first priority perfected security interest in and lien on all assets (tangible, intangible, real, personal and mixed) of the Debtors, including, without limitation, any collateral granted in respect of the obligations owed to the Prepetition Secured Party, whether now owned or hereafter acquired, including, without limitation, deposit and other accounts, inventory, equipment, receivables, capital stock or other ownership interest in subsidiaries, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks, and other general intangibles, and all products and proceeds thereof, and (subject to entry of a final order) any

10045914.v11

proceeds of Avoidance Actions[3] and other causes of action available to or property of the Debtors' bankruptcy estates (collectively, the "<u>DIP Collateral</u>"), subject only to the Carve-Out and the Prepetition Permitted Liens (defined below).

7.      <u>DIP Facility Liens</u>.  As security for the repayment of the DIP Obligations, pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, the DIP Facility Lender is hereby granted valid, binding, continuing, enforceable, fully perfected, and unavoidable first-priority senior priming security interests in and liens (collectively, the "<u>DIP Facility Liens</u>") on and in the DIP Collateral and all proceeds thereof, which liens are valid, binding, enforceable, and fully perfected as of the date hereof, not subject to subordination, impairment, or avoidance, for all purposes in the Chapter 11 Cases and any successor case.  The DIP Facility Liens granted herein shall be valid, perfected and non-avoidable, first priority liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors, including, upon entry of the Final Order, the proceeds of Avoidance Actions, and shall be senior to all other liens and claims except the Carve-Out and the Prepetition Permitted Liens, to the extent such liens and security interests are valid, perfected, enforceable and nonavoidable (provided, that with respect to such excepted liens and security interests, if any, the DIP Facility Lender shall be granted second priority liens). As used herein, the term "<u>Prepetition Permitted Liens</u>" shall mean those certain liens senior by operation of law or otherwise permitted by the Prepetition Credit Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the liens securing the Prepetition Obligations as of the Petition Date, or valid, non-avoidable, senior

---

[3]      As used herein, "<u>Avoidance Actions</u>" shall mean the claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law.

priority liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code).

8.    <u>Indemnification</u>.  The Debtors shall be authorized to indemnify the DIP Facility Lender against any liability arising in connection with the DIP Term Sheet to the extent set forth in and in accordance with the terms of the DIP Term Sheet, to the maximum extent permitted under the Bankruptcy Code and applicable law.  All such unpaid fees, expenses and indemnities of the DIP Facility Lender, to the extent permitted by law, shall constitute DIP Obligations, and the repayment thereof shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Term Sheet.

9.    <u>DIP Facility Superpriority Liens</u>.  For all of the DIP Obligations arising under the DIP Facility and the DIP Facility Documents, the DIP Facility Lender is granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out and the Prepetition Permitted Liens, the allowed DIP Facility Superpriority Claim, which claim shall be payable from and have recourse to the DIP Collateral.  The DIP Facility Superpriority Claim shall be deemed a legal, valid, binding, enforceable and perfected claim, not subject to subordination, impairment or avoidance, for all purposes in the Cases and any successor case.

10.    <u>Carve-Out</u>.

(a)    Subject to the terms and conditions contained in this Interim Order, the DIP Facility Liens, DIP Facility Superpriority Claim, and the adequate protection liens and claims of the Prepetition Secured Party as provided for herein, and the liens and claims held by the Prepetition Secured Party, shall be subject and subordinate only to the following (the "<u>Carve-Out</u>"): (i) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (ii) allowed reasonable fees and expenses (the "<u>Professional Fees</u>") of

