## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | Case No. 22-10559 (JKS) |
| Debtors. | (Jointly Administered) |
|  | **Related to Docket No. 17** |

### NOTICE OF REVISED PROPOSED BID PROCEDURES ORDER

**PLEASE TAKE NOTICE** that on June 22, 2022, the above captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Motion of Debtors for Entry of: (I) and Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All Assets, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing Entry into the Stalking Horse Agreement, (E) Approving Bid Protections, (F) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (G) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially all Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 17] (the "Sale Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "Hearing") on the bid procedures and bid protections portion of the Sale Motion is currently scheduled to commence on July 7, 2022 at 3:30 p.m. (ET) Prevailing Eastern Time.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528).  The location of the Debtors' service address is 3700 S. Kedzie Avenue, Chicago, Illinois 60632.

**PLEASE TAKE FURTHER NOTICE** the Debtors have received informal comments and limited objections to the Sale Motion from the Office of the United States Trustee (the "UST") and objection of the Official Committee of Unsecured Creditors (the "Committee"). The Debtors have revised the proposed Bid Procedures Order to address all but one of the concerns and objections of the UST and one of the objections raised in the Committee objection. The Debtors continue to work with the UST to resolve the remaining objection. The remainder of the Committee objections remain outstanding. A copy of the order (the "Revised Bid Procedures Order") is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Revised Bid Procedures Order marked to show changes from the version filed with the Sale Motion is attached hereto as **Exhibit B**.

Dated:  July 7, 2022
Wilmington, Delaware

/s/ Domenic E. Pacitti

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:  (302) 426-1189
Facsimile:  (302) 426-9193
Email:  dpacitti@klehr.com
         myurkewicz@klehr.com
         sveghte@klehr.com

-and-

Morton R. Branzburg (admitted *pro hac vice*)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:  (215) 569-3007
Facsimile:  (215) 568-6603
Email:  mbranzburg@klehr.com

*Proposed Counsel for the Debtors and Debtors in
Possession*

**EXHIBIT A**

**Revised Bid Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | ) Case No. 22-10559 (JKS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Related to Docket No. 17** |

**ORDER (I) APPROVING BID PROCEDURES
IN CONNECTION WITH THE POTENTIAL SALE OF SUBSTANTIALLY ALL
ASSETS, (II) SCHEDULING AN AUCTION AND A SALE HEARING, (III) APPROVING
THE FORM AND MANNER OF NOTICE THEREOF, (IV) AUTHORIZING ENTRY
INTO THE STALKING HORSE AGREEMENT, (V) APPROVING BID PROTECTIONS,
(VI) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF
CONTRACTS AND LEASES, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(the "Debtors") for entry of an order (this "Order"): (i) authorizing and approving the bid

procedures attached hereto as **Exhibit 1** (the "Bid Procedures") in connection with the sale (the

"Sale") of substantially all of Gold Standard Baking, LLC's assets, (ii) scheduling an auction and

hearing to consider the Sale of the Assets (as defined in the Stalking Horse Agreement), (iii)

approving the form and manner of notice thereof, (iv) authorizing the Debtors to enter into the

Stalking Horse Agreement, (v) approving the Bid Protections in connection therewith,

(vi) approving procedures for the assumption and assignment of executory contracts and unexpired

leases in connection with the Sale (collectively, the "Assumed Contracts"), and (vii) granting

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528).  The location of the Debtors' service address is 3700 S Kedzie Avenue, Chicago, Illinois 60632.

[2]     Capitalized terms used as defined terms herein but not otherwise defined shall have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable. In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

related relief, all as more fully set forth in the Motion; and upon the First Day Declaration and supplemental declarations and other testimony and evidence submitted by the Debtors in support of the Motion; this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); this Court having determined the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor:

**THE COURT FINDS THAT:**

A.       The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

C.       This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors have confirmed their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by this Court in connection with the Motion, to the extent it is later determined this Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      The bases for the relief requested in the Motion are §§ 105, 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, 6004-1, and 9013-1(m).

F.      Notice of the Motion has been given to: (a) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia and David L. Buchbinder; (b) the holders of the thirty (30) largest, non-insider unsecured claims against the Debtors; (c) counsel to the Stalking Horse Bidder, the DIP Facility Lender and the Prepetition Secured Party; (d) any other parties with known secured claims against the Debtors or their counsel, if known; (e) all parties that have executed an NDA; (f) the United States Attorney's Offices for the District of Delaware and the Northern District of Illinois; (g) the Internal Revenue Service; (h) all state and local taxing authorities with an interest in the Assets; (i) the Attorneys General for the State of Delaware and the State of Illinois; (j) the Securities and Exchange Commission; (k) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (l) all other parties known or reasonably believed to have asserted an interest in the Assets; (m) the Assumed Contract Counterparties; (n) the Debtors' insurance carriers; (o) counsel to the Union; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002.

G.      Good and sufficient notice of the Motion, including the relief sought therein, and the Hearing was sufficient under the circumstances, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided. A reasonable opportunity to object or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

3

H.      The Debtors have articulated good and sufficient reasons for this Court to (i) approve the Bid Procedures, (ii) schedule the bid deadlines and the Auction and the Sale Hearing, (iii) approve the form and manner of notice of the Auction and Sale Hearing, (iv) approve procedures for the assumption and assignment of the Assumed Contracts, including notice of the proposed cure amounts, (v) authorize entry into a Stalking Horse Agreement, and (vi) extend to the Stalking Horse Bidder the Bid Protections, in the exercise of their reasonable business judgment. The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

I.      The Bid Procedures attached hereto as **Exhibit 1** are reasonable, appropriate, and represent the best method for maximizing value for the benefit of the Debtors, their estates, and their creditors.  The Bid Procedures were negotiated at arm's length, in good faith, and without collusion.  The Bid Procedures balance the Debtors' interests in emerging expeditiously from the Chapter 11 Cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors, their estates, their creditors, and other parties in interest.  The Bid Procedures comply with the requirements of Local Rule 6004-1(c).

J.      The Debtors have demonstrated compelling and sound business justifications for authorization to: (i) enter into that certain Stalking Horse Agreement, a copy of which is attached hereto as **Exhibit A**, and (ii) offer the Stalking Horse Bidder the following: (a) a break-up fee equal to **$250,000.00** (the "Break-Up Fee") on the terms set forth in the Stalking Horse Agreement, (b) expense reimbursement of the Stalking Horse Bidder's out of pocket legal fees and hard costs incurred up to **$350,000.00** (the "Expense Reimbursement") on the terms set forth in the Stalking Horse Agreement, and (c) an initial overbid equal to the Break-Up Fee, plus the Expense Reimbursement, plus **$200,000.00** (the "Initial Overbid" and, together with the Break-Up Fee and

4

the Expense Reimbursement, the "<u>Bid Protections</u>").  With respect to the Bid Protections, the Court

makes the following findings:

a.  the Bid Protections are the product of extensive negotiations between the Debtors and the Stalking Horse Bidder conducted in good faith and at arm's length, and the Stalking Horse Agreement (including the Bid Protections) are the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay the highest price or best purchase price to date for the Assets to maximize the value of the Debtors' estates;

b.  the Break-Up Fee and Expense Reimbursement are an actual and necessary cost and expenses of preserving the value of the respective Debtors' estates;

c.  the Bid Protections are fair, reasonable, and appropriate in light of, among other things, the size and nature of the proposal Sale under the Stalking Horse Agreement, the substantial efforts that have been and will be expended by the Stalking Horse Bidder, including the identification and quantification of assets to be included in the Assets, and notwithstanding that the proposed sale is subject to higher and better offers, the substantial benefits the Stalking Horse Bidder has provided to the Debtors, their estates, their creditors, and all parties in interest, including, among other things, by increasing the likelihood that the best possible price for the Assets will be received;

d.  the Bid Protections were material inducements for, and express conditions of, the Stalking Horse Bidder's willingness to enter into the Stalking Horse Agreement and were necessary to ensure that the Stalking Horse Bidder would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding;

e.  the offer of the Bid Protections is intended to promote more competitive bidding by inducing the Stalking Horse Bid, which (i) will serve as a minimum floor bid on which all other bidders can rely with respect to the Assets, (ii) may prove to be the highest or otherwise best available offer for the Assets, and (iii) increases the likelihood that the final purchase price will reflect the true value of the Assets; and

f.  the Stalking Horse Bidder is unwilling to commit to purchase the Assets under the terms of the Stalking Horse Agreement without approval of the Bid Protections.

K.    The Debtors' performance of certain pre-closing obligations contained in the

Stalking Horse Agreement is in the best interests of the Debtors, their estates, their creditors, and

all other parties in interest, and represents a reasonable exercise of the Debtors' sound business judgment.

L.      Notwithstanding the disclosed connections in the Sale Motion, the Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code.  No other common identity of incorporators, directors, managers, controlling shareholders, or other insider of the Debtors exist between the Stalking Horse Bidder and the Debtors other than as disclosed

M.      The notice, substantially in the form attached hereto as **<u>Exhibit 2</u>**, provided by the Debtors regarding the Sale of the Assets by Auction and Sale Hearing (the "<u>Sale Notice</u>"), is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held), (ii) the Bid Procedures and certain dates and deadlines related thereto, (iii) the deadline for filing objections to the Sale and entry of the Sale Order (including Residual Objections), and the date, time, and place of the Sale Hearing, (iv) reasonably specific identification of the assets for sale, (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement, (vi) a description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds, (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities disclosed in the Stalking Horse Agreement (collectively, the "<u>Assumed Liabilities</u>"), and (viii) notice of the proposed assumption and assignment of Assumed Contracts to the Stalking Horse Bidder (or such other Assumed Contracts to another Successful Bidder (as defined in the Bid Procedures) arising from the Auction, if any) and the right, procedures, and deadlines for objecting thereto.  No other or further notice of the Sale shall be required.

6

N.      The Motion, this Order, and the Assumption Procedures (as defined below) set forth herein are appropriate and reasonably calculated to provide any Assumed Contract Counterparties with proper notice of the intended assumption and assignment of their Assumed Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

O.      Neither the filing of the Motion, entry of this Order, the solicitation of bids or the conducting of the Auction in accordance with the Bid Procedures nor any other actions taken by the Debtors in accordance therewith shall constitute a sale of the Assets, which sale will only take place, if at all, following the Sale Hearing.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      All objections, statements, and reservations of rights with respect to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled, as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled and denied on the merits with prejudice.

**A.      The Bid Procedures**

3.      The Bid Procedures, attached hereto as **<u>Exhibit 1</u>**, are hereby approved in their entirety and are fully incorporated into this Order. The Bid Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale and any party desiring to submit a higher or better offer for the Assets must comply with the terms of the Bid Procedures and this Order.  The Bid Procedures shall also govern the terms on which the Debtors will proceed with the Auction and/or Sale pursuant to the Stalking Horse Agreement.

4.      The Stalking Horse Bidder shall be deemed a Qualified Bidder pursuant to the Bid Procedures for all purposes.

7

5.    The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bid Procedures):

- **July 8, 2022, at 4:00 p.m.:** Debtors to send Cure and Possible Assumption and Assignment Notices to All Contract Counterparties.

- **July 25, 2022, at 4:00 p.m.:** Deadline to submit bids.

- **July 25, 2022, at 4:00 p.m.:** Deadline to file and serve objections to relief requested at Sale Hearing (except for any Residual Objection that arises at the Auction) (the"Sale Objection Deadline").

- **July 25, 2022, at 4:00 p.m.:** Cure Objection Deadline.

- **July 28, 2022, at 10:00 a.m.:**  Auction to be conducted.

- **July 29, 2022, at 4:00 p.m.:** Debtors deadline to file notice of Successful Bidder and Contract Assignment Notices.

- **August 1, 2022, at 4:00 p.m.:** Residual Objection Deadline.

- **August [3], 2022, at _____ a.m./p.m.:** Date and time of Sale Hearing.

**B.    Entry into Stalking Horse Agreement**

6.    The Debtors are authorized to enter into the Stalking Horse Agreement with the Stalking Horse Bidder and to pay the Break-Up Fee and Expense Reimbursement pursuant to the terms and conditions set forth in the Stalking Horse Agreement.

7.    The Debtors are authorized to perform all of their respective pre-closing obligations under the Stalking Horse Agreement; _provided_ that for the avoidance of doubt, approval and consummation of the transactions contemplated by the Stalking Horse Agreement shall be subject to the terms and conditions herein and the entry of an order approving the Sale of the Assets and the satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking Horse Agreement.

8

C.      **Approval of the Bid Protections**

8.      The Bid Protections are hereby approved.  The Debtors are authorized to pay the Stalking Horse Bidder the Break-Up Fee and Expense Reimbursement if and to the extent they become due and payable under the Stalking Horse Agreement.

9.      The Break-Up Fee and Expense Reimbursement shall constitute an allowed administrative expense claim against the Debtors' bankruptcy estates pursuant to Bankruptcy Code §§ 503(b) and 507(a)(2).  The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement shall survive the termination of the Stalking Horse Agreement and shall be payable by the Debtors as otherwise provided in the Stalking Horse Agreement.

10.     To the extent not paid earlier, the Break-Up Fee and Expense Reimbursement shall be payable from the proceeds of the Sale prior to any other payments or distributions being made from such Sale proceeds (including, for the avoidance of doubt, prior to any payments or distributions to professionals, or administrative claimants) and the Debtors' cash on hand.  No further or additional order from the Court shall be required to give effect to such provisions relating to the terms of payment of the Break-Up Fee and Expense Reimbursement.

11.     Each Debtors' obligations relating to the Bid Protections arising under or in connection with the Stalking Horse Agreement shall be binding and enforceable against each such Debtor and its respective estate, and, as applicable, (i) any of its successor or assigns, (ii) any trustee, examiner, or other representative of the Debtors' estates, (iii) the reorganized Debtors, and (iv) any other entity vested or re-vested with any right, title, or interest in or to a material portion of the assets directly or indirectly owned by the Debtors or any other person claiming any rights

10069698.v1

in or control over a material portion of such assets (each, a "Debtor Successor") as if such Debtor Successor was the Debtors.

**D.     The Auction**

12.     As further described in the Bid Procedures, if a Qualified Bid, other than the Stalking Horse Agreement, is received by the Bid Deadline, the Debtors will conduct the Auction **virtually** at **10:00 a.m. (prevailing Eastern Time) on July 28**, **2022,** or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received.  The Debtors are authorized, subject to the terms of this Order and the Bid Procedures, to take actions reasonably necessary to conduct and implement the Auction.

13.     If the Debtors do not receive a Qualified Bid (other than the Stalking Horse Agreement): (i) the Debtors may cancel the Auction, (ii) the Stalking Horse Agreement shall be deemed by the Debtors to be the Successful Bid for the Assets, and (iii) the Debtors shall seek approval of the Stalking Horse Agreement as the Successful Bid at the Sale Hearing.

14.     Only Qualified Bidders (including, for the avoidance of doubt, the Stalking Horse Bidder) shall be entitled to make any Bids at the Auction.

15.     The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed or videotaped.

16.     Each Qualified Bidder (including, for the avoidance of doubt, the Stalking Horse Bidder) participating in the Auction must confirm that it: (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands, and accepts the Bid Procedures, and (c) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale, or the Auction

if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

17.     The Stalking Horse Bidder shall be deemed to be a Qualified Bidder and is not required to make any Deposit.  In accordance with Bankruptcy Code § 363(k), but subject to the right of any party in interest to file an objection challenging such credit bid rights prior to the Sale Objection Deadline, the Stalking Horse Bidder, (i) in its capacity as the Prepetition Secured Party, may credit bid, as a Qualified Bid or subsequent Bid, in its sole and absolute discretion, any portion and up to the entire amount owing under the First Priority Obligations, in the full amount of such obligations outstanding as of the date of the Auction on the Assets in conjunction with the Sale of the Assets pursuant to the terms of the Stalking Horse Agreement, and (ii) in its capacity as the DIP Facility Lender, may credit bid, as a Qualified Bid or subsequent Bid, in its sole and absolute discretion, any portion and up to the entire amount owing under the DIP Facility Obligations, in the full amount of such obligations outstanding as of the date of the Auction on the Assets in conjunction with the Sale of the Assets pursuant to the terms of the Stalking Horse Agreement, plus the Break-Up Fee and Expense Reimbursement (the "Credit Bid").  In the event the amount of the Credit Bid exceeds the total amount of the highest bids for the Assets subject to the Credit Bid, such Credit Bid shall be deemed the highest and best bid and such Credit Bid shall be accepted by the Debtors and be presented for approval to the Court.

18.     In the event of a competing Qualified Bid, all Qualified Bidders shall be entitled, but not obligated, to submit Overbids.