attorneys, financial advisors, and other professionals (including any claims agent) employed by the Debtors in the Chapter 11 Cases pursuant to a Court order under section 327 and 328 of the Bankruptcy Code (collectively, the "<u>Professionals</u>"), to the extent incurred at any time on or prior to the calendar day on which a Termination Date (defined below) occurs less any retainers held by such Professional as of such date), whether such Professional Fees have been allowed by the Bankruptcy Court before or after the Termination Date; and (iii) Professional Fees of Professionals incurred subsequent to the calendar day immediately following the Termination Date in an aggregate amount not to exceed **<u>$50,000.00</u>**.  The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtors, DIP Facility Lender, Prepetition Secured Party, any committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts.  Payment of any portion of the Carve-Out shall not, and shall not be deemed to: (i) reduce any Debtors' obligations owed to any of the DIP Facility Lender or Prepetition Secured Party, or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral or Prepetition Collateral (or their respective claims against the Debtors).  Notwithstanding anything to the contrary in this Interim Order, the DIP Facility Lender reserves the right to review and object to any fee statement, interim application or monthly application issued or filed by any Professional. Notwithstanding any provision (including, without limitation, any "variance" or similar provision) of this Interim Order or the DIP Facility Documents to the contrary, aggregate cumulative expenditures from Cash Collateral and from the proceeds of the DIP Facility subject to the Carve-Out for the Professionals shall not exceed 100% of the amount with respect thereto set forth in the Budget, and Professional Fees for any Professional included in the Carve-Out shall not exceed 100% of the amount listed in the line item in the Budget for such Professional.

(b)    No Prepetition Collateral, DIP Collateral, proceeds thereof, or Cash Collateral, or any portion of the Carve-Out or financing provided under the DIP Facility, other than Cash Collateral in the aggregate amount of not more than **$25,000.00** for the Professionals, shall include, apply to, be available for any fees or expenses incurred by any party, including the Professionals, in connection with: (i) the investigation, initiation, or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Facility Lender or the Prepetition Secured Party, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization or enforceability of, or asserting any defense, counterclaim or offset to, the DIP Obligations, DIP Facility Liens, the DIP Facility Superpriority Claim, in respect thereof, the Prepetition Credit Agreements, or the Prepetition Obligations, (ii) asserting any claims or causes of action (including, without limitation, claims or actions to hinder or delay the DIP Facility Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Facility Documents or this Interim Order or any Avoidance Actions) against the DIP Facility Lender or Prepetition Secured Party, or (iii) incurring indebtedness other than as expressly permitted by the DIP Facility Documents.

(c)    Subject to Paragraphs 10(a) and (b), prior to the Termination Date, the Debtors are authorized to and shall disburse Cash Collateral into a trust account held by the Debtors' counsel for the benefit of all Professionals (the "Trust Account") the amounts set forth in the Budget for each such Professional; provided however, that (i) the Debtors shall make the foregoing disbursements into the Trust Account only in the specific week(s) such disbursements are reflected in the Budget prior to the Termination Date; (ii) nothing in this subparagraph (c) shall modify the requirements that such fees and expenses remain subject to allowance pursuant to an Order of the Bankruptcy Court; (iii) the Debtors' counsel shall not release funds from the Trust

10045914.v11

Account until such time as a Professional's fees and expenses are allowed pursuant to an Order of the Bankruptcy Court (including any administrative fee order); (iv) the disbursement of funds into the Trust Account shall not modify the Carve-Out in any way (including, without limitation, increasing the amount of funds subject to the Carve-Out prior to or after the Terminate Date, and including that as to funds in the Trust Account, Professional Fees for any Professional shall not exceed 100% of the amount listed in the line item in the Budget for such Professional); and (v) in the event that the amount of funds in the Trust Account exceed the amount of the Carve-Out at the time of the Termination Date, such excess funds shall be returned to the estates (or, if the estates' cash is sold to the Stalking Horse Bidder, returned to the Stalking Horse Bidder), less the **$50,000.00** post-Termination Date Carve-Out.  For the avoidance of doubt, in the event that the sale of substantially all of the Debtors' assets closes on or before August 6, 2022, the Debtors shall remain entitled to disburse funds into the Trust Account in accordance with the amount of the Carve-Out for Professionals set forth in the Budget through August 6, 2022, subject to the remaining provisions herein.

11.    <u>Limitation on Additional Surcharges</u>.  Subject to entry of the Final Order, with the exception of the Carve-Out, neither the DIP Collateral nor any DIP Facility Lender shall be subject to surcharge, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest without the prior written consent of the DIP Facility Lender, and no such consent shall be implied from any other action, inaction or acquiescence by such parties in this proceeding, including but not limited to funding of the Debtors' ongoing operation by the DIP Facility Lender.  Subject to entry of the Final Order, the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived as to the DIP Facility

15

Lender. Upon entry of the Final Order, the DIP Facility Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

12.    <u>Restrictions on the Debtors</u>.   Other than the Carve-Out or Prepetition Permitted Liens, no claim or lien having a priority superior or pari passu with those granted by this Interim Order to the DIP Facility Lender shall be granted by any Debtor while any portion of the DIP Facility (or refinancing thereof) or any commitment thereunder, including the DIP Obligations, remains outstanding.