19.     No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and, by submitting a Bid, such person or entity is deemed to have waived its right to request or file

11

with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of Bankruptcy Code § 503(b) or otherwise.

**E.    Assumption and Assignment Notices & Procedures**

20.    The procedures set forth below regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to § 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder, if any) pursuant to § 365(f) of the Bankruptcy Code in connection with the Sale (the "Assumption Procedures") are hereby approved to the extent set forth herein.  These Assumption Procedures shall govern the assumption and assignment of all of the Assumed Contracts to be assumed and assigned in connection with the Sale, subject to the payments necessary to cure any defaults arising under any such Assumed Contracts.

21.    On or prior to **July 8**, **2022**, the Debtors shall file with the Court and serve via overnight delivery on all Assumed Contract Counterparties to any Assumed Contract (the "Cure and Possible Assumption and Assignment Notice Parties") that may be assumed by the Debtors and assigned to the Stalking Horse Bidder (or other Successful Bidder after the results of the Auction), which notice shall be substantially in the form attached hereto as **Exhibit 3** (a "Cure and Possible Assumption and Assignment Notice").   The Cure and Possible Assumption and Assignment Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable: (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) the Debtors' good faith estimate of the cure amount (if any) required in connection with the executory contract or unexpired lease, as applicable, (iv) the identity of the Stalking Horse Bidder (as assignee, if applicable), and (v) the Contract Objection

12

Deadline (as defined below).  The presence of an Assumed Contract on the Cure and Possible

Assumption and Assignment Notice does not constitute an admission that such Assumed Contract

is an executory contract or unexpired lease, and the presence of an Assumed Contract on any notice

shall not prevent the Debtors from subsequently withdrawing such request for assumption or

rejecting such Assumed Contract any time before such Assumed Contract is actually assumed and

assigned pursuant to the Sale Order.

      22.    Although the Debtors intend to make a good faith effort to identify all Assumed

Contracts that may be assumed and assigned in connection with a Sale, the Debtors may discover

certain executory contracts and unexpired leases inadvertently omitted from the list of Assumed

Contracts, or Successful Bidders may identity other executory contracts and/or unexpired leases

that they desire to assume and assign in connection with the Sale.  Accordingly, the Debtors reserve

the right, but only in accordance with the Stalking Horse Agreement, or as otherwise agreed to by

the Debtors and the Successful Bidder, at any time after the service of the Cure and Possible

Assumption and Assignment Notice and before the closing of a Sale, to: (i) supplement the list of

Assumed Contracts with previously omitted executory contracts, (ii) remove Assumed Contracts

from the list of executory contracts and unexpired leases ultimately selected as Assumed Contracts

that a Successful Bidder proposes to be assumed and assigned to it in connection with a Sale,

and/or (iii) modify the previously stated cure amount associated with any Assumed Contract.  In

the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a

supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the

Assumed Contract Counterparties to such Assumed Contracts and their counsel of record, if any;

provided, however, the Debtors may not add an executory contract to the list of Assumed Contracts

that has been previously rejected by the Debtors by order of the Court.  Each Supplemental

13

Assumption Notice will include the same information with respect to listed Assumes Contracts as was included in the Cure and Possible Assumption and Assignment Notice.

23.    Objections, if any, to the cure amount set forth on the Cure and Possible Assumption and Assignment Notice or the possible assignment of its executory contract or unexpired lease (each, an "Assumed Contract Objection") **must**: (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, and (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before **July 25, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Assumed Contract Objection Deadline"): (a) counsel for the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (b) counsel for the Stalking Horse Bidder, the Prepetition Secured Party, and the DIP Lender, Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland ME 0410, Attn: Robert J. Keach (rkeach@bernsteinshur.com), Adam R. Prescott (aprescott@bernsteinshur.com), and Lindsay Zahradka Milne (lmilne@bernsteinshur.com) and Cozen O'Conner LLP, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com); and (c) counsel to the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia (joseph.cudia@usdoj.gov) and David L. Buchbinder (David.L.Buchbinder@usdoj.gov).    To the extent any Contract Counterparty is added to the Cure and Possible Assumption and Assignment Notice after the initial notice is served, such new Contract Counterparty shall receive notice of the addition and the

14

Debtors' proposed cure amount, and that party shall have not less than seven (7) days from the date of such notice to object to the proposed cure amount and assignment to the Successful Bidder.

24.    If an Assumed Contract Counterparty does not timely file and serve an Assumed Contract Objection, that party shall be forever barred from objecting to: (i) the Debtors' proposed cure amount, (ii) the assumption and assignment of that party's executory contract or unexpired lease (including the adequate assurance of future performance), (iii) the related relief requested in the Motion, and (iv) the Sale.  Such party shall be forever barred and estopped from objecting to the cure amount, the assumption and assignment of that party's executory contract or unexpired lease (including the adequate assurance of future performance), the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Stalking Horse Bidder or the Successful Bidder, as applicable, for purposes of § 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Stalking Horse Bidder or Successful Bidder, as applicable, with respect to such party's executory contract or unexpired lease, provided however, that by filing a motion with the Court no later than entry of the Sale Order, a counterparty to an Assumed Contract shall not be barred from seeking an additional cure amount solely as to any new cure obligation that accrued after the Assumed Contract Objection Deadline and before entry of the Sale Order, provided, further, that in the event a counterparty to an Assumed Contract asserts an additional cure amount under the preceding clause, the Purchaser shall have the right to remove such contract as an Assumed Contract at Closing in its sole discretion.

25.    Where an Assumed Contract Counterparty to an Assumed Contract files a timely Assumed Contract Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or objecting to the possible assignment of that

Assumed Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code § 365 (if any) or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder shall be determined at the Sale Hearing.

26.    The payment of the applicable cure amount by the Debtors or Stalking Horse Bidder (or other Successful Bidder), as applicable, shall: (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

**F.    Notice of the Sale Process**

27.    The Sale Notice and the Cure and Possible Assumption and Assignment Notice, in substantially the forms as annexed to this Order as **Exhibit 2**, and **Exhibit 3**, respectively, are hereby approved.

28.    Within two (2) business days after the entry of this Order, the Debtors (or their agent) shall serve the Sale Notice by first-class mail upon: (a) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia and David L. Buchbinder; (b) the holders of the thirty (30) largest, non-insider unsecured claims against the Debtors; (c) counsel to the Stalking Horse Bidder, the DIP Facility Lender and the Prepetition Secured Party; (d) any other parties with known secured claims against the Debtors or their counsel, if known; (e) all parties that have executed an NDA (via email); (f) the United States Attorney's Offices for the District of Delaware and the Northern District of Illinois; (g) the Internal Revenue Service; (h) all state and local taxing authorities with an interest in the Assets; (i) the Attorneys General for the State of Delaware and the State of Illinois; (j) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (k) all other parties known or reasonably believed to have asserted an interest in the Assets (via email); (l) the Assumed Contract Counterparties;

16

(m) the Debtors' insurance carriers; (n) counsel to Union; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**G.      The Sale Hearing**

29.      The Sale Hearing shall be conducted on **August [3], 2022 at \_\_:\_\_ a.m./p.m. (prevailing Eastern Time)**. The Debtors will seek entry of an order of the Court at the Sale Hearing approving and authorizing the sale of the Assets to the Successful Bidder.  Upon entry of this Order, the Debtors are authorized to perform any obligation intended to be performed prior to the Sale Hearing or entry of the Sale Order with respect thereto.  The Sale Hearing may be adjourned from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed on the Court's docket.

**H.      Objections to the Sale**

30.      Objections, if any, to the relief requested in the Motion relating to the Sale (each, a "Sale Objection") must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Court, and (iv) be served so it is actually received no later than **4:00 p.m. (prevailing Eastern Time) on July 25, 2022, a 4:00 p.m.**, by: (a) counsel for the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (b) counsel for the Stalking Horse Bidder, the Prepetition Secured Party, and the DIP Facility Lender, Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland ME 0410, Attn:  Robert J. Keach (rkeach@bernsteinshur.com), Adam R. Prescott (aprescott@bernsteinshur.com), and Lindsay Zahradka Milne (lmilne@bernsteinshur.com) and Cozen O'Conner LLP, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com); and (c) counsel to the U.S.

17

Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia

(joseph.cudia@usdoj.gov) and David L. Buchbinder (David.L.Buchbinder@usdoj.gov).

31.     A party's failure to timely file a Sale Objection in accordance with this Order shall

forever bar the assertion, at the applicable Sale Hearing or otherwise, of any objection to the relief

requested in the Motion, or to the consummation of the Sale and the performance of the related

transactions, including the transfer of the Assets to the applicable Successful Bidder(s), free and

clear of all liens, claims, interests, and encumbrances pursuant to § 363(f) of the Bankruptcy Code,

and shall be deemed to be a "consent" for purposes of § 363(f) of the Bankruptcy Code.

## I.     Other Relief Granted

32.     Nothing in this Order, the Stalking Horse Agreement, or the Motion shall be

deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

33.     The requirements of Bankruptcy Rules 6004(h) and 6006(d) are waived.

34.     The Debtors are hereby authorized to conduct the Sale without the necessity of

complying with any state or local bulk transfer laws or requirements.

35.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Order in accordance with the Motion.

36.     The terms and conditions of this Order shall be immediately effective and

enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local

Rules to the contrary, and the Debtors may, in their discretion and without further delay, take any

action and perform any act authorized under this Order.

37.     The Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.

18

38.     The U.S. Trustee reserves all rights to assert any and all objections prior to the Sale Objection Deadline with respect to the inclusion of Assumed Bonus Obligation (as defined in the Stalking Horse Agreement) as part of the Assumed Liabilities (as defined in the Stalking Horse Agreement) under the Stalking Horse Agreement, and the Debtors, U.S. Trustee and Stalking Horse Bidder agree to continue discussions with respect to resolution of any such objections in advance of the Sale Objection Deadline.

10069698.v1

**<u>Exhibit 1 to Bid Procedures Order</u>**

**Bid Procedures**

Exhibit 1

10069698.v1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | ) | Case No. 22-10559 (JKS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## BID PROCEDURES

In the exercise of their good faith reasonable business judgment, the above-captioned debtors and debtors in possession (the "Debtors") have executed an Asset Purchase Agreement (the "Stalking Horse Agreement") with 37 Baking Holdings, LLC or its assignee (the "Stalking Horse Bidder"), pursuant to which: (i) the Stalking Horse Bidder proposes to (a) purchase, acquire, and take assignment and delivery of the Assets (as defined in the Stalking Horse Agreement) and (b) assume and take assignment of the Assumed Contracts (as defined in the Stalking Horse Agreement), and (c) assume certain Assumed Liabilities (as defined in the Stalking Horse Agreement), and (ii) the Debtors propose to, upon the termination of the Stalking Horse Agreement due to the closing of a sale of the Assets to a Successful Bidder other than the Stalking Horse Bidder, (a) pay the Stalking Horse Bidder an amount equal to **$250,000.00**, in consideration of the Stalking Horse Bidder having expended considerable time and expense in connection with the Stalking Horse Agreement and the negotiation thereof, and the identification and quantification of assets to be included in the Assets (the "Break-Up Fee") and (b) reimburse the Stalking Horse Bidder in the dollar amount of up to **$350,000.00** (the "Expense Reimbursement"), in each case, in accordance with the terms and conditions of the Stalking Horse Agreement.

On July [●], 2022, the Bankruptcy Court entered an order [Docket No. [●]] (the "Bid Procedures Order") approving, among other things, these bid procedures (the "Bid Procedures").

These Bid Procedures set forth the process by which the Debtors are authorized to conduct the auction (the "Auction") for the sale (the "Sale") of the Assets. Subject to the entry of the Sale Order, the Sale may be implemented pursuant to the terms and conditions of the Stalking Horse Agreement, as the same may be amended pursuant to the terms thereof, subject to the receipt of higher or otherwise better Bids (as defined below) in accordance with these Bid Procedures. Pursuant to the Bid Procedures, the Debtors will determine the highest or otherwise best price for the sale of the Assets.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528). The location of the Debtors' service address is 3700 S Kedzie Avenue, Chicago, Illinois 60632.

## A.    Important Dates

> - **July 8, 2022, at 4:00 p.m.:** Debtors to send Cure and Possible Assumption and Assignment Notices to All Contract Counterparties.
>
> - **July 25, 2022, at 4:00 p.m.:** Deadline to submit bids.
>
> - **July 25, 2022, at 4:00 p.m.:** Deadline to file and serve objections to relief requested at Sale Hearing (except for any Residual Objection that arises at the Auction).
>
> - **July 25, 2022, at 4:00 p.m.:** Cure Objection Deadline.
>
> - **July 28, 2022, at 10:00 a.m.:**  Auction to be conducted.
>
> - **July 29, 2022, at 4:00 p.m.:** Debtors deadline to file notice of Successful Bidder and Contract Assignment Notices.
>
> - **August 1, 2022, at 4:00 p.m.:** Residual Objection Deadline.
>
> - **August [3], 2022 at _____ a.m./p.m.:** Date and time of Sale Hearing.

## B.    Marketing Process

### 1.    Contact Parties

The Debtors and their advisors have conducted and will conduct an extensive marketing process.  The Debtors and their advisors have a list of "Contact Parties" encompassing those parties who: (i) have executed NDAs with the Debtors, and (ii) whom the Debtors believe may be interested in pursuing a Sale, and whom the Debtors reasonably believe may have the financial resources to consummate such a transaction.  The Debtors may distribute to each Contact Party an "Information Package," which is comprised of: a copy of these Bid Procedures and a copy of the Stalking Horse Agreement.

### 2.    Access to Diligence Materials

To receive due diligence information, including full access to the electronic data room and to additional non-public information, any party interested in submitting a bid, other than the Stalking Horse Bidder (each a "Potential Bidder"), must deliver the following documents (collectively, the "Preliminary Bid Documents") by email to the Debtors' investment banker, Houlihan Lokey Capital, Inc., Attn: Ryan Sandahl (email: rsandahl@hl.com), with a copy to the Debtors' counsel, Klehr Harrison Havey Branzburg, LLP, Attn: Domenic Pacitti (email: dpacitti@klehr.com) and Michael Rittinger (email: mrittinger@klehr.com)  (collectively, the "Bid Recipients"):

(i)    a written disclosure of the identify of each entity that will be bidding for the Debtors' assets, is in control of such entity, or will otherwise be participating in connection with such bid;

2

(ii)     an "<u>Acceptable Confidentiality Agreement</u>," which shall mean a commercially reasonable confidentiality agreement in form and substance reasonable acceptable to the Debtors;

(iii)    sufficient evidence, as reasonably determined by the Debtors, to allow the Debtors to determine in their reasonable business judgment that (i) the Potential Bidder has the financial capacity to close a proposed transaction, which shall include financial statements of the Potential Bidder, including current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited and unaudited financial statements or other financial information of the Potential Bidder's equity holder or other financial backer, or such other form of financial disclosure and evidence acceptable to the Debtors and their advisors in their reasonable discretion taking into account the Debtors' fiduciary duties, demonstrating such Potential Bidder's ability to close the proposed transaction, to finance going concern operations to the extent contemplated, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Potential Bidder; and (ii) intends to access the electronic data room (described below) for a bona fide purpose consistent with the Bid Procedures.

Promptly after a Potential Bidder delivers the Preliminary Bid Documents to the Bid Recipients, the Debtors shall assess the adequacy of the evidence of its financial capacity and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit a Bid and participate in the Auction, as applicable. Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, a "<u>Bidder</u>") may submit Bids.

As soon as reasonably practicable after the Debtors determine that a Potential Bidder is a Bidder, the Debtors shall provide such Bidder with access to an electronic data room and reasonable due diligence information as requested by such Bidder (to the extent such Bidder has not already been provided such access and information). All due diligence requests must be directed to Houlihan Lokey Capital, Inc., Attn: Ryan Sandahl (email: rsandahl@hl.com) will work to facilitate meetings between any interested Bidder and the Debtors' management team. For all Potential Bidders (except for the Stalking Horse Bidder), the due diligence period will end on the Bid Deadline, and after the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information. The Debtors and their advisors shall coordinate all reasonable requests from Bidders for additional information and due diligence access. The Debtors may decline to provide such information to Bidders who, in the Debtors' business judgment, have not established, or who have raised doubt, that such Bidder intends in good faith or has the capacity to consummate a sale transaction of all or substantially all of the Assets (a "<u>Transaction</u>").

For any Bidder who is a direct competitor of Seller or is affiliated with any direct competitor of Seller, the Debtors reserve the right to protect any diligence materials that the Debtors determine are business-sensitive and to utilize clean

3

room or other similar methodologies in sharing to the extent such information becomes necessary for such party to submit a Qualified Bid.

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated Transaction.