### C.    <u>Authorization to Use Cash Collateral and Rights to Prepetition Secured Party</u>

13.    <u>Use of Cash Collateral; Adequate Protection</u>.   Subject to the terms and conditions of this Interim Order, the DIP Facility, the DIP Facility Documents, and subject to the Budget, the Debtors are authorized to use Cash Collateral.  As additional consideration for their consent to use of Cash Collateral and the priming of certain of the Prepetition Secured Party's liens, claims, and interests in the Prepetition Collateral (solely as set forth in this Interim Order), the Prepetition Secured Party shall receive the following (collectively, the "<u>Adequate Protection</u>"):

(a)    The Prepetition Secured Party shall have and is granted continuing and enforceable liens in accordance with section 552(b) of the Bankruptcy Code on the Prepetition Collateral (including, without limitation, proceeds of Prepetition Collateral as exist or arise after the Petition Date) and as adequate protection, replacement liens on the Prepetition Collateral, the DIP Collateral, and any and all assets of the Debtors as exist on or after the Petition Date (including, without limitation, proceeds of Prepetition Collateral as exist or arise after the Petition Date) in the same priority and validity as existed on the Petition Date (the "<u>Adequate Protection Liens</u>") to the extent there is any diminution in the value of such Prepetition Secured Party's interests in the Prepetition Collateral or Cash Collateral during the pendency of these Cases,

whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the DIP Facility, the priming of the liens arising under the Prepetition Credit Documents, the use of Cash Collateral, the physical deterioration, consumption, use, sale, lease, disposition, shrinkage or decline in market value of the Prepetition Collateral, the imposition of the automatic stay, or otherwise (including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to the Prepetition Secured Party seeking vacation of the automatic stay or the Bankruptcy Court granting such relief).  The Adequate Protection Liens shall be junior only to: (i) the Prepetition Permitted Liens, (ii) the DIP Facility Liens, and (iii) the Carve-Out, and senior to any other liens.  The Adequate Protection Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtors, the Prepetition Secured Party of security agreements, pledge agreements, financing statements or other agreements.  The Adequate Protection Liens shall cover assets, interests and proceeds of the Debtors that are or would be collateral under the Prepetition Credit Documents, and all cash and cash equivalents, and all assets, interests and proceeds of the Debtors that constitute DIP Collateral (including, upon entry of a final order, proceeds of Avoidance Actions).

(b)    _Administrative Claim_.  The Prepetition Secured Party is hereby granted in each of the Debtors' Chapter 11 Cases an allowed administrative claim (the "_Adequate Protection Claim_") under section 507(b) of the Bankruptcy Code in an amount equal to the diminution in the value of the Prepetition Secured Party's interests in the Prepetition Collateral from and after the Petition Date, and such Adequate Protection Claim shall be junior in priority and subordinate only to: (i) the DIP Superpriority Claims, (ii) the Carve-Out, and (iii) the Prepetition Permitted Liens. The Adequate Protection Claim shall have recourse to and be payable from the DIP Collateral and all proceeds thereof.

17

(c)    Budget.    The Debtors shall not make disbursements in excess of those projected in the Budget and shall not otherwise deviate from the terms of the Budget and applicable variances, without the written consent of each of: (i) the DIP Facility Lender, and (ii) the Prepetition Secured Party, subject to an allowed cumulative four-week variance not to exceed seventeen and one-half percent (17.5%), from the amount in the "Total Disbursements" line in the Budget, as set forth in the DIP Term Sheet.

(d)    Reporting.    After entry of the Interim Order, the Debtors shall provide reporting to the DIP Facility Lender and Prepetition Secured Party in accordance with the DIP Term Sheet.

(e)    Restrictions on Use of Cash Collateral.    Except as set forth in Paragraph 10(b), no Prepetition Collateral, DIP Collateral, proceeds thereof, or Cash Collateral, or any portion of the Carve-Out or financing provided under the DIP Facility shall include, apply to, or be available for any fees or expenses incurred by any party, including the Professionals, in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the Prepetition Secured Party or DIP Facility Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority or enforceability of, or asserting any defense, counterclaim or offset to, the Prepetition Obligations, DIP Obligations, or the Adequate Protection Liens granted herein.