### 3.    Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "<u>Bid</u>"), and each party submitting such a Bid (each, a "<u>Bidder</u>"), must be determined by the Debtors to satisfy each of the following conditions (collectively, the "<u>Bid Requirements</u>"):

(i)    <u>Stalking Horse Bidder</u>. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder, and the Stalking Horse Agreement shall be deemed to be a Qualified Bid (the "<u>Stalking Horse Bid</u>"), without the need to comply with any of the requirements set forth in this section.

(ii)    <u>Form and Contents</u>. All Qualified Bids shall be in the form of an offer letter from a person or persons that the Debtors deem financially able to consummate the purchase of the Assets, which letter states and includes:

   a.   <u>Marked Agreement</u>. Each Qualified Bid must state the Qualified Bidder offers to purchase some or all of the Assets upon the terms and conditions set forth in an executed and attached complete asset purchase agreement prepared and executed by the Qualified Bidder (an electronic version in Word format and blacklined against the Stalking Horse Agreement), together with its exhibits and schedules, including terms relating to price and the time of closing (the "Proposed Agreement");

   b.   <u>Purchase Price.</u>  Each Qualified Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, such as certain liabilities to be assumed by the Bidder as part of the Transaction, for example (the "<u>Purchase Price</u>");

   c.   <u>Committed Financing</u>. To the extent that a Qualified Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the Transaction set forth in its Qualified Bid with cash on hand, each Qualified Bid must include evidence of committed financing that demonstrates that the Qualified Bidder has received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Qualified Bid. Such funding commitments or other financing acceptable to the Debtors must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have conditions acceptable to the Debtors;

4

d.  <u>Contingencies; No Financing or Diligence Outs.</u>  A Qualified Bid shall not be conditioned on a Qualified Bidder obtaining, or the sufficiency of, financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions;

e.  <u>Identity.</u>  Each Qualified Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Qualified Bid (including each equity holder or other financial backer of the Qualified Bidder if such Qualified Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Qualified Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Qualified Bid.  Each Qualified Bid must also include contact information for the specific person(s) and counsel the Debtors' advisors should contact regarding such Qualified Bid;

f.  <u>Authorization</u>.  Each Qualified Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Qualified Bid and the consummation of the Transactions contemplated in such Qualified Bid;

g.  <u>Substantial Contribution Waiver.</u> Each Qualified Bid must contain an express waiver, effective upon submission of the Qualified Bid, of any substantial contribution claims by the Qualified Bidder;

h.  <u>Expenses; Disclaimer to Fees.</u> Each Qualified Bid must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Potential Bidder (other than the Stalking Horse Bidder) shall be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, substantial contribution, or any other similar form of compensation, and by submitting a Bid any Potential Bidder is waiving any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code;

i.  <u>Consummation</u>.  Each Qualified Bid must include a statement that the Qualified Bidder is prepared to consummate the transaction, following entry of an order of this Court approving the Sale to the Successful Bidder (the "<u>Sale Order</u>");

j.  <u>Irrevocability</u>. Each Qualified Bid must include a statement that, in the event the Qualified Bidder becomes the Successful Bidder or the Back-up Bidder (as defined below), such Qualified Bidder's offer is irrevocable until two (2) business days after the closing of the sale of the Assets;

    k.  <u>Assumed Contracts and Leases.</u>  The Qualified Bid must state which (if any) of Seller's leases and executory contracts are to be assumed in connection with the consummation of the Qualified Bidder's bid;

    l.  <u>Liquidated Damages.</u>  Each Qualified Bid must provide for liquidated damages in the event of the Qualified Bidder's breach of, or failure to perform under, the Proposed Agreement equal to the amount of the Deposit; and

    m.  <u>Consent to Jurisdiction.</u>  Each Qualified Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, the Sale documents, and the closing of the sale, as applicable.

(iii)  <u>Same or Better Terms</u>. Each Bid shall be based on the Stalking Horse Bid and to the extent seeking to purchase substantially all assets, must exceed the Stalking Horse Bid in relation to the Assets by the Minimum Overbid (as that term is defined in the Bid Procedures Order). Each Bid must be on terms that are not more burdensome than the terms of the Stalking Horse Bid, as determined by the Debtors, and considering, among other factors, the scope and manner of the proposed Transaction.  Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the Sale and a copy of the Stalking Horse APA clearly marked to show all changes requested by the Potential Bidder, including those related to the respective Purchase Price and Assets to be acquired by such Bidder, as well as all other material documents integral to such Bid.

(iv)  <u>Corporate Authority</u>. Written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed transaction; provided, however, if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the transaction by the equity holder(s) of such Bidder.

(v)  <u>Adequate Amounts</u>. All Bids must provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Bidder.

(vi)  <u>Proof of Financial Ability to Perform</u>. All Bidders must provide written evidence the Debtors reasonably conclude demonstrates the Bidder has the necessary financial ability to close the Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Transaction. Such information should include, <u>inter alia</u>, the following: (a) contact names and numbers for verification of financing sources; (b) written evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the transaction; (c) the Bidder's current financial statements (audited if they exist); (d) a description of the Bidder's pro forma capital structure; and (e) any such other form of financial disclosure or credit-quality support information or

enhancement reasonably acceptable to the Debtors demonstrating such Bidder has the ability to close the transaction; provided, however, the Debtors shall determine in their reasonable discretion whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(vii)    As Is, Where Is.  The sale of the Assets shall be on an "as is, where is" and "with all defects" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or estates, except to the extent set forth in the Proposed Agreement of the Successful Bidder.

(viii)   Free and Clear.  Except as otherwise provided in the Proposed Agreement, all of the Debtors' right, title, and interest in and to the Assets to be acquired shall be sold free and clear of all liens, claims, charges, security interests, restrictions, and other encumbrances of any kind or nature thereon and there against (collectively, the "Transferred Liens"), with such Transferred Liens to attach to the proceeds of the sale.

(ix)     Good Faith Deposit. Each Bid (other than the Stalking Horse Bid) must be accompanied by a cash deposit in the amount of ten percent (10%) of the cash portion of the Purchase Price to be held in an escrow account to be identified and established by the Debtors (the "Deposit").

(x)      Binding Effect. By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bid Procedures and to refrain from submitting a Qualified Bid or seeking to reopen the Auction after conclusion of the Auction.

(xi)     Time Frame for Closing. A Bid by a Bidder must be reasonably likely to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, but in no event later than August 15, 2022.

**Bid Deadline.**  The Debtors must receive a Bid in writing, on or before **July 25, 2022 at 4:00 p.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtors (the "Bid Deadline").  Bids must be sent to the following by the Bid Deadline to be considered: (a) counsel for the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); and (b) the Debtors' investment banker, Houlihan Lokey Capital, Inc., Attn: Ryan Sandahl (Rsandahl@HL.com) and Steven Balash (Sbalash@HL.com).

A Bid received before the Bid Deadline will be considered a "Qualified Bid" and each Bidder that submits a Qualified Bid will be considered a "Qualified Bidder" if the Debtors determine that such Bid meets each of the Bid Requirements.

Prior to the Auction, the Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties, as well as the Stalking Horse Bidder with a copy of each Qualified Bid.

7

Upon determination that any Bid is not a Qualified Bid, the Debtors shall notify such Bidder of such determination forthwith, but in any event not later than one day before the commencement of the Auction and shall provide such bidder with the basis for such determination.

Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction date, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; provided that any Qualified Bid may be improved at the Auction as set forth in the Bid Procedures. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in the Bid Procedures. The Stalking Horse Bidder may increase the amount of its credit bid up to the full amount of the First Priority Obligations and the DIP Facility Obligations at the Auction.

Upon determination that any Bid is not a Qualified Bid, the Debtors shall notify such Bidder of such determination forthwith, but in any event not later than one day before the commencement of the Auction and shall provide such bidder with the basis for such determination. In the event that such Bid is determined not to be a Qualifying Bid, the Bidder shall have until the commencement of the Auction to modify its bid to increase the purchase price or otherwise improve the terms of the Bid for the Debtors in order to comply with the requirements of Qualified Bids as set forth herein; provided that any Qualifying Bid may be improved during the Auction only as set forth herein. To the extent there is any dispute regarding whether a Bidder is a Qualified Bidder, such dispute may be raised with the Bankruptcy Court on an expedited basis prior to the commencement of the Auction. If any Bid is determined not to be a Qualified Bid, the Debtors will refund such Bidder's Deposit promptly after the Bid Deadline.

### 4. Credit Bid

The Stalking Horse Bidder, in its capacity as the Prepetition Secured Party and the DIP Facility Lender, shall be deemed to be a Qualified Bidder and is not required to make any Deposit other than as contemplated in the Stalking Horse Agreement. To the fullest extent permissible under Bankruptcy Code § 363(k), the Stalking Horse Bidder may credit bid, as a Qualified Bid or subsequent Bid, in its sole and absolute discretion, any portion and up to the entire amount of Obligations owing under the First Priority Obligations and the DIP Facility Obligations (as defined in the Stalking Horse Agreement) in conjunction with the Sale of the Assets pursuant to the terms of the Stalking Horse Agreement, plus the Break-Up Fee and Expense Reimbursement (the "Credit Bid"). All Credit Bids shall be treated as the equivalent as a cash bid of the same amount.

## C. Auction

### 1. Cancellation of Auction

If no Qualified Bids other than the Stalking Horse Bid are received prior to the Bid Deadline, then the Auction will not occur, the Stalking Horse Agreement shall be deemed the Successful Bid, and, subject to the termination rights under the Stalking Horse Agreement, the

Debtors will pursue entry of an order by the Bankruptcy Court authorizing the Sale to the Stalking Horse Bidder as soon as practicable.

## 2.    Conduct of Auction

(i)  <u>Time and Place</u>.  The Auction, if necessary, shall be held virtually on **July 28, 2022, at 10:00 a.m. (prevailing Eastern Time)**, or such other location as identified by the Debtors after notice to all Qualified Bidders.

(ii)  <u>Baseline Bid</u>. Prior to the commencement of the Auction, the Debtors shall determine which of the Qualified Bids, at such time, is the highest and best bid for purposes of constituting the opening bid of the Auction (the "<u>Baseline Bid</u>" and the Qualified Bidder submitting the Baseline Bid, the "<u>Baseline Bidder</u>"), and shall promptly notify the Stalking Horse Purchaser and all other Qualified Bidders with Qualified Bids of the Baseline Bid.  The Baseline Bid may be composed of any combination of the Assets, and the Debtors may determine that different Baseline Bids exist for different groupings of the Assets.  The Debtors shall have the discretion to determine how to proceed when auctioning the Assets in groupings that do not include all of the Assets so as to maximize the value of the Assets.

(iii)  <u>Auction Procedures</u>.  The Auction shall be conducted in a timely fashion according to the following procedures:

(A)  The Debtors and their professional advisors shall direct, preside over, and transcribe the Auction.

(B)  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid.  All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid.  The Auction shall be recorded via audio and/or video means.

(C)  Only the Stalking Horse Bidder and any other Qualified Bidders with Qualified Bids (together, the "<u>Auction Bidders</u>") shall be entitled to make any subsequent bids at the Auction, subject to the terms of these Bid Procedures and other limitations as may reasonably be imposed by the Debtors.

(D)  The Auction Bidders shall appear virtually at the Auction, or through a duly authorized representative, who also may appear virtually at the Auction. Only the Debtors, counsel for the United States Trustee, professionals of the Committee, the Auction Bidders, together with the professional advisors to each of the foregoing parties, may attend the Auction, also virtually. All creditors of the Debtors' estates shall be permitted to attend the Auction virtually; <u>provided</u>, <u>however</u>, that in order to attend the Auction, such creditors must advise the

9

Debtors in writing no later than 24 hours prior to the Auction, provided, further, however, that the Debtors may seek relief from the Court in the event that they object to any such creditor's attendance.

(iv)    No Collusion; Good-Faith Bona Fide Offer.  Each Qualified Bidder participating at the Auction shall be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, (ii) its Qualified Bid is a good-faith bona fide offer, and (iii) it intends to consummate the proposed Transaction if selected as the Successful Bidder or the Back-Up Bidder.

## 3.    Terms of Overbids

An "Overbid" is any Bid made at the Auction subsequent to the Debtors' announcement of the Starting Bid.  Any Overbid after the Baseline Bid shall be made in increments of at least **$200,000.00** (the "Minimum Overbid Increment").  Additional consideration in excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration; provided, however that the value for such non-cash consideration shall be determined by the Debtors in their reasonable business judgment.

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above; provided, however, the Bid Deadline shall not apply and no additional Deposit shall be required beyond the Deposit previously submitted by a Qualified Bidder; provided that the Successful Bidder (other than the Stalking Horse Bidder) shall be required to make a representation at the end of the Auction that it will provide any additional deposit necessary so that its Deposit is equal to the amount of not less than ten percent (10%) of the cash portion of the purchase price contained in the Successful Bid.  Any Overbid must include, in addition to the amount and form of consideration of the Overbid, a description of all changes (if any) requested by the Qualified Bidder to the Stalking Horse Agreement or a previously submitted Modified Purchase Agreement, in connection therewith (including any changes to the designated assigned contracts and leases and assumed liabilities).  Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.

The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, inter alia, the Bid Assessment Criteria.

## 4.    Backup Bidder

If an Auction is conducted, the party with the second highest or second-best Qualified Bid at the Auction, as determined by the Debtors in the exercise of their business judgment, shall be required to serve as backup bidder (the "Backup Bidder"), other than the Stalking Horse, who may choose to not act as the Backup Bidder.  The Backup Bidder shall be required to keep its initial Bid(s) (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until two (2) business days after the closing of the sale of the Assets (the "Outside Backup Date").  Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtors may designate the Backup Bidder to be the new

10

Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit, if any, shall be forfeited to the Debtors' estates, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder.

The deposit, if any, of the Backup Bidder shall be held by the Debtors until two (2) business days after the closing of the Sale with the Successful Bidder; provided, however, in the event the Successful Bidder does not consummate the transaction as described above and the Debtors provide notice to the Backup Bidder, the Backup Bidder's deposit shall be held until the closing of the transaction with the Backup Bidder. In the event the Debtors fail to consummate a transaction with the Backup Bidder, the Backup Bidder's deposit shall be forfeited to the Debtors' estates, and the Debtors specifically reserve the right to seek all available damages from the defaulting Backup Bidder.

### 5.    Closing the Auction

The Auction shall continue until there is only one Qualified Bid or combination of Qualified Bids that the Debtors determine in their reasonable business judgment after consultation with their financial and legal advisors, is the highest and best Qualified Bid(s) at the Auction (the "Successful Bid" and the Bidder(s) submitting such Successful Bid, the "Successful Bidder"), and the next highest and best Qualified Bid shall be declared the Back-Up Bidder (subject to the Stalking Horse Bidder's right not to serve as Back-Up Bidder). The Debtors, in consultation with the Committee, if any (or, if the Stalking Horse Purchaser has dropped out of the bidding, in consultation with the  Committee and the DIP Facility Lender), may, in their reasonable discretion, (a) determine which Qualified Bid, if any, is the Prevailing Bid, and (b) reject at any time before entry of the Sale Order approving the Prevailing Bid, any Bid other than the Stalking Horse Bid that, in the reasonable discretion of the Debtors, in consultation with the Committee, if any, (or, if the Stalking Horse Purchaser has dropped out of the bidding, in consultation with the  Committee and the DIP Facility Lender), is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Sale Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors; in each case (a)-(b), without limiting the rights of the DIP Facility Lender (in its capacity as such or as Stalking Horse Purchaser or Prepetition Secured Party) under the DIP Order, the Stalking Horse Agreement, any other document or applicable law. (collectively, the "Bid Assessment Criteria").

The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid.

Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction, the Debtors shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder. The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

### 6.    Break-Up Fee and Expense Reimbursement

To the extent payable in accordance with the Stalking Horse Agreement, the Break-Up Fee and Expense Reimbursement shall be paid as provided in the Stalking Horse Agreement and shall constitute an allowed administrative expense claim against the Debtors' bankruptcy estates pursuant to Bankruptcy Code §§ 503(b) and 507(a)(2).

**D.    Procedures for Determining Cure Amounts and Adequate Assurance for Assumed Contract Counterparties to Assumed Contracts**

By July 7, 2022, the Debtors shall send a notice to each counterparty to an executory contract or unexpired lease (each an "Assumed Contract Counterparty") setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such Assumed Contract Counterparty if the Debtors decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Assumed Contract Counterparty that their contract may be assumed and assigned to the Successful Bidder (the "Cure and Possible Assumption and Assignment Notice"), a copy of which is attached to the Bid Procedures Order as **Exhibit 3**.