(f)    Limitation on Additional Surcharges.    Subject to entry of the Final Order, with the exception of the Carve-Out, neither the Prepetition Collateral, nor any Prepetition Secured Party shall be subject to surcharge, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest without the prior written consent of such Prepetition Secured Party, and no such consent shall be implied from any other action, inaction or

10045914.v11

acquiescence by such parties in this proceeding, including but not limited to funding of the Debtors' ongoing operation by the Prepetition Secured Party. Subject to entry of the Final Order, the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived as to the Prepetition Secured Party. Upon entry of the Final Order, the Prepetition Secured Party shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral.

14. <u>Binding Effect on Debtors</u>. Effective as of the date of entry of the Interim Order, except as otherwise set forth herein, the Debtors' Stipulations and releases are binding in all circumstances upon the Debtors effective as of the date of entry of the Interim Order.

15. <u>Binding Effect on Non-Debtor Third Parties</u>. Upon entry of this Interim Order, the Debtors' Stipulations and releases herein shall be binding upon the Debtors' estates and subject to entry of the Final Order, each other party-in-interest, including any committee appointed in these chapter 11 cases, except to the extent such party in interest *first* obtains standing, by no later than the earlier of (x) the deadline for parties to object to the entry of the Sale Order (as defined in the Bid Procedures and Sale Motion), provided that the Sale Order is entered in accordance with the Sale Milestones (as may be extended from time to time in accordance with the DIP Term Sheet or this Interim Order), and (y) seventy-five (75) calendar days following the date of entry of this Interim Order (such time period established by the earlier of clauses (x) and (y) shall be referred to as the "<u>Challenge Period</u>," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a contested matter, adversary proceeding, or other matter challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations (each, a "<u>Challenge</u>"), such

Challenge is fully and finally adjudicated, (i) and (ii) shall be referred to as the "Challenge Period Termination Date")) provided, that the timely filing of a motion seeking standing to file a Challenge consistent with applicable law and rules of procedure before the expiration of the Challenge Period, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the Challenge Period only as to the party that timely filed such standing motion, and solely with respect to the Challenge(s) asserted in the draft complaint, until entry of an order granting the motion for standing to prosecute such Challenge(s) described in the draft complaint and permitted by the Court, provided, further that if standing is denied by the Court, the Challenge Period shall be deemed to have immediately expired with respect to such Challenge(s) and *second*, obtains a final, non-appealable order in favor of such party-in-interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "Successful Challenge").  If the Chapter 11 Cases are converted to cases under chapter 7 ("Successor Cases") or if a chapter 11 trustee is appointed, in each case prior to the expiration of the Challenge Period, the Challenge Period for the chapter 7 trustee or such chapter 11 trustee, as applicable, shall be extended until 30 days after the appointment of such chapter 7 trustee or chapter 11 trustee, without prejudice to the right such chapter 7 trustee or chapter 11 trustee to seek a further extension of the Challenge Period from the Court.

16.    Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any Successor Cases (and after the dismissal of these Chapter 11 Cases or any Successor Cases), and without further notice, motion, or application to, order of, or hearing before this Court, (i) any and all payments made to or for the benefit of the Prepetition Secured Party or otherwise authorized by this Interim Order

(whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery or avoidance by any party in interest, (ii) any and all such Challenges by any party-in-interest shall be deemed to be forever released, waived, and barred, (iii) all of the Prepetition Secured Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations shall be binding on all parties in interest in these Chapter 11 Cases or any Successor Cases, including the committee or chapter 11 or chapter 7 trustee, provided, however, that solely as to binding Successor Cases, the foregoing shall be subject to entry of the Final Order. Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on the committee and on any other party-in-interest from and after the Challenge Period Termination Date, except (and only) to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge; provided that all other stipulations (other than those subject to a Successful Challenge) shall remain binding on any committee or other party-in-interest.  Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed to grant standing to any party in interest, including any committee, to bring any Challenge on behalf of the Debtors' estates.  The failure of any party-in-interest, including any committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this paragraph or to require or permit an extension of the Challenge Period Termination Date.