Any Assumed Contract Counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or the possible assignment of its executory contract or unexpired lease must file and serve an objection (an "Assumed Contract Objection") on or before **4:00 p.m. prevailing Eastern Time on July 25, 2022**.  If an Assumed Contract Counterparty does not timely file and serve an Assumed Contract Objection, that party will be forever barred from objecting to (a) the Debtors' proposed cure amount, or (b) the assignment of that party's executory contract or unexpired lease to the Successful Bidder.  Where an Assumed Contract Counterparty to an Assumed Contract files a timely Assumed Contract Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that Assumed Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code § 365 (if any) or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing.

**E.    Sale Hearing**

The Bankruptcy Court has scheduled a hearing (the "Sale Hearing") on **August [3], 2022 at __:__ _.m. (prevailing Eastern Time)**, at which hearing the Debtors may, in their discretion, seek approval of the Sale with the Successful Bidder.  Objections to the sale of the Assets to the Successful Bidder or Backup Bidder must be filed, comply with the Bankruptcy Rules and Local Rules, and be served so they are actually received by no later than **4:00 p.m. (prevailing Eastern Time) on July 25, 2022** (except for any Residual Objection, which must be filed and served on or before **August 1, 2022, at 4:00 p.m. (prevailing Eastern Time)** upon the following: (a) counsel for the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (b) counsel for the Stalking Horse Bidder, the Prepetition Secured Party, and the DIP Facility Lender, Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland ME 0410, Attn:  Robert J. Keach (rkeach@bernsteinshur.com), Adam R. Prescott    (aprescott@bernsteinshur.com),    and    Lindsay    Zahradka    Milne (lmilne@bernsteinshur.com) and Cozen O'Conner LLP, 1201 North Market Street, Suite 1001,

12

Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com); and (c) counsel to the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia (joseph.cudia@usdoj.gov) and David L. Buchbinder (David.L.Buchbinder@usdoj.gov).

F.      **Return of Good Faith Deposits**

The Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors but shall not become property of the Debtors' estates other than in accordance with these Bid Procedures.  The Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing.  The Deposit of the Backup Bidder shall be returned to the Backup Bidder two (2) business days after the closing of the Sale with the Successful Bidder. Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon.  If the Successful Bidder timely closes the winning transaction, its Deposit shall be credited towards its purchase price.

G.      **Reservation of Rights**

The Debtors reserve the rights to modify the Bid Procedures or the requirements for determining a Qualified Bid to the extent that, after consultation with the Stalking Horse Bidder, the Debtors determine that such modification is mandated by acquittal of their fiduciary duties, provided that the Stalking Horse Bidder reserves all rights to oppose any such modification. Notwithstanding the foregoing and subject in all respects to the Stalking Horse Agreement, the Debtors may not impair or modify the Stalking Horse Bidder's rights and obligations under the Stalking Horse Agreement or the Stalking Horse Bidder's right to credit bid at the Auction, including, without limitation any modification of the Bid Procedures that alter the Stalking Horse Bid's status as a Qualified Bid or the Stalking Horse Bidder's status as a Qualified Bidder.

13

**<u>Exhibit 2 to Bid Procedures Order</u>**

**Sale Notice**

Exhibit 2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | ) | Case No. 22-10559 (JKS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF BID PROCEDURES, AUCTION, HEARING AND DEADLINES RELATING
TO THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS**

 **PLEASE TAKE NOTICE** that on June 22, 2022, the above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned case (the "Bankruptcy Case"), filed a *Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Potential Sale of Substantially All Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing Entry Into the Stalking Horse Agreement, (E) Approving Bid Protections, (F) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (G) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 17] (the "Bid Procedures and Sale Motion").[2] The Debtors seeks to complete a sale (the "Sale") of substantially all their assets (the "Assets") to a prevailing bidder or bidders (the "Successful Bidder") at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to section 363 of the Bankruptcy Code (the "Auction").

 **PLEASE TAKE FURTHER NOTICE** that, on July [●], 2022, the Bankruptcy Court entered an order [Docket No. ●] (the "Bid Procedures Order") approving the Bid Procedures set forth in the Bid Procedures and Sale Motion (the "Bid Procedures"), which set the key dates and times related to the sale of the Debtors' Assets. **All interested bidders should carefully read the Bid Procedures**. To the extent there are any inconsistencies between the Bid Procedures and the summary description of its terms and conditions contained in this notice, the terms of the Bid Procedures shall control.

 **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures, the Debtors must receive a Qualified Bid from interested bidders in writing, on or before **July 25, 2022**, **at 4:00**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528).  The location of the Debtors' service address is 3700 S Kedzie Avenue, Chicago, Illinois 60632.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bid Procedures and Sale Motion.

**p.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtors (the "Bid Deadline"). To be considered, Qualified Bids must be sent to the following at or before the Bid Deadline: (a) to the Debtors' investment banker, Houlihan Lokey Capital, Inc., Attn: Ryan Sandahl (email: rsandahl@hl.com), and (b) the Debtors' counsel, Klehr Harrison Havey Branzburg, LLP, Attn: Domenic Pacitti (email: dpacitti@klehr.com) and Michael Rittinger (email: mrittinger@klehr.com).

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Bid Procedures, if the Debtors receive one or more Qualified Bids (other than the Stalking Horse Agreement) by the Bid Deadline, the Auction will be conducted virtually on **July 28, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or at such other place, date and time as may be designated by the Debtors.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Bid Procedures, the Debtors have designated certain Assumed Contracts that may be assumed or assumed and assigned to the Successful Bidder. The Debtors shall send a notice to each counterparty to an Assumed Contract setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such counterparty if the Debtors decided to assume or assume and assign such Assumed Contract, and alerting such nondebtor party that their contract may be assumed and assigned to the Successful Bidder (the "Cure and Possible Assumption and Assignment Notice").

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Bid Procedures, any counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or the possible assignment of their Assumed Contract(s) must file with the Bankruptcy Court and serve an objection (a "Cure or Assignment Objection") so it is actually received on or before **4:00 p.m. prevailing Eastern Time on July 25, 2022**, by (a) counsel for the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (b) counsel for the Stalking Horse Bidder, the Prepetition Secured Party, and the DIP Lender, Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland ME 0410, Attn: Robert J. Keach (rkeach@bernsteinshur.com), Adam R. Prescott (aprescott@bernsteinshur.com), and Lindsay Zahradka Milne (lmilne@bernsteinshur.com) and Cozen O'Conner LLP, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com); and (c) counsel to the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia (joseph.cudia@usdoj.gov) and David L. Buchbinder (David.L.Buchbinder@usdoj.gov). Where a counterparty to an Assumed Contract files a timely Cure or Assignment Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that counterparty's Assumed Contract, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code § 365 (if any) or, as the case may be, the Debtors' ability to assign the Assumed Contract to the Successful Bidder will be determined at the Sale Hearing (as defined below). To the extent any Contract Counterparty is added to the Cure and Possible Assumption and Assignment Notice after the initial notice is served, such new Contract Counterparty shall receive notice of the addition and the Debtors' proposed cure amount, and that party shall have seven (7) days from the date of such notice to object to the proposed cure amount and assignment to the Successful Bidder.

2

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Assets to the Successful Bidder (the "Sale Hearing") before the Honorable J. Kate Stickles, U.S. Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, [●] Floor, Courtroom [___], on **August [3], 2022 at __:__ a.m./p.m. (prevailing Eastern Time)**, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or on the agenda for such Sale Hearing. Objections to the sale of the Assets to the Successful Bidder must be filed and served so they are actually received by no later than **4:00 p.m. (prevailing Eastern Time) on July 25, 2022** (except for any Residual Objection, which must be filed and served on or before **August 1, 2022, at 4:00 p.m. (prevailing Eastern Time)**) by the following: (a) counsel for the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (b) counsel for the Stalking Horse Bidder, the Prepetition Secured Party, and the DIP Lender, Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland ME 0410, Attn: Robert J. Keach (rkeach@bernsteinshur.com), Adam R. Prescott (aprescott@bernsteinshur.com), and Lindsay Zahradka Milne (lmilne@bernsteinshur.com) and Cozen O'Conner LLP, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com); and (c) counsel to the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia (joseph.cudia@usdoj.gov) and David L. Buchbinder (David.L.Buchbinder@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that the Debtors are seeking to waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d) in order for the Sale to close immediately upon entry of the Sale Order by this Court.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the full terms and conditions of the Bid Procedures and Sale Motion, the Bid Procedures Order and the Bid Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. A copy of the Bid Procedures and Sale Motion, the Bid Procedures and the Bid Procedures Order may be obtained for free by accessing the website of the Debtors' noticing agent, Omni Agent Solutions, located at https://www.omniagentsolutions.com/GoldStandard.

Dated: July [●], 2022        /s/ _____
Wilmington, Delaware            Domenic E. Pacitti (DE Bar No. 3989)
                                Michael W. Yurkewicz (DE Bar No. 4165)
                                Sally E. Veghte (DE Bar No. 4762)
                                **KLEHR HARRISON HARVEY BRANZBURG LLP**
                                919 N. Market Street, Suite 1000
                                Wilmington, Delaware 19801
                                Telephone: (302) 426-1189
                                Facsimile:  (302) 426-9193
                                Email:      dpacitti@klehr.com
                                            myurkewicz@klehr.com

3

sveghte@klehr.com

-and-

Morton R. Branzburg (*pro hac vice* admission pending)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:          (215) 569-3007
Facsimile:   (215) 568-6603
Email:                mbranzburg@klehr.com

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

4

## **Exhibit 3 to Bid Procedures Order**

### **Cure and Possible Assumption and Assignment Notice**

Exhibit 3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|                                                   |     |                            |
| ------------------------------------------------- | --- | -------------------------- |
|                                                   | )   |                            |
| In re:                                            | )   | Chapter 11                 |
|                                                   | )   |                            |
| GOLD STANDARD BAKING, LLC, *et al.*,[1]           | )   | Case No. 22-10559 (JKS)    |
|                                                   | )   |                            |
| Debtors.                                          | )   | (Jointly Administered)     |
|                                                   | )   |                            |

**NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES REGARDING CURE
AMOUNTS AND POSSIBLE ASSIGNMENT TO THE STALKING HORSE BIDDER OR
SUCH OTHER SUCCESSFUL BIDDER AT AUCTION**

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR
AFFILIATES MAY BE COUNTERPARTY TO ONE OR MORE EXECUTORY
CONTRACTS AND/OR UNEXPIRED LEASES WITH THE DEBTORS.[2]**

**PARTIES RECEIVING THIS NOTICE SHOULD (1) READ THIS NOTICE
CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS
DESCRIBED HEREIN AND (2) LOCATE THEIR NAME AND CONTRACT AND/OR
LEASE ON APPENDIX I HERETO**

---

**PLEASE TAKE NOTICE** that on June 22, 2022, the above-captioned debtors and debtors in possession (the "Debtors") filed a motion (the "Bid Procedures and Sale Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that on July [●], 2022, the Bankruptcy Court entered an order [Docket No. ●] (the "Bid Procedures Order"), which (a) set key dates, times and procedures related to the Sale (the "Sale") of substantially of the Debtors' assets (the "Assets") pursuant to an auction (the "Auction") overseen by the Bankruptcy Court, which Auction is scheduled to occur on **July 28, 2022 at 10:00 a.m. (prevailing Eastern Time),** (b) authorized the Debtors to enter into a stalking horse asset purchase agreement (the "Stalking Horse Agreement") with 37 Baking Holdings, LLC or its assignee (the "Stalking Horse Bidder"), (c) established certain procedures relating to the Debtors' assumption and assignment of executory contracts and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528).  The location of the Debtors' service address is 3700 S Kedzie Avenue, Chicago, Illinois 60632.

[2]    This Notice is being sent to counterparties to executory contracts and unexpired leases. This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

unexpired leases in connection with the Sale, and (d) granted related relief.[3]  Approval of the Sale to the Stalking Horse Bidder or such other Successful Bidder (as defined in the Bid Procedures Order) after the results of the Auction and the Debtors' assumption and assignment of any executory contracts and unexpired leases in connection therewith, is scheduled to take place at a hearing before the Bankruptcy Court at __:__ _.m. (prevailing Eastern Time) on **August [3], 2022** (the "Sale Hearing"). The Sale Hearing may be adjourned by the Bankruptcy Court or the Debtors without further notice other than such adjournment announced in open court or a notice of adjournment filed on the Bankruptcy Court's docket.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bid Procedures Order, the Debtors may assume and assign the executory contract(s) and/or unexpired lease(s) to which you may be a counterparty to the Stalking Horse Bidder or such other Successful Bidder after the outcome of the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have conducted a review of their books and records and have determined the cure amount for unpaid monetary obligations under such contract or lease is set forth in the right-hand column on Appendix I (the "Cure Amount"). If you object to (a) the proposed assumption or disagree with the proposed Cure Amount or (b) object to the possible assignment of such executory contract(s) or unexpired lease(s) to the Stalking Horse Bidder, **you must file an objection with the Bankruptcy Court no later than July 25, 2022, at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline") and serve such objection on the following parties**:

*Proposed Counsel to the Debtors*

Domenic E. Pacitti
Michael W. Yurkewicz
Klehr Harrison Harvey Branzburg LLP
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Email: dpacitti@klehr.com
       myurkewicz@klehr.com

and

Morton R. Branzburg
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Email: mbranzburg@klehr.com

*Co-Counsel to the Stalking Horse Bidder, Prepetition Secured Party, and DIP Facility Lender*

Lindsay Zahradka Milne, Esq.
Adam Prescott, Esq.
Bernstein, Shur. Sawyer & Nelson, P.A.
100 Middle Street
Portland, ME 04101
Email: lmilne@bernsteinshur.com
Email: aprescott@bernsteinshur.com

*Office of the United States Trustee for the District of Delaware*

J. Caleb Boggs Federal Building
844 King Street, Suite 2008 – Lockbox #35
Wilmington, DE  19801
Attn: Joseph Cudia
Email: joseph.cudia@usdoj.gov

---

[3]  To the extent there are any inconsistencies between the Bid Procedures Order and the summary description of the terms and conditions contained in this Notice, the terms of the Bid Procedures Order shall control.

*Clerk of the Bankruptcy Court*
*United States Bankruptcy Court for the*
*District of Delaware*
824 North Market Street, 3rd Floor
Wilmington, DE 19801

**PLEASE TAKE FURTHER NOTICE** that if no objection to the Cure Amount or the assignment of your Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder is filed by the Objection Deadline, **you will be (a) forever barred from objecting to the Cure Amount or provision of adequate assurance of future performance and from asserting any additional cure or other amounts with respect to your contract(s) or lease(s), and the Debtors and the Stalking Horse Bidder or the Successful Bidder (as applicable) shall be entitled to rely solely upon the Cure Amount, (b) deemed to have consented to the assumption or assumption and assignment, and (c) forever barred and estopped from asserting or claiming defaults exist, that conditions to assignment must be satisfied under such contract(s) and/or lease(s) or that there is any objection or defense to the assumption and assignment of such contract(s) and/or lease(s).**

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Amount indicated on Appendix I and otherwise do not object to the Debtors' assumption or assumption and assignment of your contract(s) and/or lease(s), you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Bid Procedures, and the Bid Procedures Order, as well as all related exhibits, including the proposed Sale Order may be obtained for free by accessing the website of the Debtors' noticing agent, Omni Agent Solutions, located at https://www.omniagentsolutions.com/GoldStandard.

Dated:  July [●], 2022          /s/ _____
Wilmington, Delaware                    Domenic E. Pacitti (DE Bar No. 3989)
                                        Michael W. Yurkewicz (DE Bar No. 4165)
                                        Sally E. Veghte (DE Bar No. 4762)
                                        **KLEHR HARRISON HARVEY BRANZBURG LLP**
                                        919 N. Market Street, Suite 1000
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 426-1189
                                        Facsimile:  (302) 426-9193
                                        Email:    dpacitti@klehr.com
                                                  myurkewicz@klehr.com
                                                  sveghte@klehr.com

                                        -and-

3

Morton R. Branzburg (admitted *pro hac vice*)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:   (215) 569-3007
Facsimile:    (215) 568-6603
Email:         mbranzburg@klehr.com

*Proposed Counsel for the Debtors and
Debtors in Possession*

4

# **APPENDIX I**

| [Counterparty Name] | [Contract/Lease] | [Cure Amount] | [Proposed Assignee (if any)] |
|---|---|---|---|

**EXHIBIT B**

**Redlined Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | ) | Case No. 22-10559 (JKS) |
|  | ) |  |
| Debtors. | ) | ~~(Joint Administration Requested)~~(Jointly Administered) |
|  | ) |  |
|  | ) | **Related to Docket No. 17** |

**ORDER (I) APPROVING BID PROCEDURES**
**IN CONNECTION WITH THE POTENTIAL SALE OF SUBSTANTIALLY ALL**
**ASSETS, (II) SCHEDULING AN AUCTION AND A SALE HEARING, (III) APPROVING**
**THE FORM AND MANNER OF NOTICE THEREOF, (IV) AUTHORIZING ENTRY**
**INTO THE STALKING HORSE AGREEMENT, (V) APPROVING BID PROTECTIONS,**
**(VI) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF**
**CONTRACTS AND LEASES, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for entry of an order (this "Order"): (i) authorizing and approving the bid procedures attached hereto as **Exhibit 1** (the "Bid Procedures") in connection with the sale (the "Sale") of substantially all of Gold Standard Baking, LLC's assets, (ii) scheduling an auction and hearing to consider the Sale of the Assets (as defined in the Stalking Horse Agreement), (iii) approving the form and manner of notice thereof, (iv) authorizing the Debtors to enter into the Stalking Horse Agreement, (v) approving the Bid Protections in connection therewith, (vi) approving procedures for the assumption and assignment of executory contracts

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528).  The location of the Debtors' service address is 3700 S Kedzie Avenue, Chicago, Illinois 60632.