**D.**      **Perfection, Relief from Stay, and Additional Terms and Rights as to the DIP Facility Lender and Prepetition Secured Party**

17.      <u>Additional Perfection Measures</u>.   The DIP Facility Lender and the Prepetition Secured Party shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the DIP Term Sheet and this Interim Order (including, without limitation, the taking possession of any of the DIP Collateral (in accordance with the terms of the DIP Term Sheet), or the taking of any action to have security interests or liens noted on certificates of title or similar documents).

18.      <u>Credit Bid</u>.   Subject to Paragraph 15, the DIP Facility Lender and the Prepetition Secured Party shall have the right to credit bid the DIP Obligations and Prepetition Obligations and under or pursuant to: (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a Chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

19.      <u>Amendment to DIP Facility Documents</u>.   The DIP Facility Lender, with the consent of the Debtors, is authorized to amend and/or modify the DIP Facility Documents without further order of the Court; <u>provided</u> that any such amendments or modifications must be in writing and served upon counsel for the Prepetition Secured Party, committee (if appointed at such time) and the US Trustee; <u>provided</u>, <u>further</u> that any amendments or modifications that would have the effect of increasing the borrowings available, shortening the maturity date of the DIP Facility, increasing the aggregate fees, or the rate or amount of interest payable, or otherwise materially adversely affecting the Debtors' rights or obligations, of the Prepetition Secured Party's rights, under the DIP Facility, shall be done only pursuant to further order of the Court; <u>provided</u> <u>further</u> that any

adjustments to the Budget that do not increase the borrowings available shall not require further order of the Court.

20.    <u>Binding Effect</u>.  The provisions of this Interim Order shall be binding upon and inure to the benefit of all parties-in-interest in these Cases, including, without limitation, the Debtors, the DIP Facility Lender, and the Committee (if appointed), and their respective successors and assigns (including, to the fullest extent permitted by applicable law, any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for any Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code (subject to entry of a Final Order), or any other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the Debtors' estates), and shall inure to the benefit of the Debtors, the Prepetition Secured Party, the DIP Facility Lender, and the committee (if appointed), and their respective successors and assigns; <u>provided</u>, <u>however</u>, that DIP Facility Lender shall have no obligation to extend any financing to any Chapter 7 trustee or similar responsible person appointed for the Debtors' estates.  Such binding effect is an integral part of this Interim Order.

21.    <u>Milestones</u>.  As a condition to the DIP Facility and the use of Cash Collateral, the Debtors have agreed to, and shall comply with, the following milestones (the "<u>Sale Milestones</u>"):

    (a)    The Debtors shall file the Bid Procedures and Sale Motion on the Petition Date.

    (b)    The Debtors shall obtain entry of an order no later than sixteen (16) days after the entry of the Interim Order, in form and substance satisfactory to the Prepetition Secured Party, granting the Bid Procedures Motion.

    (c)    By no later than forty-five (45) days after the Petition Date, the Debtors shall obtain entry of an order, in form and substance satisfactory to the Prepetition Secured Party, approving the sale of substantially all the Debtors' assets pursuant to the terms of the Stalking Horse Purchase Agreement (as defined in the Bid Procedures and Sale Motion).

(d)     By no later than August 15, 2022, the Debtors shall close the Court-approved sale of substantially all the Debtors' assets under the Stalking Horse Purchase Agreement.

22.     <u>Events of Default</u>.  Until the payment in full of the DIP Obligations, the occurrence of any of the following events, unless waived by the DIP Facility Lender in writing (which may be by electronic mail) and in accordance with the terms of the DIP Loan Documents, shall constitute an event of default hereunder (collectively, the "<u>Events of Default</u>"):

(a)     the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants or obligations under the Interim Order, including, without limitation, failure to make any payment under this Interim Order when due, or the failure to comply with any Sale Milestone;

(b)     the occurrence and continuation of any Events of Default under, and as defined in, the DIP Term Sheet, or any other DIP Loan Documents;