[2]    Capitalized terms used as defined terms herein but not otherwise defined shall have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable. In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

and unexpired leases in connection with the Sale (collectively, the "Assumed Contracts"), and (vii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration and supplemental declarations and other testimony and evidence submitted by the Debtors in support of the Motion; this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); this Court having determined the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor:

**THE COURT FINDS THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

C.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors have confirmed their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by this Court in connection with the

Motion, to the extent it is later determined this Court, absent the consent of the parties, cannot

enter final orders or judgments consistent with Article III of the United States Constitution.

D.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      The bases for the relief requested in the Motion are §§ 105, 363, 365, 503, and

507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"),

Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, 6004-1, and

9013-1(m).

F.      Notice of the Motion has been given to: (a) the U.S. Trustee, 844 King Street,

Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia and David L. Buchbinder;

(b) the holders of the thirty (30) largest, non-insider unsecured claims against the Debtors; (c)

counsel to the Stalking Horse Bidder, the DIP Facility Lender and the Prepetition Secured Party;

(d) any other parties with known secured claims against the Debtors or their counsel, if known;

(e) all parties that have executed an NDA; (f) the United States Attorney's Offices for the

District of Delaware and the Northern District of Illinois; (g) the Internal Revenue Service; (h)

all state and local taxing authorities with an interest in the Assets; (i) the Attorneys General for

the State of Delaware and the State of Illinois; (j) the Securities and Exchange Commission; (k)

all other governmental agencies with an interest in the Sale and transactions proposed

thereunder; (l) all other parties known or reasonably believed to have asserted an interest in the

Assets; (m) the Assumed Contract Counterparties; (n) the Debtors' insurance carriers; (o)

counsel to the Union; and (p) any party that has requested notice pursuant to Bankruptcy Rule

2002.

G.      Good and sufficient notice of the Motion, including the relief sought therein, and

the Hearing was sufficient under the circumstances, and such notice complied with all applicable

3

requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided. A reasonable opportunity to object or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

H.    The Debtors have articulated good and sufficient reasons for this Court to (i) approve the Bid Procedures, (ii) schedule the bid deadlines and the Auction and the Sale Hearing, (iii) approve the form and manner of notice of the Auction and Sale Hearing, (iv) approve procedures for the assumption and assignment of the Assumed Contracts, including notice of the proposed cure amounts, (v) authorize entry into a Stalking Horse Agreement, and (vi) extend to the Stalking Horse Bidder the Bid Protections, in the exercise of their reasonable business judgment. The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

I.    The Bid Procedures attached hereto as **Exhibit 1** are reasonable, appropriate, and represent the best method for maximizing value for the benefit of the Debtors, their estates, and their creditors.  The Bid Procedures were negotiated at arm's length, in good faith, and without collusion.  The Bid Procedures balance the Debtors' interests in emerging expeditiously from the Chapter 11 Cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors, their estates, their creditors, and other parties in interest.  The Bid Procedures comply with the requirements of Local Rule 6004-1(c).

J.    The Debtors have demonstrated compelling and sound business justifications for authorization to: (i) enter into that certain Stalking Horse Agreement, a copy of which is attached hereto as **Exhibit A**, and (ii) offer the Stalking Horse Bidder the following: (a) a break-up fee equal to **$250,000.00** (the "Break-Up Fee") on the terms set forth in the Stalking Horse Agreement, (b) expense reimbursement of the Stalking Horse Bidder's out of pocket legal fees

4

and hard costs incurred up to **$350,000.00** (the "Expense Reimbursement") on the terms set forth in the Stalking Horse Agreement, and (c) an initial overbid equal to the Break-Up Fee, plus the Expense Reimbursement, plus **$200,000.00** (the "Initial Overbid" and, together with the Break-Up Fee and the Expense Reimbursement, the "Bid Protections").  With respect to the Bid Protections, the Court makes the following findings:

a.      the Bid Protections are the product of extensive negotiations between the Debtors and the Stalking Horse Bidder conducted in good faith and at arm's length, and the Stalking Horse Agreement (including the Bid Protections) are the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay the highest price or best purchase price to date for the Assets to maximize the value of the Debtors' estates;

b.      the Break-Up Fee and Expense Reimbursement are an actual and necessary cost and expenses of preserving the value of the respective Debtors' estates;

c.      the Bid Protections are fair, reasonable, and appropriate in light of, among other things, the size and nature of the proposal Sale under the Stalking Horse Agreement, the substantial efforts that have been and will be expended by the Stalking Horse Bidder, including the identification and quantification of assets to be included in the Assets, and notwithstanding that the proposed sale is subject to higher and better offers, the substantial benefits the Stalking Horse Bidder has provided to the Debtors, their estates, their creditors, and all parties in interest, including, among other things, by increasing the likelihood that the best possible price for the Assets will be received;

d.      the Bid Protections were material inducements for, and express conditions of, the Stalking Horse Bidder's willingness to enter into the Stalking Horse Agreement and were necessary to ensure that the Stalking Horse Bidder would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding;

e.      the offer of the Bid Protections is intended to promote more competitive bidding by inducing the Stalking Horse Bid, which (i) will serve as a minimum floor bid on which all other bidders can rely with respect to the Assets, (ii) may prove to be the highest or otherwise best available offer

10038374.v11
10069698.v1

for the Assets, and (iii) increases the likelihood that the final purchase price will reflect the true value of the Assets; and

f. the Stalking Horse Bidder is unwilling to commit to purchase the Assets under the terms of the Stalking Horse Agreement without approval of the Bid Protections.

K.    The Debtors' performance of certain pre-closing obligations contained in the Stalking Horse Agreement is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound business judgment.

L.    Notwithstanding the disclosed connections in the Sale Motion, the Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code.  No other common identity of incorporators, directors, managers, controlling shareholders, or other insider of the Debtors exist between the Stalking Horse Bidder and the Debtors other than as disclosed

M.    The notice, substantially in the form attached hereto as **Exhibit 2**, provided by the Debtors regarding the Sale of the Assets by Auction and Sale Hearing (the "Sale Notice"), is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held), (ii) the Bid Procedures and certain dates and deadlines related thereto, (iii) the deadline for filing objections to the Sale and entry of the Sale Order (including Residual Objections), and the date, time, and place of the Sale Hearing, (iv) reasonably specific identification of the assets for sale, (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement, (vi) a description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity

6

and priority to the sale proceeds, (vii) the commitment by the Stalking Horse Bidder to assume

certain liabilities disclosed in the Stalking Horse Agreement (collectively, the "Assumed

Liabilities"), and (viii) notice of the proposed assumption and assignment of Assumed Contracts

to the Stalking Horse Bidder (or such other Assumed Contracts to another Successful Bidder (as

defined in the Bid Procedures) arising from the Auction, if any) and the right, procedures, and

deadlines for objecting thereto.  No other or further notice of the Sale shall be required.

      N.      The Motion, this Order, and the Assumption Procedures (as defined below) set

forth herein are appropriate and reasonably calculated to provide any Assumed Contract

Counterparties with proper notice of the intended assumption and assignment of their Assumed

Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

      O.      Neither the filing of the Motion, entry of this Order, the solicitation of bids or the

conducting of the Auction in accordance with the Bid Procedures nor any other actions taken by

the Debtors in accordance therewith shall constitute a sale of the Assets, which sale will only

take place, if at all, following the Sale Hearing.

      **IT IS HEREBY ORDERED THAT:**

      1.      The Motion is **GRANTED** as set forth herein.

      2.      All objections, statements, and reservations of rights with respect to the relief

requested in the Motion with respect to the Bid Procedures that have not been withdrawn,

waived, or settled, as announced to the Court at the hearing on the Motion or by stipulation filed

with the Court, are overruled and denied on the merits with prejudice.

**A.**      **The Bid Procedures**

      3.      The Bid Procedures, attached hereto as **Exhibit 1**, are hereby approved in their

entirety and are fully incorporated into this Order. The Bid Procedures shall govern the

submission, receipt, and analysis of all bids relating to the proposed Sale and any party desiring to submit a higher or better offer for the Assets must comply with the terms of the Bid Procedures and this Order. The Bid Procedures shall also govern the terms on which the Debtors will proceed with the Auction and/or Sale pursuant to the Stalking Horse Agreement.

4.    The Stalking Horse Bidder shall be deemed a Qualified Bidder pursuant to the Bid Procedures for all purposes.

5.    The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bid Procedures):

- **July 6 8, 2022, at 4:00 p.m.:** Debtors to send Cure and Possible Assumption and Assignment Notices to All Contract Counterparties.

- **July 25, 2022, at 4:00 p.m.:** Deadline to submit bids.

- **July 25, 2022, at 4:00 p.m.:** Deadline to file and serve objections to relief requested at Sale Hearing (except for any Residual Objection that arises at the Auction) (the"Sale Objection Deadline").

- **July 25, 2022, at 4:00 p.m.:** Cure Objection Deadline.

- **July 28, 2022, at 10:00 a.m.:** Auction to be conducted.

- **July 29, 2022, at 4:00 p.m.:** Debtors deadline to file notice of Successful Bidder and Contract Assignment Notices.

- **August 1, 2022, at 4:00 p.m.:** Residual Objection Deadline.

- **August [3], 2022, at _____ a.m./p.m.:** Date and time of Sale Hearing.

## B.    Entry into Stalking Horse Agreement

6.    The Debtors are authorized to enter into the Stalking Horse Agreement with the Stalking Horse Bidder and to pay the Break-Up Fee and Expense Reimbursement pursuant to the terms and conditions set forth in the Stalking Horse Agreement.

8

7.    The Debtors are authorized to perform all of their respective pre-closing obligations under the Stalking Horse Agreement; <u>provided</u> that for the avoidance of doubt, approval and consummation of the transactions contemplated by the Stalking Horse Agreement shall be subject to the terms and conditions herein and the entry of an order approving the Sale of the Assets and the satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking Horse Agreement.

**C.    Approval of the Bid Protections**

8.    The Bid Protections are hereby approved.  The Debtors are authorized to pay the Stalking Horse Bidder the Break-Up Fee and Expense Reimbursement if and to the extent they become due and payable under the Stalking Horse Agreement.

9.    The Break-Up Fee and Expense Reimbursement shall constitute an allowed ~~superpriority~~ administrative expense claim against the Debtors' bankruptcy estates pursuant to Bankruptcy Code §§ ~~363, 364(c)(1),~~ 503(b)<u>, and</u> 507(a)(2~~), and 507(b)~~).  The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement shall survive the termination of the Stalking Horse Agreement and shall be payable by the Debtors as otherwise provided in the Stalking Horse Agreement.

10.    To the extent not paid earlier, the Break-Up Fee and Expense Reimbursement shall be payable from the proceeds of the Sale prior to any other payments or distributions being made from such Sale proceeds (including, for the avoidance of doubt, prior to any payments or distributions to professionals, or administrative claimants) and the Debtors' cash on hand.  No

further or additional order from the Court shall be required to give effect to such provisions relating to the terms of payment of the Break-Up Fee and Expense Reimbursement.

11.     Each Debtors' obligations relating to the Bid Protections arising under or in connection with the Stalking Horse Agreement shall be binding and enforceable against each such Debtor and its respective estate, and, as applicable, (i) any of its successor or assigns, (ii) any trustee, examiner, or other representative of the Debtors' estates, (iii) the reorganized Debtors, and (iv) any other entity vested or re-vested with any right, title, or interest in or to a material portion of the assets directly or indirectly owned by the Debtors or any other person claiming any rights in or control over a material portion of such assets (each, a "Debtor Successor") as if such Debtor Successor was the Debtors.

**D.      The Auction**

12.     As further described in the Bid Procedures, if a Qualified Bid, other than the Stalking Horse Agreement, is received by the Bid Deadline, the Debtors will conduct the Auction **virtually** at **10:00 a.m. (prevailing Eastern Time) on July 28**, **2022,** or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received.  The Debtors are authorized, subject to the terms of this Order and the Bid Procedures, to take actions reasonably necessary to conduct and implement the Auction.

13.     If the Debtors do not receive a Qualified Bid (other than the Stalking Horse Agreement): (i) the Debtors may cancel the Auction, (ii) the Stalking Horse Agreement shall be deemed by the Debtors to be the Successful Bid for the Assets, and (iii) the Debtors shall seek approval of the Stalking Horse Agreement as the Successful Bid at the Sale Hearing.

10038374.v11
10069698.v1

14.     Only Qualified Bidders (including, for the avoidance of doubt, the Stalking Horse Bidder) shall be entitled to make any Bids at the Auction.

15.     The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed or videotaped.

16.     Each Qualified Bidder (including, for the avoidance of doubt, the Stalking Horse Bidder) participating in the Auction must confirm that it: (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands, and accepts the Bid Procedures, and (c) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale, or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

17.     The Stalking Horse Bidder shall be deemed to be a Qualified Bidder and is not required to make any Deposit.  In accordance with Bankruptcy Code § 363(k), but subject to the right of any party in interest to file an objection challenging such credit bid rights prior to the Sale Objection Deadline, the Stalking Horse Bidder, (i) in its capacity as the Prepetition Secured Party, may credit bid, as a Qualified Bid or subsequent Bid, in its sole and absolute discretion, any portion and up to the entire amount owing under the First Priority Obligations, in the full amount of such obligations outstanding as of the date of the Auction on the Assets in conjunction with the Sale of the Assets pursuant to the terms of the Stalking Horse Agreement, and (ii) in its capacity as the DIP Facility Lender, may credit bid, as a Qualified Bid or subsequent Bid, in its sole and absolute discretion, any portion and up to the entire amount owing under the DIP Facility Obligations, in the full amount of such obligations outstanding as of the date of the Auction on the Assets in conjunction with the Sale of the Assets pursuant to the terms of the

11

Stalking Horse Agreement, plus the Break-Up Fee and Expense Reimbursement (the "Credit Bid").  In the event the amount of the Credit Bid exceeds the total amount of the highest bids for the Assets subject to the Credit Bid, such Credit Bid shall be deemed the highest and best bid and such Credit Bid shall be accepted by the Debtors and be presented for approval to the Court.

18.    In the event of a competing Qualified Bid, all Qualified Bidders shall be entitled, but not obligated, to submit Overbids.

19.    No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and, by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of Bankruptcy Code § 503(b) or otherwise.

**E.    Assumption and Assignment Notices & Procedures**

20.    The procedures set forth below regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to § 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder, if any) pursuant to § 365(f) of the Bankruptcy Code in connection with the Sale (the "Assumption Procedures") are hereby approved to the extent set forth herein.  These Assumption Procedures shall govern the assumption and assignment of all of the Assumed Contracts to be assumed and assigned in connection with the Sale, subject to the payments necessary to cure any defaults arising under any such Assumed Contracts.

21.    On or prior to **July 78, 2022**, the Debtors shall file with the Court and serve via overnight delivery on all Assumed Contract Counterparties to any Assumed Contract (the "Cure

10038374.v11
10069698.v1

and Possible Assumption and Assignment Notice Parties") that may be assumed by the Debtors

and assigned to the Stalking Horse Bidder (or other Successful Bidder after the results of the

Auction), which notice shall be substantially in the form attached hereto as **Exhibit 3** (a "Cure

and Possible Assumption and Assignment Notice").   The Cure and Possible Assumption and

Assignment Notice shall inform each recipient of the timing and procedures relating to such

assumption and assignment, and, to the extent applicable: (i) the title of the executory contract or

unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or

unexpired lease, as applicable, (iii) the Debtors' good faith estimate of the cure amount (if any)

required in connection with the executory contract or unexpired lease, as applicable, (iv) the

identity of the Stalking Horse Bidder (as assignee, if applicable), and (v) the Contract Objection

Deadline (as defined below).  The presence of an Assumed Contract on the Cure and Possible

Assumption and Assignment Notice does not constitute an admission that such Assumed

Contract is an executory contract or unexpired lease, and the presence of an Assumed Contract

on any notice shall not prevent the Debtors from subsequently withdrawing such request for

assumption or rejecting such Assumed Contract any time before such Assumed Contract is

actually assumed and assigned pursuant to the Sale Order.