(c)     without the prior written consent of the DIP Lender and the Prepetition Secured Party, as applicable, the entry of an order providing for (a) any modification, stay, vacatur, or amendment to this Final Order, or any other use of Cash Collateral resulting from DIP Collateral or Prepetition Collateral; (b) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or the Adequate Protection Superpriority Claims, other than the Carve-Out and the Prepetition Permitted Liens; (c) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically permitted by the DIP Loan Documents; (d) without the prior written consent of the Prepetition Secured Party, any lien on any of the Prepetition Collateral with priority equal to or superior to the Prepetition Liens or Adequate Protection Liens;

(d)     the filing by the Debtors, the Debtors supporting, or the failure of the Debtors to timely oppose any motion or application seeking entry of an order of the nature described in section (c) immediately above; or

(e)     the Debtors propose or support any plan of reorganization or liquidation or sale of all or substantially all of the Debtors' assets or equity, or order confirming such plan or approving such sale, that is not conditioned upon the payment in full of the DIP Obligations upon the consummation of such plan or sale.

23.    Upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, other than as set forth in this Final Order: (a) the DIP Lender may send a written notice to the Debtors, counsel to the Committee, and the U.S. Trustee (any such declaration shall be referred to herein as a "Termination Declaration") declaring (1) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (2) the commitment of the DIP Lender to make DIP Loans to be terminated, whereupon such commitments and obligation shall be terminated to the extent any such commitment remains under the DIP Facility, (3) the termination of the DIP Facility and the DIP Loan Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations, and (4) the application of the Carve-Out has occurred; (b) interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Loan Documents; and (c) the DIP Lender and/or the Prepetition Secured Party, as applicable, may declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral, other than to pay expenses set forth in the Approved Budget that are necessary to avoid immediate and irreparable harm to the Debtors' estates; *provided, however*, that the professional fees and expenses of the Debtors' and the Committee's professionals shall be governed by Paragraph 10.  Notwithstanding anything contained herein, the earliest date on which a Termination Declaration shall be effective is upon five (5) business days' prior written notice of such Termination Declaration given to the Debtors, counsel to the Committee appointed in these proceedings (if any), and the U.S. Trustee, referred to herein as the "Termination Date."  Following a Termination Date, neither the DIP Lender nor the Prepetition Secured Party shall be required to consent to the use of any Cash Collateral or provide any loans or other financial accommodations

under the DIP Facility. The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee.

24.    <u>Survival</u>.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Cases (and, to the extent not satisfied in full, in cash, the DIP Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (ii) converting any of the Cases to a chapter 7 case; or (iii) dismissing any of the Chapter 11 Cases unless permitted under the DIP Facility Documents, and the terms and provisions of this Interim Order, as well as the DIP Facility Superpriority Claims, the DIP Facility Liens, the adequate protection granted pursuant to this Interim Order, and/or the DIP Facility Documents, shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Interim Order and the DIP Facility Documents to the maximum extent permitted by law until all of the DIP Obligations are indefeasibly paid in full, in cash, and discharged.

25.    <u>Authorization to Act</u>.    Each of the Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees, and all other amounts as provided under and subject to the terms of this Interim Order and the DIP Facility Documents, which may be reasonably required or necessary for the Debtors' full and timely performance under the DIP Facility and this Interim Order.

26.    <u>Insurance Policies</u>.    Upon entry of this Interim Order, each of the Prepetition Secured Party and the DIP Facility Lender shall be, and shall be deemed to be, without any further

10045914.v11

action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Prepetition Collateral or the DIP Collateral.

27.    <u>Subsequent Reversal</u>.  If any or all of the provisions of this Interim Order or the DIP Facility Documents are hereafter modified, vacated, amended or stayed by subsequent order of the Bankruptcy Court or any other court, the Prepetition Secured Party and the DIP Facility Lender shall be protected to the fullest extent permitted by section 364(e) of the Bankruptcy Code.

28.    <u>Effect of Dismissal of Cases</u>.  If the Cases are dismissed, converted, or substantively consolidated, then neither the entry of this Interim Order nor the dismissal, conversion or substantive consolidation of these Cases shall affect the rights of the DIP Facility Lender and the Prepetition Secured Party (to the extent of adequate protection provided hereunder) under their respective documents or this Interim Order, and all of the respective rights and remedies thereunder of the DIP Facility Lender and the Prepetition Secured Party (to the extent of adequate protection provided hereunder) shall remain in full force and effect as if the Cases had not been dismissed, converted or substantively consolidated.  If an order dismissing any of the cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (y) the priming liens, security interests and/or replacement security interests granted to the DIP Facility Lender and, as applicable, the Prepetition Secured Party pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and adequate protection obligations shall have been paid and satisfied in full (and that such priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest), and (z) this Court shall retain jurisdiction,

10045914.v11

notwithstanding such dismissal, for the purposes of enforcing the liens and security interests referred to in clause (y) above.