      22.     Although the Debtors intend to make a good faith effort to identify all Assumed

Contracts that may be assumed and assigned in connection with a Sale, the Debtors may discover

certain executory contracts and unexpired leases inadvertently omitted from the list of Assumed

Contracts, or Successful Bidders may identity other executory contracts and/or unexpired leases

that they desire to assume and assign in connection with the Sale.  Accordingly, the Debtors

reserve the right, but only in accordance with the Stalking Horse Agreement, or as otherwise

agreed to by the Debtors and the Successful Bidder, at any time after the service of the Cure and

Possible Assumption and Assignment Notice and before the closing of a Sale, to: (i) supplement the list of Assumed Contracts with previously omitted executory contracts, (ii) remove Assumed Contracts from the list of executory contracts and unexpired leases ultimately selected as Assumed Contracts that a Successful Bidder proposes to be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated cure amount associated with any Assumed Contract.  In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the Assumed Contract Counterparties to such Assumed Contracts and their counsel of record, if any; provided, however, the Debtors may not add an executory contract to the list of Assumed Contracts that has been previously rejected by the Debtors by order of the Court.  Each Supplemental Assumption Notice will include the same information with respect to listed Assumes Contracts as was included in the Cure and Possible Assumption and Assignment Notice.

23.     Objections, if any, to the cure amount set forth on the Cure and Possible Assumption and Assignment Notice or the possible assignment of its executory contract or unexpired lease (each, an "Assumed Contract Objection") **must**: (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, and (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before **July 25, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Assumed Contract Objection Deadline"): (a) counsel for the Debtors, Klehr Harrison Harvey ~~Banzburg~~Branzburg LLP, 919 N. Market ~~Strett~~Street, Suite

14

1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and ~~Micahel Yurkewize~~Michael Yurkewicz (myurkewicz@klehr.com); (b) counsel for the Stalking Horse Bidder, the Prepetition Secured Party, and the DIP ~~LenderBernstein~~Lender, Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland ME 0410, Attn:  Robert J. Keach (rkeach@bernsteinshur.com), Adam R. Prescott (aprescott@bernsteinshur.com), and Lindsay Zahradka Milne (lmilne@bernsteinshur.com) and Cozen O'Conner LLP, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com); and (c) counsel to the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia (joseph.cudia@usdoj.gov) and David L. Buchbinder (David.L.Buchbinder@usdoj.gov).  To the extent any Contract Counterparty is added to the Cure and Possible Assumption and Assignment Notice after the initial notice is served, such new Contract Counterparty shall receive notice of the addition and the Debtors' proposed cure amount, and that party shall have not less than seven (7) days from the date of such notice to object to the proposed cure amount and assignment to the Successful Bidder.

24.    If an Assumed Contract Counterparty does not timely file and serve an Assumed Contract Objection, that party shall be forever barred from objecting to: (i) the Debtors' proposed cure amount, (ii) the assumption and assignment of that party's executory contract or unexpired lease (including the adequate assurance of future performance), (iii) the related relief requested in the Motion, and (iv) the Sale.  Such party shall be forever barred and estopped from objecting to the cure amount, the assumption and assignment of that party's executory contract or unexpired lease (including the adequate assurance of future performance), the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Stalking Horse Bidder or the Successful Bidder, as applicable,

15

for purposes of § 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Stalking Horse Bidder or Successful Bidder, as applicable, with respect to such party's executory contract or unexpired lease, provided however, that by filing a motion with the Court no later than entry of the Sale Order, a counterparty to an Assumed Contract shall not be barred from seeking an additional cure amount solely as to any new cure obligation that accrued after the Assumed Contract Objection Deadline and before entry of the Sale Order, provided, further, that in the event a counterparty to an Assumed Contract asserts an additional cure amount under the preceding clause, the Purchaser shall have the right to remove such contract as an Assumed Contract at Closing in its sole discretion.

25.      Where an Assumed Contract Counterparty to an Assumed Contract files a timely Assumed Contract Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or objecting to the possible assignment of that Assumed Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code § 365 (if any) or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder shall be determined at the Sale Hearing.

26.      The payment of the applicable cure amount by the Debtors or Stalking Horse Bidder (or other Successful Bidder), as applicable, shall: (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

**F.      Notice of the Sale Process**

16

27.    The Sale Notice and the Cure and Possible Assumption and Assignment Notice, in substantially the forms as annexed to this Order as **Exhibit 2**, and **Exhibit 3**, respectively, are hereby approved.

28.    Within two (2) business days after the entry of this Order, the Debtors (or their agent) shall serve the Sale Notice by first-class mail upon: (a) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia and David L. Buchbinder; (b) the holders of the thirty (30) largest, non-insider unsecured claims against the Debtors; (c) counsel to the Stalking Horse Bidder, the DIP Facility Lender and the Prepetition Secured Party; (d) any other parties with known secured claims against the Debtors or their counsel, if known; (e) all parties that have executed an NDA (via email); (f) the United States Attorney's Offices for the District of Delaware and the Northern District of Illinois; (g) the Internal Revenue Service; (h) all state and local taxing authorities with an interest in the Assets; (i) the Attorneys General for the State of Delaware and the State of Illinois; (j) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (k) all other parties known or reasonably believed to have asserted an interest in the Assets (via email); (l) the Assumed Contract Counterparties; (m) the Debtors' insurance carriers; (n) counsel to Union; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002.

G.    **The Sale Hearing**

29.    The Sale Hearing shall be conducted on **August [3], 2022 at __:__ a.m./p.m. (prevailing Eastern Time)**. The Debtors will seek entry of an order of the Court at the Sale Hearing approving and authorizing the sale of the Assets to the Successful Bidder.  Upon entry of this Order, the Debtors are authorized to perform any obligation intended to be performed prior to the Sale Hearing or entry of the Sale Order with respect thereto.  The Sale Hearing may

17

be adjourned from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed on the Court's docket.

**H.    Objections to the Sale**

30.    Objections, if any, to the relief requested in the Motion relating to the Sale (each, a "Sale Objection") must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Court, and (iv) be served so it is actually received no later than **4:00 p.m. (prevailing Eastern Time) on July 25, 2022, a 4:00 p.m.**, by: (a) counsel for the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti and Morton R. Branzburg(dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (b) counsel for the Stalking Horse Bidder, the DIP Facility Lender, and the Prepetition Secured Party (Attn: [●] ([●]), and the DIP Facility Lender, Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland ME 0410, Attn: Robert J. Keach (rkeach@bernsteinshur.com), Adam R. Prescott (aprescott@bernsteinshur.com), and Lindsay Zahradka Milne (lmilne@bernsteinshur.com) and Cozen O'Conner LLP, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com); and (c) counsel forto the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia (joseph.cudia@usdoj.gov) and David L. Buchbinder (David.L.Buchbinder@usdoj.gov).

31.    A party's failure to timely file a Sale Objection in accordance with this Order shall forever bar the assertion, at the applicable Sale Hearing or otherwise, of any objection to the relief requested in the Motion, or to the consummation of the Sale and the performance of the related transactions, including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to § 363(f) of the

18

Bankruptcy Code, and shall be deemed to be a "consent" for purposes of § 363(f) of the Bankruptcy Code.

**I.    Other Relief Granted**

32.    Nothing in this Order, the Stalking Horse Agreement, or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

33.    The requirements of Bankruptcy Rules 6004(h) and 6006(d) are waived.

34.    The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

35.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

36.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

37.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

38.    The U.S. Trustee reserves all rights to assert any and all objections prior to the Sale Objection Deadline with respect to the inclusion of Assumed Bonus Obligation (as defined in the Stalking Horse Agreement) as part of the Assumed Liabilities (as defined in the Stalking Horse Agreement) under the Stalking Horse Agreement, and the Debtors, U.S. Trustee and Stalking Horse Bidder agree to continue discussions with respect to resolution of any such objections in advance of the Sale Objection Deadline.

19

**<u>Exhibit 1 to Bid Procedures Order</u>**

**Bid Procedures**

Exhibit 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | ) | Case No. 22-10559 (JKS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested)(Jointly Administered) |
| | ) | |

## BID PROCEDURES

In the exercise of their good faith reasonable business judgment, the above-captioned debtors and debtors in possession (the "Debtors") have executed an Asset Purchase Agreement (the "Stalking Horse Agreement") with 37 Baking Holdings, LLC or its assignee (the "Stalking Horse Bidder"), pursuant to which: (i) the Stalking Horse Bidder proposes to (a) purchase, acquire, and take assignment and delivery of the Assets (as defined in the Stalking Horse Agreement) and (b) assume and take assignment of the Assumed Contracts (as defined in the Stalking Horse Agreement), and (c) assume certain Assumed Liabilities (as defined in the Stalking Horse Agreement), and (ii) the Debtors propose to, upon the termination of the Stalking Horse Agreement due to the closing of a sale of the Assets to a Successful Bidder other than the Stalking Horse Bidder, (a) pay the Stalking Horse Bidder an amount equal to **$250,000.00**, in consideration of the Stalking Horse Bidder having expended considerable time and expense in connection with the Stalking Horse Agreement and the negotiation thereof, and the identification and quantification of assets to be included in the Assets (the "Break-Up Fee") and (b) reimburse the Stalking Horse Bidder in the dollar amount of up to **$350,000.00** (the "Expense Reimbursement"), in each case, in accordance with the terms and conditions of the Stalking Horse Agreement.

On July [●], 2022, the Bankruptcy Court entered an order [Docket No. [●]] (the "Bid Procedures Order") approving, among other things, these bid procedures (the "Bid Procedures").

These Bid Procedures set forth the process by which the Debtors are authorized to conduct the auction (the "Auction") for the sale (the "Sale") of the Assets. Subject to the entry of the Sale Order, the Sale may be implemented pursuant to the terms and conditions of the Stalking Horse Agreement, as the same may be amended pursuant to the terms thereof, subject to the receipt of higher or otherwise better Bids (as defined below) in accordance with these Bid Procedures. Pursuant to the Bid Procedures, the Debtors will determine the highest or otherwise best price for the sale of the Assets.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528).  The location of the Debtors' service address is 3700 S Kedzie Avenue, Chicago, Illinois 60632.

**A.**     **Important Dates**

- **July ~~7~~8, 2022, at 4:00 p.m.:** Debtors to send Cure and Possible Assumption and Assignment Notices to All Contract Counterparties.

- **July 25, 2022, at 4:00 p.m.:** Deadline to submit bids.

- **July 25, 2022, at 4:00 p.m.:** Deadline to file and serve objections to relief requested at Sale Hearing (except for any Residual Objection that arises at the Auction).

- **July 25, 2022, at 4:00 p.m.:** Cure Objection Deadline.

- **July 28, 2022, at 10:00 a.m.:** Auction to be conducted.

- **July 29, 2022, at 4:00 p.m.:** Debtors deadline to file notice of Successful Bidder and Contract Assignment Notices.

- **August 1, 2022, at 4:00 p.m.:** Residual Objection Deadline.

- **August [3], 2022 at _____ a.m./p.m.:** Date and time of Sale Hearing.

**B.**     **Marketing Process**

**1.**     **Contact Parties**

The Debtors and their advisors have conducted and will conduct an extensive marketing process.  The Debtors and their advisors have a list of "Contact Parties" encompassing those parties who: (i) have executed NDAs with the Debtors, and (ii) whom the Debtors believe may be interested in pursuing a Sale, and whom the Debtors reasonably believe may have the financial resources to consummate such a transaction.  The Debtors may distribute to each Contact Party an "Information Package," which is comprised of: a copy of these Bid Procedures and a copy of the Stalking Horse Agreement.

**2.**     **Access to Diligence Materials**

To receive due diligence information, including full access to the electronic data room and to additional non-public information, any party interested in submitting a bid, other than the Stalking Horse Bidder (each a "Potential Bidder"), must deliver the following documents (collectively, the "Preliminary Bid Documents") by email to the Debtors' investment banker, Houlihan Lokey Capital, Inc., Attn: Ryan Sandahl (email: rsandahl@hl.com), with a copy to  the Debtors' counsel, Klehr Harrison Havey Branzburg, LLP, Attn: Domenic Pacitti (email: dpacitti@klehr.com) and Michael Rittinger (email: mrittinger@klehr.com)  (collectively, the "Bid Recipients"):

2

(i) <u>a written disclosure of the identify of each entity that will be bidding for the Debtors' assets, is in control of such entity, or will otherwise be participating in connection with such bid;</u>

(ii)    an "<u>Acceptable Confidentiality Agreement</u>," which shall mean a commercially reasonable confidentiality agreement in form and substance reasonable acceptable to the Debtors;

(iii)    sufficient evidence, as reasonably determined by the Debtors, to allow the Debtors to determine in their reasonable business judgment that (i) the Potential Bidder has the financial capacity to close a proposed transaction, which shall include financial statements of the Potential Bidder, including current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited and unaudited financial statements or other financial information of the Potential Bidder's equity holder or other financial backer, or such other form of financial disclosure and evidence acceptable to the Debtors and their advisors in their reasonable discretion taking into account the Debtors' fiduciary duties, demonstrating such Potential Bidder's ability to close the proposed transaction, to finance going concern operations to the extent contemplated, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Potential Bidder; and (ii) intends to access the electronic data room (described below) for a bona fide purpose consistent with the Bid Procedures.

Promptly after a Potential Bidder delivers the Preliminary Bid Documents to the Bid Recipients, the Debtors shall assess the adequacy of the evidence of its financial capacity and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit a Bid and participate in the Auction, as applicable.  Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, a "<u>Bidder</u>") may submit Bids.

As soon as reasonably practicable after the Debtors determine that a Potential Bidder is a Bidder, the Debtors shall provide such Bidder with access to an electronic data room and reasonable due diligence information as requested by such Bidder (to the extent such Bidder has not already been provided such access and information).  All due diligence requests must be directed to Houlihan Lokey Capital, Inc., Attn: Ryan Sandahl (email: rsandahl@hl.com) will work to facilitate meetings between any interested Bidder and the Debtors' management team. For all Potential Bidders (except for the Stalking Horse Bidder), the due diligence period will end on the Bid Deadline, and after the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information. The Debtors and their advisors shall coordinate all reasonable requests from Bidders for additional information and due diligence access.  The Debtors may decline to provide such information to Bidders who, in the Debtors' business judgment, have not established, or who have raised doubt, that such Bidder intends in good

3

faith or has the capacity to consummate a sale transaction of all or substantially all of the Assets (a "Transaction").

For any Bidder who is a direct competitor of Seller or is affiliated with any direct competitor of Seller, the Debtors reserve the right to protect any diligence materials that the Debtors determine are business-sensitive and to utilize clean room or other similar methodologies in sharing to the extent such information becomes necessary for such party to submit a Qualified Bid.

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated Transaction.

### 3. Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtors to satisfy each of the following conditions (collectively, the "Bid Requirements"):

(i) Stalking Horse Bidder. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder, and the Stalking Horse Agreement shall be deemed to be a Qualified Bid (the "Stalking Horse Bid"), without the need to comply with any of the requirements set forth in this section.