29.     <u>Findings of Fact and Conclusions of Law</u>.  This Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable effective as of the Petition to the Petition Date immediately upon the entry thereof.

30.     <u>Controlling Effect of Interim Order</u>.  To the extent any provision of this Interim Order conflicts with any provision of the Motion, any prepetition agreement or any document executed in connection with the DIP Facility, the provisions of this Interim Order shall control.

31.     <u>Final Hearing</u>.     The Final Hearing on the Motion shall be heard before the Bankruptcy Court on _____, 2022, at _____ **(EST)** at the United States Bankruptcy Court for the District of Delaware.

32.     <u>BNP Paribas Letter of Credit</u>.  Notwithstanding anything to the contrary herein, (a) the DIP Facility Liens shall be junior to, and the rights of the DIP Facility Lender hereunder shall be subordinated to, the rights, security interests, and liens of BNP Paribas ("<u>BNP</u>") in the cash collateral in the account ending in -0189 (the "BNP Collateral Account") and the proceeds of such cash collateral (together with the BNP Collateral Account, the "<u>BNP Collateral</u>"), (b) the BNP Collateral shall continue to secure the obligations of the Debtors to BNP under (i) the Irrevocable Standby Letter of Credit, dated as of July 19, 2018, issued by BNP in favor of AGNL Croissant, L.L.C. (including all extensions thereto, the "<u>BNP Letter of Credit</u>"), (ii) the Continuing Letter of Credit Agreement, executed in July 2018 (as amended, supplemented, or otherwise modified from time to time, the "<u>BNP Letter of Credit Agreement</u>") and (iii) the Pledge of Deposit Agreement, executed in July 2018 (as amended, supplemented, or otherwise modified from time to time, together with the BNP Letter of Credit and the BNP Letter of Credit Agreement, the "<u>BNP</u>

Letter of Credit Agreements"), (c) BNP's security interests in and liens against the BNP Collateral shall continue to be valid, binding, continuing, enforceable, fully perfected, unavoidable, and first-priority (the "BNP Liens"), and, for the avoidance of doubt, the DIP Facility Liens shall not prime (nor be pari passu with) the BNP Liens, and (d) the Debtors shall only be permitted to use the BNP Collateral in accordance with the terms of the BNP Letter of Credit Agreements.  Further, the automatic stay imposed by section 362 of the Bankruptcy Code is modified to allow BNP to exercise any applicable rights and remedies against the BNP Collateral in accordance with the terms of the BNP Letter of Credit Agreements, and upon any such exercise, the DIP Facility Liens in the BNP Collateral subject to such exercise shall be automatically and irrevocably released.

33.    Adequate Notice.    The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rule 4001(c)(2).  The Debtors shall promptly mail or fax copies of this Interim Order and notice of the Final Hearing to (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured creditors or their counsel, (c) counsel to the Stalking Horse Bidder, the DIP Facility Lender, and the Prepetition Secured Party, (d) all known holders of filed liens on the Debtors' assets, and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.  Any party-in-interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file the same with the Bankruptcy Court (with a courtesy copy to chambers) and serve (so as to be received) such objection no later than _____, 2022, _____ (EST) on the following: : (a) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph    Cudia    (joseph.cudia@usdoj.gov)    and    David    L.    Buchbinder (David.L.Buchbinder@usdoj.gov); (b) counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti

(dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); and (c) counsel to the Stalking Horse Bidder, the DIP Facility Lender and the Prepetition Secured Party,  Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland ME 0410, Attn:  Robert J. Keach (rkeach@bernsteinshur.com),  Adam  R.  Prescott  (aprescott@bernsteinshur.com),  and  Lindsay Zahradka Milne (lmilne@bernsteinshur.com) and Cozen O'Conner LLP, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com).

10045914.v11