(ii) Form and Contents. All Qualified Bids shall be in the form of an offer letter from a person or persons that the Debtors deem financially able to consummate the purchase of the Assets, which letter states and includes:

    a. Marked Agreement. Each Qualified Bid must state the Qualified Bidder offers to purchase some or all of the Assets upon the terms and conditions set forth in an executed and attached complete asset purchase agreement prepared and executed by the Qualified Bidder (an electronic version in Word format and blacklined against the Stalking Horse Agreement), together with its exhibits and schedules, including terms relating to price and the time of closing (the "Proposed Agreement");

    b. Purchase Price. Each Qualified Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, such as certain liabilities to be assumed by the Bidder as part of the Transaction, for example (the "Purchase Price");

    c. Committed Financing. To the extent that a Qualified Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the Transaction set forth in its Qualified Bid with cash on hand, each Qualified Bid must include

10038374.v11
10069698.v1

evidence of committed financing that demonstrates that the Qualified Bidder has received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Qualified Bid. Such funding commitments or other financing acceptable to the Debtors must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have conditions acceptable to the Debtors;

d.  <u>Contingencies; No Financing or Diligence Outs.</u>  A Qualified Bid shall not be conditioned on a Qualified Bidder obtaining, or the sufficiency of, financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions;

e.  <u>Identity.</u>  Each Qualified Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Qualified Bid (including each equity holder or other financial backer of the Qualified Bidder if such Qualified Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Qualified Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Qualified Bid.  Each Qualified Bid must also include contact information for the specific person(s) and counsel the Debtors' advisors should contact regarding such Qualified Bid;

f.  <u>Authorization</u>.  Each Qualified Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Qualified Bid and the consummation of the Transactions contemplated in such Qualified Bid;

g.  <u>Substantial Contribution Waiver.</u> Each Qualified Bid must contain an express waiver, effective upon submission of the Qualified Bid, of any substantial contribution claims by the Qualified Bidder;

h.  <u>Expenses; Disclaimer to Fees</u>. Each Qualified Bid must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Potential Bidder (other than the Stalking Horse Bidder) shall be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, substantial contribution, or any other similar form of compensation, and by submitting a Bid any Potential Bidder is waiving any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code;

10038374.v11
10069698.v1

      i.    <u>Consummation</u>.  Each Qualified Bid must include a statement that the Qualified Bidder is prepared to consummate the transaction, following entry of an order of this Court approving the Sale to the Successful Bidder (the "<u>Sale Order</u>");

      j.    <u>Irrevocability</u>. Each Qualified Bid must include a statement that, in the event the Qualified Bidder becomes the Successful Bidder or the Back-up Bidder (as defined below), such Qualified Bidder's offer is irrevocable until two (2) business days after the closing of the sale of the Assets;

      k.    <u>Assumed Contracts and Leases.</u>  The Qualified Bid must state which (if any) of Seller's leases and executory contracts are to be assumed in connection with the consummation of the Qualified Bidder's bid;

      l.    <u>Liquidated Damages</u>.  Each Qualified Bid must provide for liquidated damages in the event of the Qualified Bidder's breach of, or failure to perform under, the Proposed Agreement equal to the amount of the Deposit; and

      m.    <u>Consent to Jurisdiction</u>.  Each Qualified Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, the Sale documents, and the closing of the sale, as applicable.

(iii)    <u>Same or Better Terms</u>. Each Bid shall be based on the Stalking Horse Bid and to the extent seeking to purchase substantially all assets, must exceed the Stalking Horse Bid in relation to the Assets by the Minimum Overbid (as that term is defined in the Bid Procedures Order). Each Bid must be on terms that are not more burdensome than the terms of the Stalking Horse Bid, as determined by the Debtors, and considering, among other factors, the scope and manner of the proposed Transaction. Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the Sale and a copy of the Stalking Horse APA clearly marked to show all changes requested by the Potential Bidder, including those related to the respective Purchase Price and Assets to be acquired by such Bidder, as well as all other material documents integral to such Bid.

(iv)    <u>Corporate Authority</u>. Written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed transaction; provided, however, if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the transaction by the equity holder(s) of such Bidder.

(v) <u>Adequate Amounts</u>. All Bids must provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Bidder.

(vi)    <u>Proof of Financial Ability to Perform</u>. All Bidders must provide written evidence the Debtors reasonably conclude demonstrates the Bidder has the necessary financial ability to close the Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Transaction. Such information should include, <u>inter</u> <u>alia</u>, the following: (a) contact names and numbers for verification of financing sources; (b) written evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the transaction; (c) the Bidder's current financial statements (audited if they exist); (d) a description of the Bidder's pro forma capital structure; and (e) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating such Bidder has the ability to close the transaction; provided, however, the Debtors shall determine in their reasonable discretion whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(vii)   <u>As Is, Where Is</u>.  The sale of the Assets shall be on an "as is, where is" and "with all defects" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or estates, except to the extent set forth in the Proposed Agreement of the Successful Bidder.

(viii)  <u>Free and Clear</u>.  Except as otherwise provided in the Proposed Agreement, all of the Debtors' right, title, and interest in and to the Assets to be acquired shall be sold free and clear of all liens, claims, charges, security interests, restrictions, and other encumbrances of any kind or nature thereon and there against (collectively, the "<u>Transferred Liens</u>"), with such Transferred Liens to attach to the proceeds of the sale.

(ix)    <u>Good Faith Deposit</u>. Each Bid (other than the Stalking Horse Bid) must be accompanied by a cash deposit in the amount of ten percent (10%) of the cash portion of the Purchase Price to be held in an escrow account to be identified and established by the Debtors (the "<u>Deposit</u>").

(x)     <u>Binding Effect</u>. By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bid Procedures and to refrain from submitting a Qualified Bid or seeking to reopen the Auction after conclusion of the Auction.

(xi)    <u>Time Frame for Closing</u>. A Bid by a Bidder must be reasonably likely to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, but in no event later than August 15, 2022.

**Bid Deadline.**  The Debtors must receive a Bid in writing, on or before **July 25, 2022 at 4:00 p.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtors (the "<u>Bid Deadline</u>").  Bids must be sent to the following by the Bid Deadline to be considered: (a) counsel for the Debtors, [●] and [●] ([●]Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and

7

Michael Yurkewicz (myurkewicz@klehr.com); and (b) [•]the Debtors' investment banker, Houlihan Lokey Capital, Inc., Attn: Ryan Sandahl (Rsandahl@HL.com) and Steven Balash (Sbalash@HL.com).

A Bid received before the Bid Deadline will be considered a "Qualified Bid" and each Bidder that submits a Qualified Bid will be considered a "Qualified Bidder" if the Debtors determine that such Bid meets each of the Bid Requirements.

Prior to the Auction, the Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties, as well as the Stalking Horse Bidder with a copy of each Qualified Bid.

Upon determination that any Bid is not a Qualified Bid, the Debtors shall notify such Bidder of such determination forthwith, but in any event not later than one day before the commencement of the Auction and shall provide such bidder with the basis for such determination.

Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction date, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; provided that any Qualified Bid may be improved at the Auction as set forth in the Bid Procedures. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in the Bid Procedures. The Stalking Horse Bidder may increase the amount of its credit bid up to the full amount of the First Priority Obligations and the DIP Facility Obligations at the Auction.

Upon determination that any Bid is not a Qualified Bid, the Debtors shall notify such Bidder of such determination forthwith, but in any event not later than one day before the commencement of the Auction and shall provide such bidder with the basis for such determination. In the event that such Bid is determined not to be a Qualifying Bid, the Bidder shall have until the commencement of the Auction to modify its bid to increase the purchase price or otherwise improve the terms of the Bid for the Debtors in order to comply with the requirements of Qualified Bids as set forth herein; provided that any Qualifying Bid may be improved during the Auction only as set forth herein. To the extent there is any dispute regarding whether a Bidder is a Qualified Bidder, such dispute may be raised with the Bankruptcy Court on an expedited basis prior to the commencement of the Auction. If any Bid is determined not to be a Qualified Bid, the Debtors will refund such Bidder's Deposit promptly after the Bid Deadline.

**4.     Credit Bid**

The Stalking Horse Bidder, in its capacity as the Prepetition Secured Party and the DIP Facility Lender, shall be deemed to be a Qualified Bidder and is not required to make any Deposit other than as contemplated in the Stalking Horse Agreement. To the fullest extent permissible under Bankruptcy Code § 363(k), the Stalking Horse Bidder may credit bid, as a

8

Qualified Bid or subsequent Bid, in its sole and absolute discretion, any portion and up to the entire amount of Obligations owing under the First Priority Obligations and the DIP Facility Obligations (as defined in the Stalking Horse Agreement) in conjunction with the Sale of the Assets pursuant to the terms of the Stalking Horse Agreement, plus the Break-Up Fee and Expense Reimbursement (the "Credit Bid").  All Credit Bids shall be treated as the equivalent as a cash bid of the same amount.

9

**C.    Auction**

      **1.    Cancellation of Auction**

      If no Qualified Bids other than the Stalking Horse Bid are received prior to the Bid Deadline, then the Auction will not occur, the Stalking Horse Agreement shall be deemed the Successful Bid, and, subject to the termination rights under the Stalking Horse Agreement, the Debtors will pursue entry of an order by the Bankruptcy Court authorizing the Sale to the Stalking Horse Bidder as soon as practicable.

      **2.    Conduct of Auction**

(i) <u>Time and Place</u>.  The Auction, if necessary, shall be held virtually on **July 28, 2022, at 10:00 a.m. (prevailing Eastern Time),** or such other location as identified by the Debtors after notice to all Qualified Bidders.

(ii)    <u>Baseline Bid</u>. Prior to the commencement of the Auction, the Debtors shall determine which of the Qualified Bids, at such time, is the highest and best bid for purposes of constituting the opening bid of the Auction (the "<u>Baseline Bid</u>" and the Qualified Bidder submitting the Baseline Bid, the "<u>Baseline Bidder</u>"), and shall promptly notify the Stalking Horse Purchaser and all other Qualified Bidders with Qualified Bids of the Baseline Bid.  The Baseline Bid may be composed of any combination of the Assets, and the Debtors may determine that different Baseline Bids exist for different groupings of the Assets.  The Debtors shall have the discretion to determine how to proceed when auctioning the Assets in groupings that do not include all of the Assets so as to maximize the value of the Assets.

(iii)    <u>Auction Procedures</u>.  The Auction shall be conducted in a timely fashion according to the following procedures:

    (A)  The Debtors and their professional advisors shall direct, preside over, and transcribe the Auction.

    (B)  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid.  All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid. The Auction shall be recorded via audio and/or video means.

    (C)  Only the Stalking Horse Bidder and any other Qualified Bidders with Qualified Bids (together, the "<u>Auction Bidders</u>") shall be entitled to make any subsequent

10

bids at the Auction, subject to the terms of these Bid Procedures and other limitations as may reasonably be imposed by the Debtors.

(D)  The Auction Bidders shall appear virtually at the Auction, or through a duly authorized representative, who also may appear virtually at the Auction. Only the Debtors, counsel for the United States Trustee, professionals of the Committee, if appointed, the Auction Bidders , together with the professional advisors to each of the foregoing parties, may attend the Auction, also virtually. All creditors of the Debtors' estates shall be permitted to attend the Auction virtually; provided, however, that in order to attend the Auction, such creditors must advise the Debtors in writing no later than 24 hours prior to the Auction, provided, further, however, that the Debtors may seek relief from the Court in the event that they object to any such creditor's attendance.

(iv)  <u>No Collusion; Good-Faith Bona Fide Offer</u>.  Each Qualified Bidder participating at the Auction shall be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, (ii) its Qualified Bid is a good-faith bona fide offer, and (iii) it intends to consummate the proposed Transaction if selected as the Successful Bidder or the Back-Up Bidder.

### 3.  Terms of Overbids

An "<u>Overbid</u>" is any Bid made at the Auction subsequent to the Debtors' announcement of the Starting Bid.  Any Overbid after the Baseline Bid shall be made in increments of at least **$200,000.00** (the "<u>Minimum Overbid Increment</u>").  Additional consideration in excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration; <u>provided</u>, <u>however</u> that the value for such non-cash consideration shall be determined by the Debtors in their reasonable business judgment.

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above; <u>provided</u>, <u>however</u>, the Bid Deadline shall not apply and no additional Deposit shall be required beyond the Deposit previously submitted by a Qualified Bidder; <u>provided</u> that the Successful Bidder (other than the Stalking Horse Bidder) shall be required to make a representation at the end of the Auction that it will provide any additional deposit necessary so that its Deposit is equal to the amount of not less than ten percent (10%) of the cash portion of the purchase price contained in the Successful Bid.  Any Overbid must include, in addition to the amount and form of consideration of the Overbid, a description of all changes (if any) requested by the Qualified Bidder to the Stalking Horse Agreement or a previously submitted Modified Purchase Agreement, in connection therewith (including any changes to the designated assigned contracts and leases and assumed liabilities).  Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.

The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, <u>inter</u> <u>alia</u>, the Bid Assessment Criteria.

11

4.      **Backup Bidder**

If an Auction is conducted, the party with the second highest or second-best Qualified Bid at the Auction, as determined by the Debtors in the exercise of their business judgment, shall be required to serve as backup bidder (the "<u>Backup Bidder</u>"), other than the Stalking Horse, who may choose to not act as the Backup Bidder.  The Backup Bidder shall be required to keep its initial Bid(s) (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "<u>Backup Bid</u>") open and irrevocable until two (2) business days after the closing of the sale of the Assets (the "<u>Outside Backup Date</u>").  Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtors may designate the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court.  In such case, the defaulting Successful Bidder's deposit, if any, shall be forfeited to the Debtors' estates, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder.

The deposit, if any, of the Backup Bidder shall be held by the Debtors until two (2) business days after the closing of the Sale with the Successful Bidder; <u>provided</u>, <u>however</u>, in the event the Successful Bidder does not consummate the transaction as described above and the Debtors provide notice to the Backup Bidder, the Backup Bidder's deposit shall be held until the closing of the transaction with the Backup Bidder.  In the event the Debtors fail to consummate a transaction with the Backup Bidder, the Backup Bidder's deposit shall be forfeited to the Debtors' estates, and the Debtors specifically reserve the right to seek all available damages from the defaulting Backup Bidder.

5.      **Closing the Auction**

The Auction shall continue until there is only one Qualified Bid or combination of Qualified Bids that the Debtors determine in their reasonable business judgment after consultation with their financial and legal advisors, is the highest and best Qualified Bid(s) at the Auction (the "<u>Successful Bid</u>" and the Bidder(s) submitting such Successful Bid, the "<u>Successful Bidder</u>"), and the next highest and best Qualified Bid shall be declared the Back-Up Bidder (subject to the Stalking Horse Bidder's right not to serve as Back-Up Bidder).  The Debtors, in consultation with the Committee, if any (or, if the Stalking Horse Purchaser has dropped out of the bidding, in consultation with the  Committee and the DIP Facility Lender), may, in their reasonable discretion, (a) determine which Qualified Bid, if any, is the Prevailing Bid, and (b) reject at any time before entry of the Sale Order approving the Prevailing Bid, any Bid other than the Stalking Horse Bid that, in the reasonable discretion of the Debtors, in consultation with the Committee, if any, (or, if the Stalking Horse Purchaser has dropped out of the bidding, in consultation with the  Committee and the DIP Facility Lender), is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Sale Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors; in each case (a)-(b), without limiting the rights of the DIP Facility Lender (in its capacity as such or as Stalking Horse Purchaser or Prepetition Secured Party) under the DIP Order, the Stalking Horse Agreement, any other document or applicable law.  (collectively, the "<u>Bid Assessment Criteria</u>").

10038374.v11
10069698.v1

The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid.

Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction, the Debtors shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.  The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

### 6.      Break-Up Fee and Expense Reimbursement

To the extent payable in accordance with the Stalking Horse Agreement, the Break-Up Fee and Expense Reimbursement shall be paid as provided in the Stalking Horse Agreement and shall constitute an allowed superpriority administrative expense claim against the Debtors' bankruptcy estates pursuant to Bankruptcy Code §§ 363, 364(c)(1), 503(b), and 507(a)(2), and 507(b)).

## D.    Procedures for Determining Cure Amounts and Adequate Assurance for Assumed Contract Counterparties to Assumed Contracts

By July 7, 2022, the Debtors shall send a notice to each counterparty to an executory contract or unexpired lease (each an "Assumed Contract Counterparty") setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such Assumed Contract Counterparty if the Debtors decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Assumed Contract Counterparty that their contract may be assumed and assigned to the Successful Bidder (the "Cure and Possible Assumption and Assignment Notice"), a copy of which is attached to the Bid Procedures Order as **Exhibit 3**.

Any Assumed Contract Counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or the possible assignment of its executory contract or unexpired lease must file and serve an objection (an "Assumed Contract Objection") on or before **4:00 p.m. prevailing Eastern Time on July 25, 2022**.  If an Assumed Contract Counterparty does not timely file and serve an Assumed Contract Objection, that party will be forever barred from objecting to (a) the Debtors' proposed cure amount, or (b) the assignment of that party's executory contract or unexpired lease to the Successful Bidder.  Where an Assumed Contract Counterparty to an Assumed Contract files a timely Assumed Contract Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that Assumed Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code § 365 (if any) or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing.

## E.    Sale Hearing

13

The Bankruptcy Court has scheduled a hearing (the "Sale Hearing") on **August [3], 2022 at __:__ _.m. (prevailing Eastern Time)**, at which hearing the Debtors may, in their discretion, seek approval of the Sale with the Successful Bidder.  Objections to the sale of the Assets to the Successful Bidder or Backup Bidder must be filed, comply with the Bankruptcy Rules and Local Rules, and be served so they are actually received by no later than **4:00 p.m. (prevailing Eastern Time) on July 25, 2022** (except for any Residual Objection, which must be filed and served on or before **August 1, 2022, at 4:00 p.m. (prevailing Eastern Time)** upon the following: (a) counsel for the Debtors, [●], Attn: [●] ([●]Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (b) counsel for the Stalking Horse Bidder, the DIP Facility Lender, and the Prepetition Secured Party (Attn: [●] ([●]), and the DIP Facility Lender, Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland ME 0410, Attn:  Robert J. Keach (rkeach@bernsteinshur.com), Adam R. Prescott (aprescott@bernsteinshur.com), and Lindsay Zahradka Milne (lmilne@bernsteinshur.com) and Cozen O'Conner LLP, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com); and (c) counsel to the U.S. Trustee (Attn: [●] ([●], 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia (joseph.cudia@usdoj.gov) and David L. Buchbinder (David.L.Buchbinder@usdoj.gov).

## F.    Return of Good Faith Deposits

The Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors but shall not become property of the Debtors' estates other than in accordance with these Bid Procedures.  The Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Qualified Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing.  The Deposit of the Backup Bidder shall be returned to the Backup Bidder two (2) business days after the closing of the Sale with the Successful Bidder.  Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon.  If the Successful Bidder timely closes the winning transaction, its Deposit shall be credited towards its purchase price.

## G.    Reservation of Rights

The Debtors reserve the rights to modify the Bid Procedures or the requirements for determining a Qualified Bid to the extent that, after consultation with the Stalking Horse Bidder, the Debtors determine that such modification is mandated by acquittal of their fiduciary duties, provided that the Stalking Horse Bidder reserves all rights to oppose any such modification. Notwithstanding the foregoing and subject in all respects to the Stalking Horse Agreement, the Debtors may not impair or modify the Stalking Horse Bidder's rights and obligations under the Stalking Horse Agreement or the Stalking Horse Bidder's right to credit bid at the Auction, including, without limitation any modification of the Bid Procedures that alter the Stalking Horse Bid's status as a Qualified Bid or the Stalking Horse Bidder's status as a Qualified Bidder.

14

**<u>Exhibit 2 to Bid Procedures Order</u>**

**Sale Notice**

Exhibit 2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | Case No. 22-10559 (JKS) |
| Debtors. | ~~(Joint Administration Requested)~~(Jointly Administered) |

**NOTICE OF BID PROCEDURES,
AUCTION, HEARING AND DEADLINES RELATING TO THE SALE OF
SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS**

 **PLEASE TAKE NOTICE** that on June ~~[●]~~22, 2022, the above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned case (the "Bankruptcy Case"), filed a *Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Potential Sale of Substantially All Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing Entry Into the Stalking Horse Agreement, (E) Approving Bid Protections, (F) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (G) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. ●17] (the "Bid Procedures and Sale Motion").[2] The Debtors seeks to complete a sale (the "Sale") of substantially all their assets (the "Assets") to a prevailing bidder or bidders (the "Successful Bidder") at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to section 363 of the Bankruptcy Code (the "Auction").

 **PLEASE TAKE FURTHER NOTICE** that, on July [●], 2022, the Bankruptcy Court entered an order [Docket No. ●] (the "Bid Procedures Order") approving the Bid Procedures set forth in the Bid Procedures and Sale Motion (the "Bid Procedures"), which set the key dates and times related to the sale of the Debtors' Assets. **All interested bidders should carefully read the Bid Procedures**. To the extent there are any inconsistencies between the Bid Procedures and the summary description of its terms and conditions contained in this notice, the terms of the Bid Procedures shall control.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528).  The location of the Debtors' service address is 3700 S Kedzie Avenue, Chicago, Illinois 60632.

[2]     Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bid Procedures and Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures, the Debtors must receive a Qualified Bid from interested bidders in writing, on or before **July 25, 2022**, **at 4:00 p.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtors (the "Bid Deadline"). To be considered, Qualified Bids must be sent to the following at or before the Bid Deadline: (a) to the Debtors' investment banker, Houlihan Lokey Capital, Inc., Attn: Ryan Sandahl (email: rsandahl@hl.com), and (b) the Debtors' counsel, Klehr Harrison Havey Branzburg, LLP, Attn: Domenic Pacitti (email: dpacitti@klehr.com) and Michael Rittinger (email: mrittinger@klehr.com).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, if the Debtors receive one or more Qualified Bids (other than the Stalking Horse Agreement) by the Bid Deadline, the Auction will be conducted virtually on **July 28, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or at such other place, date and time as may be designated by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, the Debtors have designated certain Assumed Contracts that may be assumed or assumed and assigned to the Successful Bidder. The Debtors shall send a notice to each counterparty to an Assumed Contract setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such counterparty if the Debtors decided to assume or assume and assign such Assumed Contract, and alerting such nondebtor party that their contract may be assumed and assigned to the Successful Bidder (the "Cure and Possible Assumption and Assignment Notice").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, any counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or the possible assignment of their Assumed Contract(s) must file with the Bankruptcy Court and serve an objection (a "Cure or Assignment Objection") so it is actually received on or before **4:00 p.m. prevailing Eastern Time on July 25, 2022**, by (a) counsel for the Debtors, [●], Attn: [●] ([●]Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (b) counsel for the Stalking Horse Bidder, the DIP Facility Lender, and the Prepetition Secured Party (Attn: [●] ([●]), and the DIP Lender, Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland ME 0410, Attn: Robert J. Keach (rkeach@bernsteinshur.com), Adam R. Prescott (aprescott@bernsteinshur.com), and Lindsay Zahradka Milne (lmilne@bernsteinshur.com) and Cozen O'Conner LLP, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com); and (c) counsel to the U.S. Trustee (Attn: [●] ([●], 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia (joseph.cudia@usdoj.gov) and David L. Buchbinder (David.L.Buchbinder@usdoj.gov). Where a counterparty to an Assumed Contract files a timely Cure or Assignment Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that counterparty's Assumed Contract, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code § 365 (if any) or, as the case may be, the Debtors' ability to assign the Assumed Contract to the Successful Bidder will be determined at

2

the Sale Hearing (as defined below).  To the extent any Contract Counterparty is added to the Cure and Possible Assumption and Assignment Notice after the initial notice is served, such new Contract Counterparty shall receive notice of the addition and the Debtors' proposed cure amount, and that party shall have seven (7) days from the date of such notice to object to the proposed cure amount and assignment to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Assets to the Successful Bidder (the "Sale Hearing") before the Honorable [●]J. Kate Stickles, U.S. Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, [●] Floor, Courtroom [__], on **August [3], 2022 at __:__ a.m./p.m. (prevailing Eastern Time)**, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or on the agenda for such Sale Hearing.  Objections to the sale of the Assets to the Successful Bidder must be filed and served so they are actually received by no later than **4:00 p.m. (prevailing Eastern Time) on July 25, 2022** (except for any Residual Objection, which must be filed and served on or before **August 1, 2022, at 4:00 p.m. (prevailing Eastern Time)**) by the following: (a) counsel for the Debtors, [●], Attn: [●] ([●]Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801, Attn: Domenic E. Pacitti (dpacitti@klehr.com) and Michael Yurkewicz (myurkewicz@klehr.com); (b) counsel for the Stalking Horse Bidder, the ~~DIP Facility Lender, and the~~ Prepetition Secured Party ~~(Attn: [●] ([●]~~), and the DIP Lender, Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland ME 0410, Attn: Robert J. Keach (rkeach@bernsteinshur.com), Adam R. Prescott (aprescott@bernsteinshur.com), and Lindsay Zahradka Milne (lmilne@bernsteinshur.com) and Cozen O'Conner LLP, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com); and (c) counsel to the U.S. Trustee ~~(Attn: [●] ([●]~~, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia (joseph.cudia@usdoj.gov) and David L. Buchbinder (David.L.Buchbinder@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that the Debtors are seeking to waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d) in order for the Sale to close immediately upon entry of the Sale Order by this Court.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the full terms and conditions of the Bid Procedures and Sale Motion, the Bid Procedures Order and the Bid Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. A copy of the Bid Procedures and Sale Motion, the Bid Procedures and the Bid Procedures Order may be obtained for free by accessing the website of the Debtors' noticing agent, [●]Omni Agent Solutions, located at https://www.[●]omniagentsolutions.com/GoldStandard.

Dated: ~~June~~July [●], 2022                    /s/ _____

Wilmington, Delaware                    Domenic E. Pacitti (DE Bar No. 3989)
                                        Michael W. Yurkewicz (DE Bar No. 4165)
                                        Sally E. Veghte (DE Bar No. 4762)

10038374.v11
10069698.v1

**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone: (302) 426-1189
Facsimile:  (302) 426-9193
Email:     dpacitti@klehr.com
           myurkewicz@klehr.com
           sveghte@klehr.com

-and-

Morton R. Branzburg (*pro hac vice* admission pending)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:         (215) 569-3007
Facsimile:  (215) 568-6603
Email:             mbranzburg@klehr.com

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

4

10038374.v11
10069698.v1

**Exhibit 3 to Bid Procedures Order**

**Cure and Possible Assumption and Assignment Notice**

Exhibit 3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOLD STANDARD BAKING, LLC, *et al.*,[1] | ) | Case No. 22-~~[●]~~-10559 (JKS) |
| | ) | |
| Debtors. | ) | ~~(Joint Administration Requested)~~(Jointly Administered) |
| | ) | |

**NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES REGARDING CURE
AMOUNTS AND POSSIBLE ASSIGNMENT TO THE STALKING HORSE BIDDER OR
SUCH OTHER SUCCESSFUL BIDDER AT AUCTION**

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR
AFFILIATES MAY BE COUNTERPARTY TO ONE OR MORE EXECUTORY
CONTRACTS AND/OR UNEXPIRED LEASES WITH THE DEBTORS.[2]**

**PARTIES RECEIVING THIS NOTICE SHOULD (1) READ THIS NOTICE
CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS
DESCRIBED HEREIN AND (2) LOCATE THEIR NAME AND CONTRACT AND/OR
LEASE ON APPENDIX I HERETO**

---

      **PLEASE TAKE NOTICE** that on ~~[●]~~June 22, 2022, the above-captioned debtors and debtors in possession (the "Debtors") filed a motion (the "Bid Procedures and Sale Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

      **PLEASE TAKE FURTHER NOTICE** that on July [●], 2022, the Bankruptcy Court entered an order [Docket No. ●] (the "Bid Procedures Order"), which (a) set key dates, times and procedures related to the Sale (the "Sale") of substantially all of the Debtors' assets (the "Assets") pursuant to an auction (the "Auction") overseen by the Bankruptcy Court, which Auction is scheduled to occur on **July 28, 2022 at 10:00 a.m. (prevailing Eastern Time)**, (b) authorized the Debtors to enter into a stalking horse asset purchase agreement (the "Stalking Horse Agreement") with 37 Baking Holdings, LLC or its assignee (the "Stalking Horse Bidder"), (c) established certain procedures relating to the Debtors' assumption and assignment of executory

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Gold Standard Baking, LLC (8756); Gold Standard Holdings, Inc. (0787); and Gold Standard Real Estate, LLC (6528). The location of the Debtors' service address is 3700 S Kedzie Avenue, Chicago, Illinois 60632.

[2]     This Notice is being sent to counterparties to executory contracts and unexpired leases. This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

contracts and unexpired leases in connection with the Sale, and (d) granted related relief.[3] Approval of the Sale to the Stalking Horse Bidder or such other Successful Bidder (as defined in the Bid Procedures Order) after the results of the Auction and the Debtors' assumption and assignment of any executory contracts and unexpired leases in connection therewith, is scheduled to take place at a hearing before the Bankruptcy Court at __:__ _.m. (prevailing Eastern Time) on **August [3], 2022** (the "Sale Hearing"). The Sale Hearing may be adjourned by the Bankruptcy Court or the Debtors without further notice other than such adjournment announced in open court or a notice of adjournment filed on the Bankruptcy Court's docket.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bid Procedures Order, the Debtors may assume and assign the executory contract(s) and/or unexpired lease(s) to which you may be a counterparty to the Stalking Horse Bidder or such other Successful Bidder after the outcome of the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have conducted a review of their books and records and have determined the cure amount for unpaid monetary obligations under such contract or lease is set forth in the right-hand column on Appendix I (the "Cure Amount"). If you object to (a) the proposed assumption or disagree with the proposed Cure Amount or (b) object to the possible assignment of such executory contract(s) or unexpired lease(s) to the Stalking Horse Bidder, **you must file an objection with the Bankruptcy Court no later than July 25, 2022, at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline") and serve such objection on the following parties**:

*Proposed Counsel to the Debtors*

Domenic E. Pacitti
Michael W. Yurkewicz

Klehr Harrison Harvey Branzburg LLP
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Email: dpacitti@klehr.com
        myurkewicz@klehr.com

and

Morton R. Branzburg
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Email: mbranzburg@klehr.com

*Co-Counsel to the Stalking Horse Bidder, Prepetition Secured Party, and DIP Facility Lender*

Lindsay Zahradka Milne, Esq.
Adam Prescott, Esq.
Bernstein, Shur. Sawyer & Nelson, P.A.
100 Middle Street
Portland, ME 04101
Email: lmilne@bernsteinshur.com
Email: aprescott@bernsteinshur.com

*Office of the United States Trustee for the District of Delaware*
J. Caleb Boggs Federal Building
844 King Street, Suite 2008 – Lockbox #35
Wilmington, DE 19801
Attn: [●]Joseph Cudia

---

[3] To the extent there are any inconsistencies between the Bid Procedures Order and the summary description of the terms and conditions contained in this Notice, the terms of the Bid Procedures Order shall control.

2

10038374.v11
10069698.v1

Telephone: (302) 573-6008
Fax: (302) 573-6497
Email: joseph.cudia@usdoj.gov

***Clerk of the Bankruptcy Court***
***United States Bankruptcy Court for the***
***District of Delaware***
824 North Market Street, 3rd Floor
Wilmington, DE 19801

**PLEASE TAKE FURTHER NOTICE** that if no objection to the Cure Amount or the assignment of your Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder is filed by the Objection Deadline, **you will be (a) forever barred from objecting to the Cure Amount or provision of adequate assurance of future performance and from asserting any additional cure or other amounts with respect to your contract(s) or lease(s), and the Debtors and the Stalking Horse Bidder or the Successful Bidder (as applicable) shall be entitled to rely solely upon the Cure Amount, (b) deemed to have consented to the assumption or assumption and assignment, and (c) forever barred and estopped from asserting or claiming defaults exist, that conditions to assignment must be satisfied under such contract(s) and/or lease(s) or that there is any objection or defense to the assumption and assignment of such contract(s) and/or lease(s).**

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Amount indicated on Appendix I and otherwise do not object to the Debtors' assumption or assumption and assignment of your contract(s) and/or lease(s), you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Bid Procedures, and the Bid Procedures Order, as well as all related exhibits, including the proposed Sale Order may be obtained for free by accessing the website of the Debtors' noticing agent, [●] Omni Agent Solutions, located at https://www.[●]omniagentsolutions.com/GoldStandard.

Dated:  ~~June~~July [●], 2022        /s/ _____
Wilmington, Delaware             Domenic E. Pacitti (DE Bar No. 3989)
                                 Michael W. Yurkewicz (DE Bar No. 4165)
                                 Sally E. Veghte (DE Bar No. 4762)
                                 **KLEHR HARRISON HARVEY BRANZBURG LLP**
                                 919 N. Market Street, Suite 1000
                                 Wilmington, Delaware 19801
                                 Telephone: (302) 426-1189
                                 Facsimile:  (302) 426-9193
                                 Email:          dpacitti@klehr.com
                                                 myurkewicz@klehr.com
                                                 sveghte@klehr.com

3

10038374.v11
10069698.v1

-and-

Morton R. Branzburg (admitted *pro hac vice* admission pending)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:   (215) 569-3007
Facsimile:    (215) 568-6603
Email:         mbranzburg@klehr.com

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

4

10038374.v11
10069698.v1

# APPENDIX I

[Counterparty Name]          [Contract/Lease]          [Cure Amount]          [Proposed
                                                                              Assignee (if any)]

~~Schedule~~ 2

~~10038374.v11~~
10069698.v1

Document comparison by Workshare Compare on Thursday, July 7, 2022
1:44:56 PM

| Input: | |
|---|---|
| Document 1 ID | iManage://4c6f1-mobility.imanage.work/PHIL1/10067818/1 |
| Description | #10067818v1<4c6f1-mobility.imanage.work> - GSB - Bid Procedures Order (Filed Version with Motion at DI 17) |
| Document 2 ID | iManage://4c6f1-mobility.imanage.work/PHIL1/10069698/1 |
| Description | #10069698v1<4c6f1-mobility.imanage.work> - GSB - Bid Procedures Order (Klehr Revisions 7.7.22 to Filed Version with Motion at DI 17)(V) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 95 |
| Deletions | 66 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |

| Total changes | 161 |